# EXHIBIT A

Filing # 255857687 E-Filed 08/27/2026 01:45:19 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

MERRI SELBY SAMSON,
Plaintiff,

v.

TRUIST BANK, a National Banking Association,
Defendant.
_______________________________________/

CASE NO:
DIVISION:

**COMPLAINT**

Plaintiff MERRI SELBY SAMSON sues Defendant TRUIST BANK, and alleges as follows:

1. Plaintiff Merri Selby Samson ("Merri"), is sui juris, and is a resident of California.

2. Defendant Truist Bank ("Truist"), is a national banking association with locations throughout the country, including in Broward County, Florida.

3. This is an action for the recovery of damages of in excess the jurisdictional limit of this Court for breach of trust, and for declaratory relief. This Court has jurisdiction over this cause pursuant to Article V, §5(b), of the Florida Constitution, and §26.012, Fla. Stat.

4. Venue of this cause properly lies in Broward County, Florida, because Truist conducts business in, and serves as trustee of a trust administered in Broward County, Florida, and the causes of action accrued in Broward County, Florida.

5. Kenneth L. Paine ("Kenneth"), was a Broward County resident. On January 22, 1991, Kenneth executed the Last Will and Testament of Kenneth L. Paine, a copy of which is attached as Exhibit "A" (the "Original Will"). On March 29, 1993, Kenneth executed the Codicil to the Last

Will and Testament of Kenneth L. Paine, a copy of which is attached as Exhibit "B" (the "Kenneth Codicil," which along with the Original Will shall be collectively referred to as the "Kenneth Will").

6. Plaintiff Merri is the daughter of Esther Susan Wilson ("Esther"), who is Kenneth's daughter, so Merri is Kenneth's grandchild. Pursuant to the Kenneth Will, 65% of Kenneth's assets were equally distributed among his four grandchildren, including Merri. The remaining 35% of Kenneth's assets were to remain in trust for his daughter Esther (the "Trust"). Article IV of the Codicil of the Kenneth Will provides in relevant part:

> a. My daughter, ESTHER SUSAN WILSON, shall have alone and in all events, the power to appoint by her last will and testament, the entire remaining corpus of this Trust, including any accrued or undistributed income on the date of her death (as if it had been received), free of this Trust, to her creditors, or to the creditors of her estate; provided, however, that the exercise of the power of appointment must be by specific reference to this power herein granted.
>
> b. Upon the death of my daughter, ESTHER SUSAN WILSON, or if she should predecease me, the remaining Trust corpus not so appointed, together with all undistributed income thereof, if any, shall be distributed to my granddaughter, MERRI SELBY, if then living. (emphasis added).

7. Accordingly, Merri is the residuary beneficiary of the Trust, entitled to receive all assets remaining in the Trust upon Esther's death, except to the extent that Esther exercised the power of appointment granted to her under the Kenneth Will (the "Power of Appointment"), to direct payment of Trust assets to her creditors or to creditors of her estate (collectively the" Esther Creditors").

8. On December 22, 1994, Kenneth died. On August 11, 2004, Esther executed a Last Will and Testament, a copy of which is attached as Exhibit "C" (the "Esther Will"). Article III of the Esther Will provides:

> c. In Article IV.B. of the Kenneth Codicil dated March 29, 1993, to the Last Will and Testament of my father, Kenneth L. Paine, who died on December

> 22, 1994, which has been admitted to Probate in Broward County, Florida, I was granted the power to appoint by my Last Will and Testament, the entire remaining corpus of the Testamentary Trust established for my benefit in said Codicil. I hereby exercise said power of appointment by devising and appointing to my good friends, James W. Stokes, and Sandra Lynn Blakely if they both survived me or the surviving one of them if either shall pre deceased me, the entire remaining corpus of said trust, including any accrued or undisputed income existing on the date of my death. (emphasis added).

9. Accordingly, Esther purported to exercise the Power of Appointment granted to her by directing the distribution of all of the remaining assets of the Trust to her "good friends" James W. Stokes and Sandra Lynn Blakely (collectively the "Two Good Friends").

10. On March 20, 2025, Esther died. At the time, Truist Bank was serving as trustee of the Trust, and the Trust owned an investment account at Truist that included securities having a total value of in excess of $445,000 (the "Trust Account").

11. During September 2025, Truist as trustee of the Trust, sold all securities in the Trust Account and distributed $215,897.62 to both of Esther's Two Good Friends, for a total of $431,795.24. (the "Trust Assets"). Before distributing the Trust Assets to Esther's Two Good Friends, Truist did not conduct any investigation to determine whether either or both of the Two Good Friends were Esther Creditors, and if so, how much was owed to either of them. Instead, Truist distributed all of the Trust assets to the Two Good Friends without regard to the requirement included in the Kenneth Will that the Power of Appointment could only be exercised by Esther in favor of Esther Creditors. Upon information and belief, Truist did not have a copy of the Esther Will in its possession when it distributed the Truist Assets to the Two Good Friends.

12. Esther's purported exercise of the Power of Appointment was invalid because it was

not in accordance with the conditions governing the exercise of the power included in the Codicil of the Kenneth Will. Upon information and belief, neither of the Two Good Friends were an Esther Creditor when all of the Trust Assets were distributed to them.

13. During November 2025, Truist sent Merri a statement for the Truist Account, a copy of which is attached as Exhibit "D," that identified that all securities of the Trust had been sold, and that all of the cash had been either spent or distributed to the Two Good Friends (the "November Truist Statement"). The November Truist Statement included a §736.1008, Fla. Stat., 6 month limitation notice. However, the November Truist Statement did not adequately disclose why these distributions were made to the Two Good Friends, or anything about the terms of Esther's Power of Appointment, and whether it had been validly or invalidly implemented. The November Truist Statement did not even state or notify Merri that Esther had died. Also, the November Truist Statement is not a final accounting, and does not include a plan of distribution. At the time, while Merri had a copy of the Kenneth Will, she did not have a copy of the Esther Will.

14. On November 14, 2025, Merri contacted Truist in an effort to obtain information regarding why the Trust Account had been closed. Truist responded as follows:

> [Esther] exercised her power of appointment given to her by the Kenneth Paine Trust. In her will, she left the trust asset [sic] to other parties. The assets have been distributed to the parties she named in her Will and the trust is now closed.

Truist did not send Merri a copy of the Esther Will, or advise whether the parties to whom the Trust Assets were distributed were Esther Creditors who were owed over $430,000.

15. On April 10, 2026, Truist sent Merri a letter, a copy of which is attached as Exhibit "E," that was directed to the Two Good Friends (the "Truist Good Friends Letter"). This letter notifies the Two Good Friends that there may be a claim against Truist with respect to its distribution of the Trust Assets to them, without explaining why, or the nature of the claim. Truist instructed the

Two Good Friends to preserve the funds distributed to them and the Esther Will, and to notify Truist if the Esther Will had been filed with a court.

16. On May 27,2026, Merri received an email from Truist that included a letter from Truist to her dated April 10, 2026, which she had not previously received (the " Truist Merri Letter"), copies of which are attached as Composite Exhibit "F." The cover email advised Merri that Truist inadvertently sent her the Truist Good Friends Letter, and failed to send her the Truist Merri Letter. The Truist Merri Letter advised Merri that Truist was providing additional information and documentation supplementing the November Truist Statement. By doing so, Truist acknowledged that the November Truist Statement did not adequately disclose the circumstances of the distribution of the Trust Assets to enable Merri to know whether there was a need or basis to formally object, or take action with respect to the distribution of the Trust Assets to the Two Good Friends. In the Truist Merri Letter, for the first time, Truist disclosed to Merri that pursuant to the Codicil to the Kenneth Will, Esther had a power of appointment with respect to the Trust Assets only in favor of Esther Creditors. Truist also advised that if Esther had failed to validly exercise the power, Merri would be the beneficiary of the Trust. The Truist Merri Letter enclosed a copy of the Esther Will.

17. Thereafter, Merri continued her efforts to obtain additional information from Truist regarding the distribution of the Trust assets, including in particular, whether the Two Good Friends, the recipients of the Trust distributions, were Esther Creditors. As of the date of the filing of this Complaint, Truist has not provided any information to Merri establishing that either of the Two Good Friends were Esther Creditors, or that she owed them at least $431,000.

18. Merri has performed all conditions precedent to the maintenance of this action.

## COUNT I -DECLATORY JUDGMENT

19. Merri incorporates by reference paragraphs one through 18.

20. This is a count for a declaration that the November Truist Statement did not include adequate disclosure regarding the distribution of the Trust Assets for the six-month limitation period to be applicable or enforceable with respect to Esthers's improper exercise of the Power of Appointment.

21. A present and actual controversy exists between the parties to the extent that Truist maintains that the inclusion of a six-month limitation period in the November Truist Statement bars Merri from challenging the distribution of the Trust Assets to the Two Good Friends, which Merri disputes.

22. There is a need for a declaration of the parties' rights with respect to the November Truist Statement.

23. The November Truist Statement does not provide sufficient disclosure of the circumstances surrounding the distribution of the Trust assets to the Two Good Friends to place Merri on notice that a claim may exist with respect to the distribution. Further, soon thereafter, while Truist advised Merri that the distribution of Trust Assets was made to the Two Good Friends pursuant to Esther's exercise of a power of appointment, no information was provided to enable Merri to understand that she might have a claim regarding the distribution of the Trust Assets.

24. It was not until May 27, 2026, when Merri received the Truist Merri Letter that Truist acknowledged its need to provide additional information and documentation supplementing the November Truist Statement that Truist did so, and for the first time disclosed that the Trust assets could only be validly distributed to the Two Good Friends if they were Esther Creditors, which Truist did not know, in which event Merri is the beneficiary of the Trust. It was only pursuant to the Truist Merri Letter that Merri received on May 27, 2026, that Truist provided Merri with a copy of the Esther Will, which identified the purported exercise of the Power of Appointment in favor of

the Two Good Friends, without stating that either or both of them were Esther Creditors.

25. Merri is entitled to a declaration that the November Truist Statement and the six (6) month limitation included therein does not bar her claim that Truist breached its duties and trust by distributing all Trust Assets to the Two Good Friends.

**WHEREFORE** Merri demands judgment in her favor and against Truist declaring that her claim filed herein is not time-barred pursuant to the November Truist Statement, or otherwise, the recovery of her costs, together with such other and further relief as the Court deems just and proper.

## COUNT II- BREACH OF TRUST

26. Merri incorporates by reference paragraphs 1 through 18.

27. As the residuary beneficiary of the Trust, Merri was a beneficiary of the Trust to whom Truist, as trustee of the Trust, owed fiduciary duties.

28. Truist breached its fiduciary duties to Merri by failing to undertake any investigation to determine whether the either or both of the Two Good Friends were Esther Creditors and, if so, to discern the amount Esther owed to either or both of them.

29. Truist further breached its duties to Merri by distributing all of the Trust Assets to the Two Good Friends, instead of to Merri.

30. Truist also breached its duties to Merri by distributing the Trust Assets to the Two Good Friends before providing Merri with a final accounting that included a plan of distribution.

31. Merri has sustained damages as a direct and proximate result of Truist's breaches of trust, including the loss of the value of the Trust Assets. Pursuant to §736.1002, Fla. Stat. Merri is entitled to recover damages in the sum of the value of the Trust Assets as if Truist had not committed a breach of trust.

32. Merri has retained the undersigned law firm to represent her in the maintenance of

this action, and has obligated herself to pay a reasonable attorney's fee therefore. Pursuant to §736.1004, Fla. Stat., Merri is entitled to recover her attorney's fees from Truist.

**WHEREFORE** Plaintiff Merri Selby Samson demands judgment in her favor and against Defendant Truist Bank for compensatory damages, plus pre-judgment interest thereon, reasonable attorney's fees, and the costs incurred in the maintenance of this action.

**DEMAND FOR JURY**

Plaintiff Merri Selby Samson hereby demands trial by jury of all claims so triable.

Dated: 8/27/26

*/s/ Andrew T. Lavin*
Andrew T. Lavin, Esq.

LAVIN LAW GROUP, P.A.
*Attorney for Plaintiff, Merri Selby Samson*
2670 NE 215th Street
Miami, Florida 33180
Telephone: (954) 967-2788
Email: alavin@lavinlawyers.com
Andrew T. Lavin, Esq.
Florida Bar No. 260827

# EXHIBIT "A"

95-0069

# Last Will and Testament
OF

KENNETH L. PAINE

I, KENNETH L. PAINE, of the City of Hallandale, County of Broward, State of Florida, being of sound and disposing mind and memory do hereby make, publish and declare this to be my Last Will and Testament, in the manner and form following, that is to say:

I.

I hereby revoke, cancel and annul all former Wills and Testaments including Codicils thereto made by me at any time and declare this alone to be my Last Will and Testament.

II.

I direct that my Personal Representatives pay all my funeral and testamentary expenses, if any, out of my estate as soon as practicable, including the cost of an appropriate marker and the perpetual care of my gravesite.

III.

In the event my wife, ELEANOR A. JENNINGS PAINE, shall survive me then I give, devise and bequeath FOURTEEN (14%) PERCENT of my estate, both real and personal, of whatever nature and wherever situated, including without limitation, all property acquired by me after the execution of this Will, all property over which I may have a power of appointment, all lapsed legacies and bequests, to my Trustees herein named, IN TRUST, to be held in a separate trust to be known as Trust A, which Trust shall be administered as follows:

My Trustees shall collect and receive the income from



Kenneth Paine
Testator

Trust A, and after deducting all expenses incident to the administration thereof, the Trustees shall, in at least quarter-annual or other more frequent convenient installments, as nearly equal as possible, distribute to my wife, ELEANOR, or apply for her benefit, all of the net income of the Trust. The trust corpus shall not be encroached.

My Personal Representatives shall have the right to elect to qualify or not to qualify this Trust for the marital deduction. In connection therewith, my Personal Representatives may elect to have a specific portion or all of Trust A, herein referred to as the "Marital Portion," treated as Qualified Terminable Interest Property for Federal estate tax purposes. If an election is made as to less than all of Trust A, the specific portion shall be expressed as a fraction, and the value of the Marital Portion at any time may be determined by multiplying the value of Trust A at that time by the fraction then in effect.

Upon the death of my wife, ELEANOR A. JENNINGS PAINE, Trust A shall terminate and the remaining trust corpus shall be distributed to my grandchildren, MERRI SELBY, RONALD SELBY, WILLIAM SELBY, STEPHEN SELBY and BARBARA SELBY, in equal shares, share and share alike, if living, and if not, then to the survivor(s) of them, except that, unless my wife directs otherwise by her Last Will and Testament by making specific reference to the Trust herein, the Trustees shall first pay from the principal of the Marital Portion, directly or to my wife's Personal Representative as the Trustees deem advisable, the amount by



[signature]
Testator

which the estate and inheritance taxes assessed by reason of the death of my wife shall be increased as a result of the inclusion of the Marital Portion in her estate for such tax purposes. The Trustees' selection of assets to be sold to pay that amount, and the tax effects thereof, shall not be subject to question by any beneficiary. In connection therewith, on the death of my said wife, the Trustees shall be authorized to withhold distribution of an amount of property sufficient, in their judgment, to cover any liability that may be imposed on the Trustees from estate or other taxes until such liability is finally determined. I further direct that my wife must allocate her generation-skipping tax exemption or any similar exemption, exclusion or other benefit allowable under the law in force when she dies to any property of this Trust as to which she could be deemed the transferor within the meaning of Section 2652(a) of the Internal Revenue Code.

Notwithstanding any other provisions contained in this Last Will and Testament to the contrary, all income of the Marital Portion accrued or undistributed at the death of my wife shall be paid to her estate.

It is my intention that this Trust satisfy the eligibility requirements of the marital deduction allowable in determining the Federal estate tax upon my estate. Accordingly, (i) I hereby direct that no authorization or direction or other provision contained within this, my Last Will and Testament, which would prevent this Trust from so qualifying, shall apply to this Trust; and (ii) I hereby state that it is my intention that any court having jurisdiction over this, my Last Will and Testament, construe



[signature]
Testator

this instrument accordingly.

If my wife should fail to survive me, then the devise under this Article for her benefit shall lapse, and shall be distributed as a part of my residuary estate hereinafter disposed of.

IV.

All the rest of my estate, both real and personal, of whatever nature and wherever situated, including without limitation, all property acquired by me after the execution of this Will, all property over which I may have a power of appointment, and all lapsed legacies and bequests, I give, devise and bequeath as follows:

A. Sixty-Five (65%) percent shall be distributed equally among the following named grandchildren, MERRI SELBY, RONALD SELBY, WILLIAM SELBY, STEPHEN SELBY and BARBARA SELBY, if living, and if not, then to the survivor(s) of MERRI SELBY, RONALD SELBY, WILLIAM SELBY, STEPHEN SELBY and BARBARA SELBY.

B. The remaining Thirty-Five (35%) percent shall remain IN TRUST. My Trustees, hereinafter named, shall collect and receive the income therefrom, and after deducting all expenses incident to the administration thereof, the Trustees shall, in at least quarter-annual or other more frequent convenient installments as nearly equal as possible, distribute all of the net income to my daughter, ESTHER SUSAN WILSON, for the duration of her life. The Trust corpus shall not be encroached.

My daughter, ESTHER SUSAN WILSON, shall have, alone and in all events, the power to appoint by her Last Will and Testament, the entire remaining corpus of this Trust,



Kenneth Paine
Testator

including any accrued or undistributed income on the date of her death (as if it had been received), free of this Trust, to her creditors or the creditors of her estate; provided, however, that the exercise of the power of appointment must be by specific reference to this power herein granted. Such appointment may be made in such shares, either outright or in trust, or partially outright or partially in trust, and upon such terms and conditions as will not violate the Rule Against Perpetuities, as my daughter may desire.

Upon the death of my daughter, ESTHER SUSAN WILSON, or should she predecease me, the remaining Trust corpus not so appointed, together with all undistributed income thereon, if any, shall be distributed to my granddaughter, MERRI SELBY, if then living. In the event MERRI SELBY shall predecease me or die before final distribution of the trust for ESTHER SUSAN WILSON, then the amount she was to receive shall be distributed to RONALD SELBY, WILLIAM SELBY, STEPHEN SELBY and BARBARA SELBY, in equal shares, share and share alike, if living, and if not, then to the survivor(s) of RONALD SELBY, WILLIAM SELBY, STEPHEN SELBY and BARBARA SELBY.

V.

Whenever and as often as the beneficiary to whom payments are herein directed to be made, shall be under a legal disability or, in the sole judgment of the Trustee, shall otherwise be unable to apply such payments to his or her best interest and advantage, the Trustee may make all or any portion of such payments by expending the same for the benefit of such beneficiary, or by making payments to the legal guardian or conservator of such beneficiary.



[signature]
Testator

VI.

Anything in this Will to the contrary notwithstanding, the Trustee, in her sole discretion, may terminate at any time any Trust which may then be of the aggregate amount of FIFTY THOUSAND ($50,000.00) DOLLARS, or less, or which is determined to be uneconomical to continue to manage with respect to a comparison of all costs and fees to be incurred with the income to be produced. This amount shall be distributed to the beneficiary or beneficiaries currently entitled to the income. If such individual is a minor or, in the opinion of the Trustee is mentally or physically incapacitated, the Trustee may pay such fund to the parent or guardian of such individual or the person caring for such individual or, in the case of a minor, may deposit such fund in a savings institution of their choosing, payable to the minor at majority.

VII.

The Trust or Trusts created herein shall, in any event, terminate twenty-one (21) years after the death of the last survivor of the beneficiaries hereunder as shall be living at the time of my death; and thereupon, the property held IN TRUST shall be distributed and discharged of Trust, to the persons then entitled to the income and in the proportions to which they are entitled to said income.

VIII.

No person dealing with the Trustees shall be obliged to inquire as to her powers or to see to the application of any money or property delivered to them. The Trustees shall not be required to obtain authority or approval of any court in the exercise of any power conferred on them hereunder.



Kenneth L. Paine

Testator

IX.

If the Trustees shall be compelled at any time during the existence of this Trust, or thereafter, to pay any tax or interest or penalty with respect thereto for any reason, she shall be entitled to be reimbursed from the principal of the Trust; or if the Trust principal be then insufficient, or if it be then terminated, the Trustees shall be reimbursed by the persons to whom the principal of the Trust shall have been distributed to the extent of the amount received by each distributee; provided, however, no reimbursement shall be made from property which qualifies for a marital deduction pursuant to this Will.

X.

No disposition, charge or encumbrance of either the income or principal of any trust, or of any part thereof, by any beneficiary, by way of anticipation, shall be of any validity or legal effect, or be in any way regarded by my Trustees. No such income or principal, or any part thereof, shall in any way be liable to any claim of any creditor of such beneficiary; and in the case of a married person, no such income or principal, or any part thereof, shall in any way be subject to the control of the spouse.

XI.

The income of any trust herein created shall accrue from the date of my death, and until the trust is established, I authorize my Personal Representatives, in their sole and absolute discretion, from time to time and at any time, to pay out of my general estate to the respective income beneficiary of any trust, as advance payments of income, or principal, if permitted, such sum or sums as in their



Testator

judgment are not in excess of the income, or principal, if permitted, which such income beneficiary properly would have been entitled to receive from said Trust had the same been established. Any such sum paid from the principal of my general estate shall be regarded merely as a temporary advancement to be restored to the principal from income otherwise payable to the beneficiary to whom such advance shall have been made, except that such restoration shall not be required or made from property which qualifies for a marital deduction pursuant to this Will.

XII.

All estate, inheritance, transfer, legacy or succession taxes or death duties, which may be assessed or imposed with respect to my estate, or any part thereof, wheresoever situated, whether or not passing under my Will, including the taxable value of all policies of insurance on my life, and of all transfers, powers, rights, or interests includible in my estate for the purposes of such taxes and duties shall be paid out of my residuary estate as an expense of administration and without apportionment; except that the amount, if any (a) by which the estate and inheritance taxes shall be increased as a result of the inclusion of property in which I may have a qualifying income interest for life or over which I may have a power of appointment, and (b) of generation-skipping taxes caused by a disclaimer or by a direct skip from a trust not established herein, shall be paid by the person holding or receiving that property. For the purposes of this paragraph, my residuary estate shall be Article IV.



Kenneth L. Paine
Testator

XIII.

In the administration of my Estate and the Trust estate, my Personal Representatives and my Trustees shall have the following powers, all of which shall be exercised in a fiduciary capacity:

A. To retain as an investment all of the securities and other property then forming a part of my Estate or Trust estate or thereafter transferred to my Estate or Trust estate, whether or not the investments shall be of the character authorized by the laws of the State of Florida for investment of Estate or Trust funds, or shall be productive of income, and whether or not any one security or property should constitute a substantial part of the entire estate.

B. To purchase or subscribe to any securities or other property with any cash held by the Trustees, including, but not limited to, bonds, stocks and other securities, undivided interests, interests in investment trusts, common trust funds, stock in a mutual trust investment company, mutual funds and leases, all without diversification as to kind or amount, without being restricted in any way by any statute or court decision (now or hereafter existing) regulating or limiting investments by fiduciaries.

C. To sell and convey any of the property of the Estate or Trust or any interest therein, or to exchange or redeem the same for other property, for such price or prices and upon such terms as in the fiduciaries' discretion and judgment may be deemed for the best interest of the Estate or Trust, and to execute and deliver any deed or deeds (with or without warranty), receipts, releases, contracts, or other instruments necessary in connection therewith.



Kenneth Paine

Testator

D. To exercise any conversion privilege or subscription right available in connection with any securities or other property held.

E. To consent to the reorganization, consolidation, merger, or readjustment of the finances of any corporation, company, or association, or to the sale, mortgage, pledge, or lease of the Estate or Trust property thereof or any part thereof, or other property of which may at any time become a part of the Estate or Trust, and to do any act or exercise any power with reference thereto, including the exercise of conversion, subscription, purchase or other options, the deposit, surrender or exchange of securities, the entrance into voting trusts or shareholder agreements, and the making of agreements or subscriptions which the fiduciaries may deem necessary or advisable in connection therewith, all without applying to any court for permission to do so, and to hold and redeem or sell or otherwise dispose of any securities or other property which the fiduciaries may acquire.

F. To vote, personally or by general or limited proxy, any shares of stock included within the Trust corpus, and similarly to exercise, personally or by general or limited power of attorney, any right appurtenant to any securities or other property held by the Trustees.

G. To make distributions (including the satisfaction of any pecuniary bequest) to any person required under the terms of my Will, in cash or in specific property, real or personal, or an undivided interest therein or partly in cash and partly in such property, and to do so without regard to the income tax basis of specific property allocated to any



Testator

beneficiary (including any trust).

H. To register any securities held by the Trustees hereunder in the name of a nominee.

I. To compromise, settle, arbitrate, or defend any claim or demand in favor of or against the Estate or Trust (including litigation, whether commenced before or after my death); to enforce any bonds, mortgages, or other obligations or liens held hereunder; and to enter upon such contracts and agreements and to make such compromises or settlements of debts, claims, or controversies as the Personal Representatives or Trustees may deem necessary or advisable.

J. To incur and pay the ordinary and necessary expenses of administration, including (but not by way of limitation) reasonable attorneys' fees, accountants' fees, custodians' fees, and the like.

K. To deduct, retain, expend, and pay out of income or principal, in the discretion of the Trustees, any money belonging to the Trust, any and all necessary and proper expenses in connection with the operation and conduct of the Trust, and to pay all taxes, insurance premiums, and other legal assessments, debts, claims or charges which at any time may be due and owing by or which may exist against the Trust.

L. To determine the allocation of receipts between principal and income, provided such allocation or apportionment is not inconsistent with the beneficial enjoyment of Trust property accorded to a life tenant or remaindermen under the general principles of the law of trusts; provided, further, that all rights to subscribe to new or additional



[signature]
Testator

stock or securities and all liquidating dividends shall be deemed to be principal; provided, further, that all dividends payable in stock of the corporation declaring the same shall be deemed to be principal, except that such dividends paid at regular or substantially regular intervals out of income shall be deemed to be income; and provided further that all cash dividends, except liquidating dividends, shall be deemed to be income.

M. To act hereunder through an agent or attorney-in-fact, by and under power of attorney duly executed by the Personal Representatives or Trustees, in carrying out any of the powers and duties herein authorized.

N. To lease any or all of the real property held by the Trustees hereunder, for such amounts, upon such terms, and in such manner as to the Trustees may seem proper, whether providing for the construction of buildings or otherwise, and with or without the privilege of renewal, and for terms in excess of the statutory period for leases made by a Trustees. Any lease made in pursuance of this power shall be valid and effective and binding upon the remaindermen for the entire term thereof, including such part thereof as may extend beyond the date of the termination of any or all Trusts created hereby.

O. To modify the interest rate or any guaranty on any mortgage constituting a part of the Trust estate.

P. To continue mortgages upon and after maturity with or without renewal or extension upon such terms as may seem to the Trustees advisable, without reference to the value of the mortgage security at the time of such renewal or extension.



[signature]
Testator

Q. To foreclose, as an incident to collection of any bond or note, any mortgage securing such bond or note, and to purchase the mortgaged property or acquire the property by deed from the mortgagor without foreclosure.

R. To set up reserves out of income for taxes, assessments, repairs and general upkeep of real property.

S. To make all repairs and improvements at any time deemed necessary and proper to and upon real property constituting a part of the Trust, and to determine the extent to which the cost of such repairs and improvements shall be apportioned as between corpus and income.

T. To make, execute and deliver any and all deeds, leases, mortgages, conveyances, contracts, waivers, releases, or other instruments necessary or proper for the accomplishment of any of the foregoing powers and to do all other acts, which in the Personal Representatives' or Trustees' judgment, may be necessary or appropriate for the proper and advantageous management, investment and distribution of my estate.

U. To exercise such other powers vested in the Personal Representatives or the Trustees by the laws of the State of Florida as presently existing and as may be amended. In addition, the Trustees shall have the right to make such elections under the tax laws as the Trustees deem advisable without regard to the relative interest of the beneficiaries. My Personal Representatives shall allocate my generation-skipping tax exemption as they deem advise advisable, except that the exemption shall be allocated (a) first to property given by me rather than by another or appointed by me and; to direct skips caused by a disclaimer



Kenneth Paine
Testator

only if no other allocation is possible. Elections and allocations shall be made without regard to the relative interests of the beneficiaries and shall not be subject to question by any person. Notwithstanding anything stated above, my Personal Representatives shall not allocate any portion of my generation-skipping tax exemption of any trust created in Article III above. No adjustment shall be made between principal and income or in the relative interest of the beneficiaries to compensate for the effect of elections under the tax laws made by the Personal Representatives or by the Trustees.

XIV.

Anything contained herein to the contrary notwithstanding, whenever pursuant to the provisions of this Will, all or any part of the corpus of this estate shall vest in absolute ownership in any person who has not yet reached the age of twenty-one (21) years, I authorize and empower my Trustees to hold the property so vested in such person in a separate fund for the benefit of such person, notwithstanding that such property may consist of investments not authorized by law for estate funds and to invest and reinvest the same, collect the income therefrom, and during the period until such person has reached the age of twenty-one (21) years, to apply so much of the corpus and so much of the net income thereof to the health, support, education and maintenance of such person as my Trustees shall see fit, and to accumulate, invest and reinvest the balance of the income until such person shall attain the age of twenty-one (21) years, and thereupon to pay over the corpus, together with any accumulated and undistributed



Testator

# EXHIBIT "B"

Doc 0653

95-0069

CODICIL TO THE

LAST WILL AND TESTAMENT

OF

KENNETH L. PAINE

WHEREAS, I, KENNETH L. PAINE, a citizen of the United States of America and resident of the City of Hallandale, County of Broward and State of Florida, did, on the 22nd day of January, 1991, sign, declare and publish my Last Will and Testament in the presence of GENE K. GLASSER, JENNIFER WOLFE and JUDITH A. HOODIMAN, who signed the said Last Will and Testament as witnesses; and

WHEREAS, I am desirous of amending Articles III and IV of said Will and adding Article XVIII to said Will;

I, THEREFORE, make and publish this Codicil to said Last Will and Testament and also republish all of the terms of said Will not in conflict with this Codicil.

I hereby amend Article III of my Last Will and Testament in its entirety, to read as follows:

III.

In the event my wife, ELEANOR A. JENNINGS PAINE, should survive me, then I give, devise and bequeath fourteen (14%) percent of my estate, both real and personal, of whatever nature and wherever situated, including, without limitation, all property acquired by me after the execution of this Will, all property over which I may have a power of appointment, and all lapsed legacies and bequests, to my Trustees herein named IN TRUST, to be held in a separate trust to be known as Trust A, which Trust shall be administered as follows:

My Trustees shall collect and receive the income from Trust A and, after deducting all expenses



Kenneth L. Paine
Testator

incident to the administration thereof, shall, in at least quarter-annual or other, more frequent, convenient installments as nearly equal as possible, distribute to my wife, ELEANOR A. JENNINGS PAINE, or apply for her benefit all of the net income of the Trust. The trust corpus shall not be encroached.

My Personal Representatives shall have the right to elect to qualify or not to qualify this Trust for the marital deduction. In connection therewith, my Personal Representatives may elect to have a specific portion or all of Trust A, herein referred to as the "Marital Portion," treated as qualified terminable interest property for federal estate tax purposes. If an election is made with respect to less than all of Trust A, the specific portion shall be expressed as a fraction, and the value of the Marital Portion may be determined at any time by multiplying the value of Trust A at that time by the fraction then in effect.

Upon the death of my wife, ELEANOR A. JENNINGS PAINE, Trust A shall terminate, and the remaining trust corpus shall be distributed to my grandchildren, MERRI SELBY, RONALD SELBY, WILLIAM SELBY and STEPHEN SELBY, in equal shares, share and share alike, if living, and if not, then to the survivor(s) of them, except that (unless my wife directs otherwise by her last will and testament by making specific reference to the Trust herein) the Trustees shall first pay from the principal of the Marital Portion, directly or to my wife's personal representative as the Trustees deem advisable, the amount by which the estate and inheritance taxes assessed by reason of the death of my wife shall be increased as a result of the inclusion of the Marital Portion in her



Kenneth Paine
Testator

estate for such tax purposes. The Trustees' selection of assets to be sold to pay that amount and the tax effects thereof shall not be subject to question by any beneficiary. In connection therewith, upon the death of my wife, the Trustees shall be authorized to withhold distribution of an amount of property sufficient, in their judgment, to cover any liability that may be imposed upon the Trustees from estate or other taxes until such liability is finally determined. I further direct that my wife must allocate her generation-skipping tax exemption or any similar exemption, exclusion or other benefit allowable under the law in force when she dies to any property of this Trust with respect to which she could be deemed to be the transferor within the meaning of Section 2652(a) of the Internal Revenue Code.

Notwithstanding any other provisions contained in this Last Will and Testament to the contrary, all income of the Marital Portion accrued or undistributed at the death of my wife shall be paid to her estate.

It is my intention that this Trust satisfy the eligibility requirements of the marital deduction allowable in determining the federal estate tax upon my estate. Accordingly, (a) I hereby direct that no authorization, direction or other provision contained within this, my Last Will and Testament, which would prevent this Trust from so qualifying, shall apply to this Trust; and (b) I hereby state that it is my intention that any court having jurisdiction over this, my Last Will and Testament, construe this instrument accordingly.

If my wife should fail to survive me, then the devise under this Article for her benefit shall lapse



Kenneth Paine
Testator

and shall be distributed as a part of my residuary estate hereinafter disposed of.

I hereby amend Article IV of my Last Will and Testament in its entirety, to read as follows:

IV.

All of the rest of my estate, both real and personal, of whatever nature and wherever situated, including, without limitation, all property acquired by me after the execution of this Will, all property over which I may have a power of appointment, and all lapsed legacies and bequests, I give, devise and bequeath as follows:

A. Sixty-five (65%) percent shall be distributed equally among the following named grandchildren, MERRI SELBY, RONALD SELBY, WILLIAM SELBY and STEPHEN SELBY, if living, and if not, then to the survivor(s) of MERRI SELBY, RONALD SELBY, WILLIAM SELBY and STEPHEN SELBY.

B. The remaining thirty-five (35%) percent shall remain IN TRUST. My Trustees, hereinafter named, shall collect and receive the income therefrom and, after deducting all expenses incident to the administration thereof, shall, in at least quarter-annual or other, more frequent, convenient installments as nearly equal as possible, distribute all of the net income to my daughter, ESTHER SUSAN WILSON, for the duration of her lifetime. The Trust corpus shall not be encroached.

**My daughter, ESTHER SUSAN WILSON, shall have, alone and in all events, the power to appoint by her last will and testament, the entire remaining corpus of this Trust, including any accrued or undistributed income on the date of her death (as if it had been**



Kenneth Paine
Testator

received), free of this Trust, to her creditors or to the creditors of her estate; provided, however, that the exercise of the power of appointment must be by specific reference to this power herein granted.

Upon the death of my daughter, ESTHER SUSAN WILSON, or if she should predecease me, the remaining Trust corpus not so appointed, together with all undistributed income thereof, if any, shall be distributed to my granddaughter, MERRI SELBY, if then living. In the event MERRI SELBY should predecease me or die before final distribution of the trust for ESTHER SUSAN WILSON, then the amount she was to receive shall be distributed to RONALD SELBY, WILLIAM SELBY and STEPHEN SELBY, in equal shares, share and share alike, if living, and if not, then to the survivor(s) of RONALD SELBY, WILLIAM SELBY and STEPHEN SELBY.

I hereby add Article XVIII to my Last Will and Testament, to read as follows:

XVIII.

I have intentionally made no provision herein for the benefit of my granddaughter, BARBARA SELBY. Said omission is not because of oversight or inadvertence, but for reasons known only by me.

IN WITNESS WHEREOF, I have signed and published this Codicil to my Last Will and Testament on this 29 day of March, 1993.

[signature] (SEAL)
KENNETH L. PAINE

This instrument, consisting of six (6) pages including the following page, was signed, sealed, published and declared by KENNETH L. PAINE, the above-named Testator, as and for his Codicil to his Last Will and Testament in the presence of each of us, and we, at his request, in his presence and in the presence of each

other, have hereunto subscribed our names as witnesses this 29 day of March, 1993.

| | |
|---|---|
| [signature] | 4231 [illegible]<br>Hollywood Fla |
| [signature] | 11601 N.W. 51 Ct.<br>Cooper City Fla. |
| [signature] | 630 SW 6th Terr<br>[illegible] Fl 33023 |

PAINEK.COD
ABC:ab
3/22/93

(LAST WILL AND TESTAMENT OF KENNETH L. PAINE - Page 6)

[signature]
Testator

STATE OF FLORIDA )
) SS:
COUNTY OF BROWARD )

WE, KENNETH L. PAINE, SUE SKORNIA, ______ GENE K. GLASSER, and BONNIE H. HALE, the Testator and the witnesses, respectively, whose names are signed to the attached or foregoing instrument, being first duly sworn, do hereby declare to the undersigned officer that the Testator signed the instrument as his Codicil to his Last Will and Testament, that he signed voluntarily, that each of the witnesses, at the Testator's request, in his presence of and in the presence of each other, signed the Codicil to his Last Will and Testament as a witness, and that the Testator was at that time eighteen (18) years of age or more, of sound mind and under no constraint or undue influence.

Testator

Witness

Witness

Witness

The foregoing Codicil to Last Will and Testament was subscribed and acknowledged before me by KENNETH L. PAINE, the Testator, who is personally known to me or has produced ______ N/A ______ as identification and who did take an oath, and subscribed and sworn to before me by SUE SKORNIA, GENE K. GLASSER ______ and BONNIE H. HALE, the witnesses, who are personally known to me and who did take an oath, on this 29th day of March, 1993.

Notary Public, State of Florida
Commission No. CC 015916

My Commission Expires:

NOTARY PUBLIC STATE OF FLORIDA
MY COMMISSION EXP. MAY 28,1994
BONDED THRU GENERAL INS. UND.

STATE OF FLORIDA
COUNTY OF BROWARD

I DO HEREBY CERTIFY the within and foregoing is a true and correct copy [illegible] appears on record [illegible] County, [illegible] Clerk of Broward [illegible]

WITNESS [illegible] Florida, this the 16 [illegible] March 19 95

William Dlyh

# EXHIBIT "C"

COPY

# Last Will and Testament

STATE OF ALABAMA

COUNTY OF MOBILE

I, **ESTHER SUSAN WILSON, ( sometimes known as Esther Susan Turner Wilson )** of Citronelle, Alabama, being of sound mind and disposing memory, do hereby make this my Last Will and Testament, hereby revoking any and all former Wills by me heretofore made.

**ARTICLE I**

I declare that I am divorced and not remarried and I have one adult daughter, MERRI SAMSON, whom I have excluded as a beneficiary hereunder, for personal reasons.

**ARTICLE II**

I direct that my Personal Representative pay, as soon as is practicable after my death, and prior to any distribution to my devisees and legatees herein, all of my lawful debts, my funeral expenses and the expenses of administration of my estate, as well as any estate, inheritance, succession and other taxes assessed by reason of my death, imposed by the Federal or State government; PROVIDED, HOWEVER, that if any property passing under this Will or by operation of law, by reason of death shall be encumbered by mortgage or other lien, the party receiving such property shall take the same subject to the encumbrances existing at the time of my death.

**ARTICLE III**

In Article IV B. of the Codicil dated March 29, 1993, to the Last Will And Testament of my father, Kenneth L. Paine, who died on December 22, 1994, which has been admitted to Probate in Broward County, Florida, I was granted the power to appoint by my Last Will And Testament, the entire remaining corpus of the Testamentary Trust established for my benefit in said Codicil.

Esther Susan Wilson

I hereby exercise said power of appointment by devising and appointing to my good friends, James W. Stokes and Sondra Lynn Blakely, if they both survive me or the surviving one of them if either shall predecease me, the entire remaining corpus of said trust, including any accrued or undistributed income existing on the date of my death.

ARTICLE IV

I hereby give and bequeath to my friend, Sondra Lynn Blakely, if she survives me, all of my jewelry and wearing apparel.

ARTICLE V

I hereby give, devise and bequeath to my friend, James W. Stokes, if he survives me, the real property on which I reside at 8513 Walter Stewart Road, Citronelle, Alabama, 36522, which is more particularly described as follows:

> **The Northeast ¼ of the Northeast ¼ of Section 23, Township 1 North, Range 3 West, Mobile County, Alabama.**

together with all of the household furnishings, furniture and equipment located in my residence, including china, silver and cooking utensils, and the tools, farming and gardening equipment located thereon.

ARTICLE VI

I hereby give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed, unto my said friend, James W. Stokes, if he survives me.

ARTICLE VII

In the event that Sondra Lynn Blakely fails to survive me, I give, devise and bequeath the share in my estate which she would have received hereunder, if living, to James W. Stokes; and

In the event that James W. Stokes fails to survive me, I give, devise and bequeath the share in my estate which he would have received hereunder, if living, to Sondra Lynn Blakely.

Esther Susan Wilson

## ARTICLE VIII

I hereby nominate, constitute and appoint my friend, James W. Stokes, as Personal Representative of this my Last Will and Testament and hereby expressly exempt him from giving any bond or filing any inventory of the property coming into his hands and the making of any reports to or settlements in any Court or other tribunal with respect to his proceedings hereunder; and do hereby confer upon my said Personal Representative full and complete power to sell, convey, exchange or otherwise dispose of, either at public or private sale, and mortgage, pledge or otherwise encumber, any and all property assets owned by me at the time of my death or coming into his hands as such Personal Representative, all in his absolute discretion and without an order of Court or other authority, and in his absolute discretion to borrow money and to do any and all things with, or with respect to, any and all property and assets belonging to my estate which I might lawfully do if I were living; and all other powers which a Testatrix may lawfully confer upon her Personal Representative.

In the event that James W. Stokes does not survive me, or if for any reason he should fail to qualify as such Personal Representative or should he, after qualifying, for any reason refuse or become unable to continue to act, then I hereby nominate, constitute and appoint my friend, Sondra Lynn Blakely, as Personal Representative hereunder, with the same powers, privileges and exemptions hereinabove enumerated.

## ARTICLE IX

Being mindful of the unavoidable lapse between the time of my death and the issuance of Letters Testamentary following the probate of my Will, I expressly authorize, confirm and approve all acts and things which may be done by my Personal Representative herein named for the benefit of my estate during the period between my death and the issuance of Letters Testamentary, if done in good faith and within the power and authority which will become vested in such Personal Representative upon the issuance of Letters Testamentary. Accordingly, all such acts undertaken by my Personal Representative for the benefit of my estate shall become and be valid acts and shall be regarded and treated in all respects as though done subsequent to the issuance of Letters Testamentary.

Esther Susan Wilson

I, the undersigned Testatrix, sign my name to this instrument on this the 11TH day of August 2004, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my Last Will and Testament and that I sign it willingly, that I execute it as my free and voluntary act for the purposes therein expressed, and that I am nineteen years of age or older, of sound mind and under no constraint or undue influence.

Esther Susan Wilson
**ESTHER SUSAN WILSON**

We, the undersigned witnesses, sign our names to this instrument, and being first duly sworn, do hereby declare to the undersigned authority that the Testatrix signs and executes this instrument as his Last Will and Testament and that she signs it willingly, and that each of us, in the presence and hearing of the Testatrix, hereby signs this Will as witnesses to the Testatrix' signing, and that to the best of our knowledge the Testatrix is nineteen years of age or older, of sound mind and under no constraint or undue influence.

Steve F. McFadden, 718 Downtowner Blvd., Mobile, AL. 36609
(Name) (Address)

Marjorie T. Gaston " " " " "
(Name) (Address)

State of Alabama
County of Mobile

Subscribed, sworn to and acknowledged before me by **ESTHER SUSAN WILSON**, the Testatrix, and subscribed and sworn to before me by Steve F. McFadden and Marjorie T. Gaston, witnesses, on this the 11th day of August, 2004.

Mary Lou Delchamps
Notary Public, Alabama State at Large
My Commission Expires: 6-08-08

This Instrument Prepared By:

Stova F. McFadden, Attorney
MCFADDEN, LYON & ROUSE, L.L.C.
718 Downtowner Boulevard
Mobile, Alabama 36609
(251) 342-9172

# EXHIBIT "D"

TRUIST

| Statement Period | Account Number |
|---|---|
| January 1 , 2025 - October 31, 2025 | 5200134 |

# Account Statement

*Page 1 of 32*

MERRI SELBY SAMSON
672 LOHRMAN LANE
PETALUMA, CA 94952-1649

TRUIST BANK TTEE U/W
OF KENNETH L PAINE FBO
ESTHER SUSAN WILSON

| Gain/Loss Summary | *Year-To-Date* |
|---|---|
| Short Term | $0.00 |
| Long Term | $110,466.75 |

**Account Administrator:** CLOSED ACCOUNT
**Phone:** 000-000-0000 **Email:**

**Portfolio Manager:** CLOSED ACCOUNTS
**Phone:** 000-000-0000 **Email:**

**Private Client Advisor:** CLOSED ACCOUNT
**Phone:** **Email:**

## Market Value Summary

| VALUE AS OF 10/31/2025 | VALUE AS OF 12/31/2024 | NET CHANGE THIS PERIOD ($) | NET CHANGE THIS PERIOD (%) | UNREALIZED GAIN/LOSS AS OF 10/31/2025 | VALUE AS OF 12/31/2024 | NET CHANGE YEAR TO DATE ($) |
|---|---|---|---|---|---|---|
| $0.00 | $415,251.14 | - $415,251.14 | -100.00% | $0.00 | $415,251.14 | -$415,251.14 |

*Market Values shown above do not contain accrued income. Accrued income for this statement period is $0.00*

*NOTE: The "VALUE AS OF 12/31/2024" may differ from your previous statement due to corrections in prior prices. See the Explanation of Account Statement Features for more information.*

## Portfolio Summary

ASSET ALLOCATION AS OF 10/31/2025

Pie Chart Not Applicable

ASSET ALLOCATION AS OF 12/31/2024




| ASSET DESCRIPTION | MARKET VALUE AS OF 10/31/2025 | % OF PORTFOLIO | MARKET VALUE AS OF 12/31/2024 | % OF PORTFOLIO |
|---|---|---|---|---|
| Short Term Investments | 0.00 | 0.00 | 16,319.53 | 3.93 |
| Bonds | 0.00 | 0.00 | 116,919.38 | 28.16 |
| Common Stocks | 0.00 | 0.00 | 281,864.79 | 67.88 |
| Cash | 0.00 | 0.00 | 147.44 | 0.04 |
| Totals | $0.00 | 100.00 | $415,251.14 | 100.00 |

***Access your Trust and Portfolio Management accounts 24 hours a day, seven days a week.*** *We are pleased to offer secure online access to your account information. In addition to 18 months of detailed transactions, you can access statements, market value details, pending trades, and much more. For more information, contact your Account Administrator listed above.*

TRUIST

| Statement Period | Account Number | |
|---|---|---|
| January 1 , 2025 - October 31, 2025 | 5200134 | **Account Statement** |
| | PAINE, KENNETH FBO SUSAN TW1737 |  |

## Cash Activity Summary

| DESCRIPTION | INCOME CASH THIS PERIOD | PRINCIPAL CASH THIS PERIOD | TOTAL CASH THIS PERIOD | TOTAL CASH YEAR TO DATE |
|---|---|---|---|---|
| **Receipts** | | | | |
| Dividends | 5,989.33 | 0.00 | 5,989.33 | 5,989.33 |
| Other Receipts | 8,850.08 | 133.24 | 8,983.32 | 8,983.32 |
| Sales & Maturities | 0.00 | 430,548.19 | 430,548.19 | 430,548.19 |
| **Total Receipts** | **$14,839.41** | **$430,681.43** | **$445,520.84** | **$445,520.84** |
| **Disbursements** | | | | |
| Disbursements | -11,934.00 | -431,928.48 | -443,862.48 | -443,862.48 |
| Administrative Expenses | -4,570.97 | -4,571.04 | -9,142.01 | -9,142.01 |
| Other Disbursements | -133.24 | -8,850.08 | -8,983.32 | -8,983.32 |
| Misc Investment Changes | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Disbursements** | **-$16,638.21** | **-$445,349.60** | **-$461,987.81** | **-$461,987.81** |
| **Cash Sweep** | | | | |
| Sweep Purchases | -5,061.16 | 0.00 | -5,061.16 | -5,061.16 |
| Sweep Sales | 6,712.52 | 14,668.17 | 21,380.69 | 21,380.69 |
| **Total Cash Sweep** | **$1,651.36** | **$14,668.17** | **$16,319.53** | **$16,319.53** |
| **Net Receipts/Disbursements** | **-$147.44** | **$0.00** | **-$147.44** | **-$147.44** |

## Portfolio Detail

| ASSET DESCRIPTION | NO. OF SHARES/ PAR VALUE | UNIT PRICE | MARKET VALUE | PERCENT OF PORTFOLIO | TAX COST BASIS | ESTIMATED ANNUAL INCOME | ACCRUED INCOME | YIELD AT MARKET |
|---|---|---|---|---|---|---|---|---|
| **Total** | | | **$0.00** | | **$0.00** | **$0** | **$0.00** | **0.00%** |
| **Total** | | | **$0.00** | **0.00%** | **$0.00** | **$0** | **$0.00** | **0.00%** |

TRUIST

**Statement Period**
January 1 , 2025 - October 31, 2025

**Account Number**
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Investment Sales and Maturities - *continued*

| DATE | DESCRIPTION | NO. OF SHARES/PAR VALUE | TAX COST BASIS | PROCEEDS | REALIZED GAIN/LOSS |
|---|---|---|---|---|---|
| 9/11/2025 | SOLD 150 SHARES OF<br>EXXON MOBIL CORP<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $2.25 BROKERAGE<br>SOLD ON THE NEW YORK STOCK EXCHANGE, INC.<br>TAXABLE TO FEDERAL AND STATE<br>150 SHARES AT $112.325 | 150.00 | -2,792.06 | 16,846.50 | 14,054.44 |
| 9/11/2025 | SOLD 200 SHARES OF<br>INVESCO S&P 500 PURE VALUE ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $3.00 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>200 SHARES AT $97.2108 | 200.00 | -14,935.18 | 19,439.16 | 4,503.98 |
| 9/11/2025 | SOLD 86 SHARES OF<br>ISHARES GOLD TRUST<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $1.29 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>86 SHARES AT $68.7023 | 86.00 | -3,874.87 | 5,907.11 | 2,032.24 |
| 9/11/2025 | SOLD 236 SHARES OF<br>ISHARES CORE S&P 500 ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $3.54 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>236 SHARES AT $654.7812 | 236.00 | -86,536.16 | 154,524.82 | 67,988.66 |
| 9/11/2025 | SOLD 48 SHARES OF<br>ISHARES BARCLAYS 1-3 YEAR TR ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $0.72 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>48 SHARES AT $82.935 | 48.00 | -3,912.12 | 3,980.16 | 68.04 |

TRUIST

**Statement Period**
January 1 , 2025 - October 31, 2025

**Account Number**
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Investment Sales and Maturities *- continued*

| DATE | DESCRIPTION | NO. OF SHARES/PAR VALUE | TAX COST BASIS | PROCEEDS | REALIZED GAIN/LOSS |
|---|---|---|---|---|---|
| 9/11/2025 | SOLD 91 SHARES OF<br>ISHARES CORE S&P SMALL-CAP ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $1.37 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>91 SHARES AT $117.6046 | 91.00 | -9,912.17 | 10,700.65 | 788.48 |
| 9/11/2025 | SOLD 240 SHARES OF<br>ISHARES BROAD USD INVT GRADE CORP BD<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $3.60 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>240 SHARES AT $52.2703 | 240.00 | -12,090.60 | 12,541.27 | 450.67 |
| 9/11/2025 | SOLD 114 SHARES OF<br>ISHARES 10-20 YEAR TREASURY BOND ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $1.71 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>114 SHARES AT $103.6266 | 114.00 | -11,733.74 | 11,811.72 | 77.98 |
| 9/11/2025 | SOLD 1,973 SHARES OF<br>ISHARES US TREASURY BOND ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $29.60 BROKERAGE<br>SOLD ON THE NYSE MKT LLC<br>TAXABLE TO FEDERAL AND STATE<br>1,973 SHARES AT $23.19 | 1,973.00 | -48,042.46 | 45,724.27 | -2,318.19 |
| 9/11/2025 | SOLD 144 SHARES OF<br>ISHARES GSCI CMMDTY DYNMC ROLL ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $2.16 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>144 SHARES AT $26.715 | 144.00 | -3,919.61 | 3,844.80 | -74.81 |

TRUIST

Statement Period
January 1 , 2025 - October 31, 2025

Account Number
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Investment Sales and Maturities *- continued*

| DATE | DESCRIPTION | NO. OF SHARES/PAR VALUE | TAX COST BASIS | PROCEEDS | REALIZED GAIN/LOSS |
|---|---|---|---|---|---|
| 9/11/2025 | SOLD 150 SHARES OF<br>SCHLUMBERGER LTD<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $2.25 BROKERAGE<br>SOLD ON THE NEW YORK STOCK EXCHANGE, INC.<br>TAXABLE TO FEDERAL AND STATE<br>150 SHARES AT $35.995 | 150.00 | -1,999.47 | 5,397.00 | 3,397.53 |
| 9/22/2025 | SOLD 384.903 SHARES OF<br>EDGEWOOD GROWTH FUND-INS<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>384.903 SHARES AT $47.06 | 384.90 | -14,734.77 | 18,113.53 | 3,378.76 |
| 9/22/2025 | SOLD 432.19 SHARES OF<br>ARTISAN INTL VALUE FUND-INS<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>432.19 SHARES AT $54.42 | 432.19 | -20,030.00 | 23,519.78 | 3,489.78 |
| 9/22/2025 | SOLD 1,233.065 SHARES OF<br>DOUBLELINE TTL RTRN BND-R6<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>1,233.065 SHARES AT $8.95 | 1,233.07 | -13,541.08 | 11,035.93 | -2,505.15 |
| 9/22/2025 | SOLD 340.425 SHARES OF<br>EATON VANCE-ATLANTA SMID-R6<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>340.425 SHARES AT $40.52 | 340.43 | -7,648.09 | 13,794.02 | 6,145.93 |
| 9/22/2025 | SOLD 61.849 SHARES OF<br>EATON VANCE FLOATING RATE-R6<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>61.849 SHARES AT $8.21 | 61.85 | -560.99 | 507.78 | -53.21 |
| 9/22/2025 | SOLD 701.045 SHARES OF<br>JOHCM INTERNATIONAL SEL-INST<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>701.045 SHARES AT $27.63 | 701.05 | -13,803.57 | 19,369.87 | 5,566.30 |

TRUIST

Statement Period
January 1 , 2025 - October 31, 2025

Account Number
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Investment Sales and Maturities *- continued*

| DATE | DESCRIPTION | NO. OF SHARES/PAR VALUE | TAX COST BASIS | PROCEEDS | REALIZED GAIN/LOSS |
|---|---|---|---|---|---|
| 9/22/2025 | SOLD 751.144 SHARES OF<br>JOHN HANCOCK III-DISCPL V-R6<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>751.144 SHARES AT $25.62 | 751.14 | -12,526.19 | 19,244.31 | 6,718.12 |
| 9/22/2025 | SOLD 1,025.466 SHARES OF<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>1,025.466 SHARES AT $9.23 | 1,025.47 | -10,383.22 | 9,465.05 | -918.17 |
| 9/22/2025 | SOLD 1,657.001 SHARES OF<br>PIMCO INCOME FUND-INS<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>1,657.001 SHARES AT $10.90 | 1,657.00 | -19,509.56 | 18,061.31 | -1,448.25 |
| 9/22/2025 | SOLD 357.592 SHARES OF<br>VANGUARD M/B SEC INDEX-ADM<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>357.592 SHARES AT $18.79 | 357.59 | -7,595.53 | 6,719.15 | -876.38 |
| **Total Investment Sales and Maturities** | | | **-$320,081.44** | **$430,548.19** | **$110,466.75** |

TRUIST

| Statement Period | Account Number | |
|---|---|---|
| January 1 , 2025 - October 31, 2025 | 5200134 | **Account Statement** |
| | PAINE, KENNETH FBO SUSAN TW1737 | *Page 7 of 32* |

## Activity Detail

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| **1/1/2025** | **STATEMENT BEGINNING BALANCE** | | **$147.44** | **$0.00** | **$336,485.83** |
| 1/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 12/1/24 TO 12/31/24 | | 2.65 | | |
| 1/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 12/1/24 TO 12/31/24 | | 43.48 | | |
| 1/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON DOUBLELINE TTL RTRN BND-R6 $0.039582/SHARE ON 1,233.065 SHARES DUE 12/31/24 | 1,233.07 | 48.81 | | |
| 1/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON EATON VANCE FLOATING RATE-R6 DIVIDEND FROM 12/1/24 TO 12/31/24 | 61.85 | 3.35 | | |
| 1/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INVESTMENT GRADE CREDIT BD-I DIVIDEND FROM 12/1/24 TO 12/31/24 | 1,025.47 | 37.57 | | |
| 1/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INCOME FUND-INS DIVIDEND FROM 12/1/24 TO 12/31/24 | 1,657.00 | 91.14 | | |
| 1/9/2025 | CASH RECEIPT OF DIVIDEND EARNED ON SCHLUMBERGER LTD $0.275/SHARE ON 150 SHARES DUE 1/9/25 | 150.00 | 41.25 | | |
| 1/10/2025 | CASH DISBURSEMENT PAID TO ESTHER SUSAN WILSON ACH BENEFICIARY DISTRIBUTION UNITRUST DISTRIBUTION | | -1,348.03 | | |
| 2/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 1/1/25 TO 1/31/25 | | 2.89 | | |
| 2/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 1/1/25 TO 1/31/25 | | 52.63 | | |

TRUIST

| Statement Period | Account Number |
|---|---|
| January 1 , 2025 - October 31, 2025 | 5200134 |
| | PAINE, KENNETH FBO SUSAN TW1737 |

# Account Statement



## Activity Detail - *continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 2/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON DOUBLELINE TTL RTRN BND-R6 $0.034812/SHARE ON 1,233.065 SHARES DUE 1/31/25 | 1,233.07 | 42.93 | | |
| 2/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INVESTMENT GRADE CREDIT BD-I DIVIDEND FROM 1/1/25 TO 1/31/25 | 1,025.47 | 36.11 | | |
| 2/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INCOME FUND-INS DIVIDEND FROM 1/1/25 TO 1/31/25 | 1,657.00 | 91.14 | | |
| 2/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON VANGUARD M/B SEC INDEX-ADM $0.0633/SHARE ON 357.592 SHARES DUE 2/3/25 | 357.59 | 22.64 | | |
| 2/4/2025 | CASH RECEIPT OF DIVIDEND EARNED ON EATON VANCE FLOATING RATE-R6 DIVIDEND FROM 1/1/25 TO 1/31/25 | 61.85 | 3.33 | | |
| 2/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BARCLAYS 1-3 YEAR TR ETF $0.273496/SHARE ON 48 SHARES DUE 2/6/25 | 48.00 | 13.13 | | |
| 2/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BROAD USD INVT GRADE CORP BD $0.194638/SHARE ON 240 SHARES DUE 2/6/25 | 240.00 | 46.71 | | |
| 2/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES 10-20 YEAR TREASURY BOND ETF $0.348575/SHARE ON 114 SHARES DUE 2/6/25 | 114.00 | 39.74 | | |
| 2/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES US TREASURY BOND ETF $0.067404/SHARE ON 1,973 SHARES DUE 2/6/25 | 1,973.00 | 132.99 | | |
| 2/10/2025 | CASH DISBURSEMENT TRANSFER TO INCOME | | | -2,248.98 | |
| 2/10/2025 | CASH DISBURSEMENT PAID TO ESTHER SUSAN WILSON ACH BENEFICIARY DISTRIBUTION UNITRUST DISTRIBUTION | | -1,348.03 | | |

TRUIST



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 2/10/2025 | CASH DISBURSEMENT<br>PAID TO ESTHER SUSAN WILSON<br>ACH BENEFICIARY DISTRIBUTION<br>2025 UNIITRUST | | -1,302.60 | | |
| 2/10/2025 | CASH RECEIPT<br>TRANSFER FROM PRINCIPAL | | 2,248.98 | | |
| 2/14/2025 | FED BASIS OF PIMCO INVESTMENT GRADE CREDIT BD-I<br>ADJUSTED BY $1.83-<br>OLD: $586.48 /NEW: $584.65<br>FIXED FEDRL TX CST FROM $586.48 TO $584.65 | | | | -1.83 |
| 2/14/2025 | FED BASIS OF PIMCO INVESTMENT GRADE CREDIT BD-I<br>ADJUSTED BY $1.29-<br>OLD: $418.67 /NEW: $417.38<br>FIXED FEDRL TX CST FROM $418.67 TO $417.38 | | | | -1.29 |
| 2/14/2025 | FED BASIS OF PIMCO INVESTMENT GRADE CREDIT BD-I<br>ADJUSTED BY $40.93-<br>OLD: $13,427.58 /NEW: $13,386.65<br>FIXED FEDRL TX CST FROM $13427.58 TO $13386.65 | | | | -40.93 |
| 2/14/2025 | FED BASIS OF PIMCO INVESTMENT GRADE CREDIT BD-I<br>ADJUSTED BY $7.54-<br>OLD: $2,368.59 /NEW: $2,361.05<br>FIXED FEDRL TX CST FROM $2368.59 TO $2361.05 | | | | -7.54 |
| 2/14/2025 | GAIN/LOSS FOR PIMCO INVESTMENT GRADE CREDIT BD-I<br>WAS RECALCULATED<br>ORIGINAL TRN DATE: 05/17/24-TRN #ZY000624 000544<br>FED LT LOSS ADJUSTED BY: 51.59<br>OLD: -2,732.32 NEW: -2,680.73<br>STATE LT LOSS ADJUSTED BY: 51.59<br>OLD: -2,732.32 NEW: -2,680.73<br>FED COST OLD: 16,801.32 NEW: 16,749.73<br>STATE COST OLD: 16,801.32 NEW: 16,749.73<br>ROCR ADJUSTMENT<br>GAIN/LOSS FOR 05/17/24 TRN #ZY000624 000544 | | | | |

TRUIST

**Statement Period** January 1 , 2025 - October 31, 2025

**Account Number** 5200134

PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail - *continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 2/14/2025 | INVESTMENT IN<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>BALANCE DECREASED BY $10.83 TO $10,720.60<br>FED BASIS DECREASED BY $10.83 TO $10,405.66<br>THROUGH TAX FREE RETURN OF CAPITAL<br>NO CASH RECEIVED<br>RECLASS BY CORP OF PRIOR YR INCOME PAID 01/31/24 | 1,025.47 | | | -10.83 |
| 2/14/2025 | INVESTMENT IN<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>BALANCE DECREASED BY $11.42 TO $10,709.18<br>FED BASIS DECREASED BY $11.42 TO $10,394.24<br>THROUGH TAX FREE RETURN OF CAPITAL<br>NO CASH RECEIVED<br>RECLASS BY CORP OF PRIOR YR INCOME PAID 02/29/24 | 1,025.47 | | | -11.42 |
| 2/14/2025 | INVESTMENT IN<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>BALANCE DECREASED BY $11.02 TO $10,698.16<br>FED BASIS DECREASED BY $11.02 TO $10,383.22<br>THROUGH TAX FREE RETURN OF CAPITAL<br>NO CASH RECEIVED<br>RECLASS BY CORP OF PRIOR YR INCOME PAID 03/28/24 | 1,025.47 | | | -11.02 |
| 3/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 2/1/25 TO 2/28/25 | | 0.62 | | |
| 3/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 2/1/25 TO 2/28/25 | | 40.58 | | |
| 3/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>DOUBLELINE TTL RTRN BND-R6<br>$0.034528/SHARE ON 1,233.065 SHARES DUE 2/28/25 | 1,233.07 | 42.58 | | |
| 3/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>EATON VANCE FLOATING RATE-R6<br>DIVIDEND FROM 2/1/25 TO 2/28/25 | 61.85 | 2.99 | | |
| 3/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>DIVIDEND FROM 2/1/25 TO 2/28/25 | 1,025.47 | 34.01 | | |

TRUIST

**Statement Period**
January 1 , 2025 - October 31, 2025

**Account Number**
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 3/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INCOME FUND-INS DIVIDEND FROM 2/1/25 TO 2/28/25 | 1,657.00 | 91.14 | | |
| 3/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON VANGUARD M/B SEC INDEX-ADM $0.0631/SHARE ON 357.592 SHARES DUE 3/3/25 | 357.59 | 22.56 | | |
| 3/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BARCLAYS 1-3 YEAR TR ETF $0.25314/SHARE ON 48 SHARES DUE 3/6/25 | 48.00 | 12.15 | | |
| 3/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BROAD USD INVT GRADE CORP BD $0.196032/SHARE ON 240 SHARES DUE 3/6/25 | 240.00 | 47.05 | | |
| 3/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES 10-20 YEAR TREASURY BOND ETF $0.246557/SHARE ON 114 SHARES DUE 3/6/25 | 114.00 | 28.11 | | |
| 3/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES US TREASURY BOND ETF $0.06131/SHARE ON 1,973 SHARES DUE 3/6/25 | 1,973.00 | 120.96 | | |
| 3/10/2025 | CASH DISBURSEMENT TRANSFER TO INCOME | | | -1,112.19 | |
| 3/10/2025 | CASH DISBURSEMENT PAID TO ESTHER SUSAN WILSON ACH BENEFICIARY DISTRIBUTION 2025 UNIITRUST | | -1,302.60 | | |
| 3/10/2025 | CASH RECEIPT TRANSFER FROM PRINCIPAL | | 1,112.19 | | |
| 3/10/2025 | CASH RECEIPT OF DIVIDEND EARNED ON EXXON MOBIL CORP $0.99/SHARE ON 150 SHARES DUE 3/10/25 | 150.00 | 148.50 | | |
| 3/21/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES CORE S&P 500 ETF $1.764574/SHARE ON 236 SHARES DUE 3/21/25 | 236.00 | 416.44 | | |

TRUIST

**Statement Period**
January 1 , 2025 - October 31, 2025

**Account Number**
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 3/21/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES CORE S&P SMALL-CAP ETF $0.323181/SHARE ON 91 SHARES DUE 3/21/25 | 91.00 | 29.41 | | |
| 3/28/2025 | CASH RECEIPT OF DIVIDEND EARNED ON INVESCO S&P 500 PURE VALUE ETF $0.672/SHARE ON 200 SHARES DUE 3/28/25 | 200.00 | 134.40 | | |
| 3/31/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ARTISAN INTL VALUE FUND-INS $0.086364/SHARE ON 432.19 SHARES DUE 3/28/25 | 432.19 | 37.33 | | |
| 4/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 3/1/25 TO 3/31/25 | | 0.89 | | |
| 4/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 3/1/25 TO 3/31/25 | | 37.72 | | |
| 4/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON DOUBLELINE TTL RTRN BND-R6 $0.037602/SHARE ON 1,233.065 SHARES DUE 3/31/25 | 1,233.07 | 46.37 | | |
| 4/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON EATON VANCE FLOATING RATE-R6 DIVIDEND FROM 3/1/25 TO 3/31/25 | 61.85 | 3.36 | | |
| 4/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INVESTMENT GRADE CREDIT BD-I DIVIDEND FROM 3/1/25 TO 3/31/25 | 1,025.47 | 35.10 | | |
| 4/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INCOME FUND-INS DIVIDEND FROM 3/1/25 TO 3/31/25 | 1,657.00 | 91.14 | | |
| 4/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON VANGUARD M/B SEC INDEX-ADM $0.0652/SHARE ON 357.592 SHARES DUE 4/1/25 | 357.59 | 23.31 | | |
| 4/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON SCHLUMBERGER LTD $0.285/SHARE ON 150 SHARES DUE 4/3/25 | 150.00 | 42.75 | | |

TRUIST

# Account Statement



**Statement Period**
January 1 , 2025 - October 31, 2025

**Account Number**
5200134
PAINE, KENNETH FBO SUSAN TW1737

## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 4/4/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES BARCLAYS 1-3 YEAR TR ETF<br>$0.279789/SHARE ON 48 SHARES DUE 4/4/25 | 48.00 | 13.43 | | |
| 4/4/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES BROAD USD INVT GRADE CORP BD<br>$0.194716/SHARE ON 240 SHARES DUE 4/4/25 | 240.00 | 46.73 | | |
| 4/4/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES 10-20 YEAR TREASURY BOND ETF<br>$0.369715/SHARE ON 114 SHARES DUE 4/4/25 | 114.00 | 42.15 | | |
| 4/4/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES US TREASURY BOND ETF<br>$0.071482/SHARE ON 1,973 SHARES DUE 4/4/25 | 1,973.00 | 141.03 | | |
| 4/10/2025 | CASH DISBURSEMENT<br>TRANSFER TO INCOME | | | -550.74 | |
| 4/10/2025 | CASH DISBURSEMENT<br>PAID TO ESTHER SUSAN WILSON<br>ACH BENEFICIARY DISTRIBUTION<br>2025 UNITRUST | | -1,302.60 | | |
| 4/10/2025 | CASH RECEIPT<br>TRANSFER FROM PRINCIPAL | | 550.74 | | |
| 5/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 4/1/25 TO 4/30/25 | | 0.96 | | |
| 5/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 4/1/25 TO 4/30/25 | | 32.36 | | |
| 5/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>DOUBLELINE TTL RTRN BND-R6<br>$0.03552/SHARE ON 1,233.065 SHARES DUE 4/30/25 | 1,233.07 | 43.80 | | |
| 5/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>EATON VANCE FLOATING RATE-R6<br>DIVIDEND FROM 4/1/25 TO 4/30/25 | 61.85 | 3.36 | | |

TRUIST

| Statement Period | Account Number | |
|---|---|---|
| January 1 , 2025 - October 31, 2025 | 5200134 | **Account Statement** |
| | PAINE, KENNETH FBO SUSAN TW1737 | *Page 14 of 32* |

## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 5/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INVESTMENT GRADE CREDIT BD-I DIVIDEND FROM 4/1/25 TO 4/30/25 | 1,025.47 | 37.10 | | |
| 5/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INCOME FUND-INS DIVIDEND FROM 4/1/25 TO 4/30/25 | 1,657.00 | 91.14 | | |
| 5/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON VANGUARD M/B SEC INDEX-ADM $0.0787/SHARE ON 357.592 SHARES DUE 5/1/25 | 357.59 | 28.14 | | |
| 5/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BARCLAYS 1-3 YEAR TR ETF $0.259195/SHARE ON 48 SHARES DUE 5/6/25 | 48.00 | 12.44 | | |
| 5/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BROAD USD INVT GRADE CORP BD $0.193301/SHARE ON 240 SHARES DUE 5/6/25 | 240.00 | 46.39 | | |
| 5/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES 10-20 YEAR TREASURY BOND ETF $0.356145/SHARE ON 114 SHARES DUE 5/6/25 | 114.00 | 40.60 | | |
| 5/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES US TREASURY BOND ETF $0.064132/SHARE ON 1,973 SHARES DUE 5/6/25 | 1,973.00 | 126.53 | | |
| 5/12/2025 | CASH DISBURSEMENT TRANSFER TO INCOME | | | -1,223.61 | |
| 5/12/2025 | CASH DISBURSEMENT PAID TO ESTHER SUSAN WILSON ACH BENEFICIARY DISTRIBUTION 2025 UNIITRUST | | -1,302.60 | | |
| 5/12/2025 | CASH RECEIPT TRANSFER FROM PRINCIPAL | | 1,223.61 | | |
| 6/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 5/1/25 TO 5/31/25 | | 0.25 | | |

TRUIST

**Statement Period** January 1 , 2025 - October 31, 2025

**Account Number** 5200134

PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 6/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 5/1/25 TO 5/31/25 | | 28.64 | | |
| 6/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON DOUBLELINE TTL RTRN BND-R6 $0.039138/SHARE ON 1,233.065 SHARES DUE 5/30/25 | 1,233.07 | 48.26 | | |
| 6/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON EATON VANCE FLOATING RATE-R6 DIVIDEND FROM 5/1/25 TO 5/31/25 | 61.85 | 3.22 | | |
| 6/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INVESTMENT GRADE CREDIT BD-I DIVIDEND FROM 5/1/25 TO 5/31/25 | 1,025.47 | 37.99 | | |
| 6/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INCOME FUND-INS DIVIDEND FROM 5/1/25 TO 5/31/25 | 1,657.00 | 91.14 | | |
| 6/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON VANGUARD M/B SEC INDEX-ADM $0.0639/SHARE ON 357.592 SHARES DUE 6/2/25 | 357.59 | 22.85 | | |
| 6/5/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BARCLAYS 1-3 YEAR TR ETF $0.271601/SHARE ON 48 SHARES DUE 6/5/25 | 48.00 | 13.05 | | |
| 6/5/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BROAD USD INVT GRADE CORP BD $0.197324/SHARE ON 240 SHARES DUE 6/5/25 | 240.00 | 47.36 | | |
| 6/5/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES 10-20 YEAR TREASURY BOND ETF $0.346246/SHARE ON 114 SHARES DUE 6/5/25 | 114.00 | 39.47 | | |
| 6/5/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES US TREASURY BOND ETF $0.068028/SHARE ON 1,973 SHARES DUE 6/5/25 | 1,973.00 | 134.22 | | |
| 6/10/2025 | CASH DISBURSEMENT TRANSFER TO INCOME | | | -1,080.40 | |

TRUIST

| Statement Period | Account Number | |
|---|---|---|
| January 1 , 2025 - October 31, 2025 | 5200134 | |
| | PAINE, KENNETH FBO SUSAN TW1737 | |

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 6/10/2025 | CASH DISBURSEMENT<br>PAID TO ESTHER SUSAN WILSON<br>ACH BENEFICIARY DISTRIBUTION<br>2025 UNIITRUST | | -1,302.60 | | |
| 6/10/2025 | CASH RECEIPT<br>TRANSFER FROM PRINCIPAL | | 1,080.40 | | |
| 6/10/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>EXXON MOBIL CORP<br>$0.99/SHARE ON 150 SHARES DUE 6/10/25 | 150.00 | 148.50 | | |
| 6/20/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES CORE S&P 500 ETF<br>$1.866967/SHARE ON 236 SHARES DUE 6/20/25 | 236.00 | 440.60 | | |
| 6/20/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES CORE S&P SMALL-CAP ETF<br>$0.388455/SHARE ON 91 SHARES DUE 6/20/25 | 91.00 | 35.35 | | |
| 6/27/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>INVESCO S&P 500 PURE VALUE ETF<br>$0.55313/SHARE ON 200 SHARES DUE 6/27/25 | 200.00 | 110.63 | | |
| 6/30/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ARTISAN INTL VALUE FUND-INS<br>$0.336262/SHARE ON 432.19 SHARES DUE 6/27/25 | 432.19 | 145.33 | | |
| 7/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 6/1/25 TO 6/30/25 | | 0.92 | | |
| 7/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 6/1/25 TO 6/30/25 | | 22.31 | | |
| 7/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>DOUBLELINE TTL RTRN BND-R6<br>$0.037609/SHARE ON 1,233.065 SHARES DUE 6/30/25 | 1,233.07 | 46.37 | | |
| 7/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>EATON VANCE FLOATING RATE-R6<br>DIVIDEND FROM 6/1/25 TO 6/30/25 | 61.85 | 3.13 | | |

TRUIST

**Statement Period** January 1 , 2025 - October 31, 2025

**Account Number** 5200134

PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 7/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>DIVIDEND FROM 6/1/25 TO 6/30/25 | 1,025.47 | 35.32 | | |
| 7/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>PIMCO INCOME FUND-INS<br>DIVIDEND FROM 6/1/25 TO 6/30/25 | 1,657.00 | 91.14 | | |
| 7/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>VANGUARD M/B SEC INDEX-ADM<br>$0.0647/SHARE ON 357.592 SHARES DUE 7/1/25 | 357.59 | 23.14 | | |
| 7/7/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES BARCLAYS 1-3 YEAR TR ETF<br>$0.264081/SHARE ON 48 SHARES DUE 7/7/25 | 48.00 | 12.68 | | |
| 7/7/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES BROAD USD INVT GRADE CORP BD<br>$0.198646/SHARE ON 240 SHARES DUE 7/7/25 | 240.00 | 47.68 | | |
| 7/7/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES 10-20 YEAR TREASURY BOND ETF<br>$0.359606/SHARE ON 114 SHARES DUE 7/7/25 | 114.00 | 41.00 | | |
| 7/7/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES US TREASURY BOND ETF<br>$0.06602/SHARE ON 1,973 SHARES DUE 7/7/25 | 1,973.00 | 130.26 | | |
| 7/10/2025 | CASH DISBURSEMENT<br>TRANSFER TO INCOME | | | -521.28 | |
| 7/10/2025 | CASH DISBURSEMENT<br>PAID TO ESTHER SUSAN WILSON<br>ACH BENEFICIARY DISTRIBUTION<br>2025 UNIITRUST | | -1,302.60 | | |
| 7/10/2025 | CASH RECEIPT<br>TRANSFER FROM PRINCIPAL | | 521.28 | | |
| 7/10/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>SCHLUMBERGER LTD<br>$0.285/SHARE ON 150 SHARES DUE 7/10/25 | 150.00 | 42.75 | | |

TRUIST

Statement Period
January 1 , 2025 - October 31, 2025

Account Number
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 8/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 7/1/25 TO 7/31/25 | | 1.09 | | |
| 8/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON TRUIST BK TRUST DEPOSIT ACCT-WEALTH DIVIDEND FROM 7/1/25 TO 7/31/25 | | 19.16 | | |
| 8/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON DOUBLELINE TTL RTRN BND-R6 $0.037484/SHARE ON 1,233.065 SHARES DUE 7/31/25 | 1,233.07 | 46.22 | | |
| 8/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON EATON VANCE FLOATING RATE-R6 DIVIDEND FROM 7/1/25 TO 7/31/25 | 61.85 | 3.21 | | |
| 8/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INVESTMENT GRADE CREDIT BD-I DIVIDEND FROM 7/1/25 TO 7/31/25 | 1,025.47 | 38.12 | | |
| 8/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON PIMCO INCOME FUND-INS DIVIDEND FROM 7/1/25 TO 7/31/25 | 1,657.00 | 91.14 | | |
| 8/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON VANGUARD M/B SEC INDEX-ADM $0.0649/SHARE ON 357.592 SHARES DUE 8/1/25 | 357.59 | 23.21 | | |
| 8/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BARCLAYS 1-3 YEAR TR ETF $0.269837/SHARE ON 48 SHARES DUE 8/6/25 | 48.00 | 12.95 | | |
| 8/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES BROAD USD INVT GRADE CORP BD $0.199693/SHARE ON 240 SHARES DUE 8/6/25 | 240.00 | 47.93 | | |
| 8/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES 10-20 YEAR TREASURY BOND ETF $0.377287/SHARE ON 114 SHARES DUE 8/6/25 | 114.00 | 43.01 | | |
| 8/6/2025 | CASH RECEIPT OF DIVIDEND EARNED ON ISHARES US TREASURY BOND ETF $0.068044/SHARE ON 1,973 SHARES DUE 8/6/25 | 1,973.00 | 134.25 | | |

TRUIST

| Statement Period | Account Number | |
|---|---|---|
| January 1 , 2025 - October 31, 2025 | 5200134 | |
| | PAINE, KENNETH FBO SUSAN TW1737 | |

# Account Statement



## Activity Detail - continued

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 8/11/2025 | CASH DISBURSEMENT<br>TRANSFER TO INCOME | | | -935.56 | |
| 8/11/2025 | CASH DISBURSEMENT<br>PAID TO ESTHER SUSAN WILSON<br>ACH BENEFICIARY DISTRIBUTION<br>2025 UNITRUST | | -1,032.99 | | |
| 8/11/2025 | CASH RECEIPT<br>TRANSFER FROM PRINCIPAL | | 935.56 | | |
| 9/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 8/1/25 TO 8/31/25 | | 0.22 | | |
| 9/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 8/1/25 TO 8/31/25 | | 14.93 | | |
| 9/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>DOUBLELINE TTL RTRN BND-R6<br>$0.03793/SHARE ON 1,233.065 SHARES DUE 8/29/25 | 1,233.07 | 46.77 | | |
| 9/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>DIVIDEND FROM 8/1/25 TO 8/31/25 | 1,025.47 | 38.22 | | |
| 9/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>PIMCO INCOME FUND-INS<br>DIVIDEND FROM 8/1/25 TO 8/31/25 | 1,657.00 | 91.14 | | |
| 9/2/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>VANGUARD M/B SEC INDEX-ADM<br>$0.0657/SHARE ON 357.592 SHARES DUE 9/2/25 | 357.59 | 23.49 | | |
| 9/3/2025 | CASH DISBURSEMENT<br>TRANSFER TO INCOME<br>TRANSFER TO COVER OVERDRAFT | | | -1,177.32 | |
| 9/3/2025 | CASH RECEIPT<br>TRANSFER FROM PRINCIPAL<br>TRANSFER TO COVER OVERDRAFT | | 1,177.32 | | |

TRUIST

# Account Statement



**Statement Period** January 1 , 2025 - October 31, 2025

**Account Number** 5200134

PAINE, KENNETH FBO SUSAN TW1737

## Activity Detail - *continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 9/3/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>EATON VANCE FLOATING RATE-R6<br>DIVIDEND FROM 8/1/25 TO 8/31/25 | 61.85 | 3.13 | | |
| 9/5/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES BARCLAYS 1-3 YEAR TR ETF<br>$0.258369/SHARE ON 48 SHARES DUE 9/5/25 | 48.00 | 12.40 | | |
| 9/5/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES BROAD USD INVT GRADE CORP BD<br>$0.200751/SHARE ON 240 SHARES DUE 9/5/25 | 240.00 | 48.18 | | |
| 9/5/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES 10-20 YEAR TREASURY BOND ETF<br>$0.372507/SHARE ON 114 SHARES DUE 9/5/25 | 114.00 | 42.47 | | |
| 9/5/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>ISHARES US TREASURY BOND ETF<br>$0.068254/SHARE ON 1,973 SHARES DUE 9/5/25 | 1,973.00 | 134.67 | | |
| 9/10/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>EXXON MOBIL CORP<br>$0.99/SHARE ON 150 SHARES DUE 9/10/25 | 150.00 | 148.50 | | |
| 9/11/2025 | SOLD 150 SHARES OF<br>EXXON MOBIL CORP<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $2.25 BROKERAGE<br>SOLD ON THE NEW YORK STOCK EXCHANGE, INC.<br>TAXABLE TO FEDERAL AND STATE<br>150 SHARES AT $112.325 | 150.00 | | 16,846.50 | -2,792.06 |
| 9/11/2025 | SOLD 200 SHARES OF<br>INVESCO S&P 500 PURE VALUE ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $3.00 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>200 SHARES AT $97.2108 | 200.00 | | 19,439.16 | -14,935.18 |

TRUIST

**Statement Period**
January 1 , 2025 - October 31, 2025

**Account Number**
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 9/11/2025 | SOLD 86 SHARES OF<br>ISHARES GOLD TRUST<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $1.29 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>86 SHARES AT $68.7023 | 86.00 | | 5,907.11 | -3,874.87 |
| 9/11/2025 | SOLD 236 SHARES OF<br>ISHARES CORE S&P 500 ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $3.54 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>236 SHARES AT $654.7812 | 236.00 | | 154,524.82 | -86,536.16 |
| 9/11/2025 | SOLD 48 SHARES OF<br>ISHARES BARCLAYS 1-3 YEAR TR ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $0.72 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>48 SHARES AT $82.935 | 48.00 | | 3,980.16 | -3,912.12 |
| 9/11/2025 | SOLD 91 SHARES OF<br>ISHARES CORE S&P SMALL-CAP ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $1.37 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>91 SHARES AT $117.6046 | 91.00 | | 10,700.65 | -9,912.17 |
| 9/11/2025 | SOLD 240 SHARES OF<br>ISHARES BROAD USD INVT GRADE CORP BD<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $3.60 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>240 SHARES AT $52.2703 | 240.00 | | 12,541.27 | -12,090.60 |

TRUIST

**Statement Period**
January 1 , 2025 - October 31, 2025

**Account Number**
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 9/11/2025 | SOLD 114 SHARES OF<br>ISHARES 10-20 YEAR TREASURY BOND ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $1.71 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>114 SHARES AT $103.6266 | 114.00 | | 11,811.72 | -11,733.74 |
| 9/11/2025 | SOLD 1,973 SHARES OF<br>ISHARES US TREASURY BOND ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $29.60 BROKERAGE<br>SOLD ON THE NYSE MKT LLC<br>TAXABLE TO FEDERAL AND STATE<br>1,973 SHARES AT $23.19 | 1,973.00 | | 45,724.27 | -48,042.46 |
| 9/11/2025 | SOLD 144 SHARES OF<br>ISHARES GSCI CMMDTY DYNMC ROLL ETF<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $2.16 BROKERAGE<br>TAXABLE TO FEDERAL AND STATE<br>144 SHARES AT $26.715 | 144.00 | | 3,844.80 | -3,919.61 |
| 9/11/2025 | SOLD 150 SHARES OF<br>SCHLUMBERGER LTD<br>TRADE DATE 9/10/25<br>SOLD THROUGH JONES TRADING INSTITUTAL SVC<br>PAID $2.25 BROKERAGE<br>SOLD ON THE NEW YORK STOCK EXCHANGE, INC.<br>TAXABLE TO FEDERAL AND STATE<br>150 SHARES AT $35.995 | 150.00 | | 5,397.00 | -1,999.47 |
| 9/22/2025 | SOLD 384.903 SHARES OF<br>EDGEWOOD GROWTH FUND-INS<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>384.903 SHARES AT $47.06 | 384.90 | | 18,113.53 | -14,734.77 |

TRUIST

Statement Period
January 1 , 2025 - October 31, 2025

Account Number
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 9/22/2025 | SOLD 432.19 SHARES OF<br>ARTISAN INTL VALUE FUND-INS<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>432.19 SHARES AT $54.42 | 432.19 | | 23,519.78 | -20,030.00 |
| 9/22/2025 | SOLD 1,233.065 SHARES OF<br>DOUBLELINE TTL RTRN BND-R6<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>1,233.065 SHARES AT $8.95 | 1,233.07 | | 11,035.93 | -13,541.08 |
| 9/22/2025 | SOLD 340.425 SHARES OF<br>EATON VANCE-ATLANTA SMID-R6<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>340.425 SHARES AT $40.52 | 340.43 | | 13,794.02 | -7,648.09 |
| 9/22/2025 | SOLD 61.849 SHARES OF<br>EATON VANCE FLOATING RATE-R6<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>61.849 SHARES AT $8.21 | 61.85 | | 507.78 | -560.99 |
| 9/22/2025 | SOLD 701.045 SHARES OF<br>JOHCM INTERNATIONAL SEL-INST<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>701.045 SHARES AT $27.63 | 701.05 | | 19,369.87 | -13,803.57 |
| 9/22/2025 | SOLD 751.144 SHARES OF<br>JOHN HANCOCK III-DISCPL V-R6<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>751.144 SHARES AT $25.62 | 751.14 | | 19,244.31 | -12,526.19 |
| 9/22/2025 | SOLD 1,025.466 SHARES OF<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>1,025.466 SHARES AT $9.23 | 1,025.47 | | 9,465.05 | -10,383.22 |

TRUIST

Statement Period
January 1 , 2025 - October 31, 2025

Account Number
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 9/22/2025 | SOLD 1,657.001 SHARES OF<br>PIMCO INCOME FUND-INS<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>1,657.001 SHARES AT $10.90 | 1,657.00 | | 18,061.31 | -19,509.56 |
| 9/22/2025 | SOLD 357.592 SHARES OF<br>VANGUARD M/B SEC INDEX-ADM<br>TRADE DATE 9/19/25<br>TAXABLE TO FEDERAL AND STATE<br>357.592 SHARES AT $18.79 | 357.59 | | 6,719.15 | -7,595.53 |
| 9/24/2025 | CASH DISBURSEMENT<br>PAID TO JAMES STOKES<br>ACH BENEFICIARY DISTRIBUTION<br>50% TO BENE JAMES STOKES | | | -215,897.62 | |
| 9/24/2025 | CASH DISBURSEMENT<br>PAID TO JAMES STOKES<br>ACH BENEFICIARY DISTRIBUTION<br>50% TO BENE JAMES STOKES | | -194.68 | | |
| 9/24/2025 | CASH DISBURSEMENT<br>PAID TO SONDRA BLAKELY<br>ACH BENEFICIARY DISTRIBUTION<br>50% TO BENE SONDRA BLAKELY | | | -215,897.62 | |
| 9/24/2025 | CASH DISBURSEMENT<br>PAID TO SONDRA BLAKELY<br>ACH BENEFICIARY DISTRIBUTION<br>50% TO BENE SONDRA BLAKELY | | -194.67 | | |
| 10/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH<br>DIVIDEND FROM 9/1/25 TO 9/30/25 | | 0.71 | | |
| 10/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>EATON VANCE FLOATING RATE-R6<br>DIVIDEND FROM 9/1/25 TO 9/30/25 | | 2.04 | | |
| 10/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>PIMCO INVESTMENT GRADE CREDIT BD-I<br>DIVIDEND FROM 9/1/25 TO 9/30/25 | | 24.89 | | |

TRUIST

**Statement Period**
January 1 , 2025 - October 31, 2025

**Account Number**
5200134
PAINE, KENNETH FBO SUSAN TW1737

# Account Statement



## Activity Detail *- continued*

| DATE | TRANSACTION DESCRIPTION | NO. OF SHARES/PAR VALUE | INCOME CASH | PRINCIPAL CASH | TAX COST BASIS |
|---|---|---|---|---|---|
| 10/1/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>PIMCO INCOME FUND-INS<br>DIVIDEND FROM 9/1/25 TO 9/30/25 | | 62.85 | | |
| 10/9/2025 | CASH RECEIPT OF DIVIDEND EARNED ON<br>SLB LIMITED<br>$0.285/SHARE ON 150 SHARES DUE 10/9/25 | 150.00 | 42.75 | | |
| 10/16/2025 | CASH DISBURSEMENT<br>PAID TO JAMES STOKES<br>ACH BENEFICIARY DISTRIBUTION<br>50% TO BENE JAMES STOKES | | | -66.62 | |
| 10/16/2025 | CASH DISBURSEMENT<br>PAID TO SONDRA BLAKELY<br>ACH BENEFICIARY DISTRIBUTION<br>50% TO BENE SONDRA BLAKELY | | | -66.62 | |
| 10/17/2025 | CASH DISBURSEMENT<br>TRANSFER TO PRINCIPAL<br>TRANSFER TO COVER OVERDRAFT | | -133.24 | | |
| 10/17/2025 | CASH RECEIPT<br>TRANSFER FROM INCOME<br>TRANSFER TO COVER OVERDRAFT | | | 133.24 | |
| 10/31/2025 | TRUIST MGMT FEES POSTED THRU 10/31/2025 | | | -4,571.04 | |
| 10/31/2025 | TRUIST MGMT FEES POSTED THRU 10/31/2025 | | -4,570.97 | | |
| 10/31/2025 | COMBINED PURCHASES FOR THE PERIOD 1/ 1/25 - 10/31/25 OF<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH | 5,061.16 | -5,061.16 | | 5,061.16 |
| 10/31/2025 | COMBINED SALES FOR THE PERIOD 1/ 1/25 - 10/31/25 OF<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH | 14,668.17 | | 14,668.17 | -14,668.17 |
| 10/31/2025 | COMBINED SALES FOR THE PERIOD 1/ 1/25 - 10/31/25 OF<br>TRUIST BK TRUST DEPOSIT ACCT-WEALTH | 6,712.52 | 6,712.52 | | -6,712.52 |
| **10/31/2025** | **STATEMENT ENDING BALANCE** | | **$0.00** | **$0.00** | **$0.00** |

TRUIST

Statement Period
January 1 , 2025 - October 31, 2025

Account Number
5200134
PAINE, KENNETH FBO SUSAN TW1737

**Account Statement**



## Notice of Limitation Periods for Breach of Trust Actions

This notice serves to alert persons interested in this account (i) that in many states, including those listed below, statutes of limitations provide that a beneficiary of a trust may not commence a proceeding against a trustee for breach of trust more than a certain period ("Period") after the date the beneficiary or a representative of the beneficiary was sent a report disclosing sufficient information to alert a recipient of the existence of a potential claim for breach of trust; (ii) that this statement is a report within the meaning of said statutes as to all information contained herein, including but not limited to compensation received by Truist Bank and its affiliates, investments made, held or disposed of and disbursements and distributions made on behalf of this account and (iii) persons objecting to any transactions or other matters disclosed in this statement may be required by such statutes to provide written notice of such objections to Truist Bank in order to preserve their rights to bring legal action relating to such objections.

This notice and the relevant Periods listed below are provided solely for informational purposes and not as legal advice. The terms of the relevant statutes are incorporated herein by reference and are available on state government websites.

Many factors are involved in determining whether a particular statute of limitations is applicable and you should consult with your own counsel regarding any potential claim.

| State | Statute | Period |
|---|---|---|
| AL | Ala. Code 19-3B-1005 | 2 Years from Mailing |
| CA | CA Prob. Code 16460 | 3 Years from Receipt |
| CT | C.G.S.A. 45a-499rrr | 1 Year from Mailing |
| DC | D.C. Code 19-1310.05 | 1 Year from Mailing |
| DE | 12 Del. Code 3585 | 1 Year from Mailing |
| FL | Fla. Stat. 736.1008 | 6 Months from Receipt |
| GA | O.C.G.A. 53-12-307 | 2 Years from Receipt |
| KY | KY Rev Stat 386B.10-050 | 1 Year from Mailing |
| MD | MD Est & Tr. C 14.5-904 | 1 Year from Mailing |
| NC | N.C.G.S. 36C-10-1005 | 5 Years from Resignation/Removal of Trustee/Termination of Trust |
| NJ | N.J.S.A. 3B: 31-74 | 6 Months from Mailing |
| OH | O.R.C. 5810.05 | 2 Years from Mailing |
| PA | 20 Pa.C.S.A. 7785 | 2.5 Years from Mailing |
| SC | S.C.C.L. 62.7-1005 | 1 Year from Mailing |
| TN | T.C.A. Code 35-15-1005 | 1 Year from Mailing |
| TX | V.T.C.A., Civ. Prac.& Rem. Code 16.004 | 4 Years from Breach of Trust |
| VA | VA Code 64.2-796 | 1 Year from Mailing |
| WV | WV Code 44D-10-1005 | 1 Year from Mailing |

## Other Compensation Received by Truist Bank and its Affiliates, Mutual Fund Investments, Truist Bank Deposits, Other Services

### Sweep Vehicles

In the case of discretionary accounts, at any time and from time to time, Truist Bank will, in the exercise of its investment discretion, and without advance notice to clients, invest idle cash balances awaiting investment or distribution in either:

* Money market mutual funds or bank sweep deposit accounts offered by Truist Bank and/or other banks or
* In both money market mutual funds and bank sweep deposit accounts

Federated Hermes; BlackRock Inc.; Goldman Sachs Asset Management L.P.; and Dreyfus BNY Mellon and/or their respective affiliates have engaged Truist Bank to provide shareholder and administrative services to custodial, directed trustee, and escrow accounts established with and administered by Truist Bank's Escrow Services specialty group ("Escrow Services"). Compensation earned by Truist Bank in connection with Escrow Services clients investments in money market mutual funds include administrative and shareholder service fees (including Rule 12b-1 fees) and can range, on an annual basis, from 0.0% to 0.35%.

The actual fees paid by money market mutual funds for shareholder and administrative services are more fully described in each mutual funds prospectus and the statement of additional information, copies of which may be obtained from your Truist Bank representative. Such fees are expenses of the money market mutual funds which reduce shareholder returns by a like amount.

Truist Bank receives financial benefits in the form of interest rate spread earnings in connection with all deposits and investments made in any Truist Bank deposit account, including sweep accounts in which funds awaiting investment or distribution are deposited. Such earnings are derived from the difference, or "spread," between (i) the interest rate and other costs Truist Bank pays on amounts deposited, and (ii) the interest income and other benefits Truist Bank earns when it makes loans or otherwise invests the deposited funds in the ordinary course of its banking business.

Mutual fund shareholder service and administrative compensation as well as interest rate spread benefits associated with cash sweep investment vehicles creates conflicts of interest in connection with Truist Bank's administration of its client accounts because such financial benefits are retained by Truist Bank in addition to its applicable account level fee, are not credited to customer accounts and do not reduce or offset other account level compensation earned by Truist Bank which is included in this statement.

## Notice to Contact Truist Bank with Respect to Changes in Your Financial Circumstance or Objectives or to Impose Reasonable Restrictions in Certain Accounts

Please promptly inform your Truist Bank financial professional of any changes to your financial situation or investment objectives and, with respect to any accounts over which you retain or otherwise possess ownership or investment authority, whether you wish to impose or modify reasonable restrictions with regard to the investment management of such accounts.

## Affiliated Investment Advisory Services and Investment Funds

Services and products featured herein may include services and investment products offered by companies affiliated with Truist Bank ("Bank") and its corporate parent, Truist Financial Corporation ("TFC"). Examples of affiliated services and products include investment advisory, separate account management and sub-advisory services provided by Truist Advisory Services, Inc. and private investment funds advised by GFO Advisory Services, LLC. Compensation earned by such affiliates for services and products provided to Truist Bank client accounts is retained by such affiliates and, except, in the case of managed individual retirement accounts subject to the prohibited transactions provisions of Section 4975 of the Internal Revenue Code and qualified employer retirement plan accounts subject to similar ERISA prohibited transaction restrictions, is not credited to customer accounts and does not reduce or offset the account level compensation earned by Truist Bank for fiduciary, investment management, custodial and similar services described in this statement. As a result, the TFC enterprise, as a whole, receives more compensation when affiliated products and services are selected than would otherwise be received if a non-affiliated service or product were utilized.

When Truist Bank recommends or utilizes an affiliated service provider or investment product in connection with the management of a client account it uses the same investment process to evaluate and select both affiliated and non-affiliated services and products. Truist Bank expresses no opinion on the use of TFC affiliated services and products when it does not provide investment advice or exercise investment discretion with respect to an account and instead the client selects such services and products in a client-directed account, such as a self-directed IRA, custodial, escrow, directed trustee or similar relationship.

## Sterling Capital Management, LLC Investment Advisory Services

On July 2nd, 2024, Sterling Capital Management, LLC ("Sterling"), an SEC registered investment advisory affiliate of the Bank was purchased from Truist Financial Corporation ("TFC"), the common corporate parent of the Bank and Sterling, by another financial institution. Following its separation from the TFC enterprise, Sterling and the Bank are no longer affiliated companies.

Although Sterling and the Bank are no longer affiliated companies, under the terms of TFC's agreements relating to the sale of Sterling, TFC may receive additional financial benefits if Sterling's investment advisory services are used in connection with non-retirement accounts and certain tax exempt accounts managed by the Bank. The receipt of these financial benefits by TFC creates a conflict of interest in connection with the Bank's recommendation or use of Sterling's advisory services in connection with the management of its client accounts. The Bank addresses this conflict of interest by disclosing it to its clients and mitigates this conflict of interest by applying the same due diligence and research standards in its evaluation and selection of Sterling and its investment advisory services as it does for all similar third-party investment advisory service providers.

Retirement account investments for which TFC will not receive additional financial benefits include (i) individual retirement accounts and plans subject to the prohibited transaction requirements of Section 4975 of the Internal Revenue Code and (ii) 401k plans and other qualified plans subject to the prohibited transaction requirements of the Employee Income Security Act of 1974. Tax exempt account investments for which TFC will not receive additional financial benefits include accounts administered by the Bank's Foundations and Endowments Specialty Practice. Further, the terms of TFC's agreements with Sterling's purchaser do not provide any financial benefits to TFC or its affiliates in connection with the recommendation or investment of Bank managed client accounts in mutual funds advised by Sterling.

## IRA, 401K, and Other Retirement Accounts, Acknowledgement of Fiduciary Status

Upon the effective date of The Retirement Account Advice Rule, DOL PTE 2020-02, as amended ("DOL Rule"), the Bank acknowledges that, when the Bank provides investment advice or recommendations to you regarding your retirement accounts which is based on our review of your particular needs or individual circumstances, and as a result the Bank receives compensation, such advice or recommendations are provided to you in a fiduciary capacity as provided for under the terms of the DOL Rule.

## Notice Regarding Use of Soft Dollars

Truist Bank purchases investment advisory services and products from both affiliated and third-party firms. These services and products represent multiple and varying aspects of our ability to provide and deliver investment services to our clients (i.e. investment product research; asset allocation services; trade execution services; etc.). In certain instances, arrangements may exist where Truist Bank's cost to acquire these services and products are partially offset through commissions and/or spreads collected on certain trade executions, otherwise referred to as soft dollars. Truist Bank and our partners are dedicated to providing best execution in all respects of these investment services and have protocols in place to monitor and evaluate this commitment.

## Notice Regarding Fiduciary Relationships

Truist Bank and its affiliates do not accept fiduciary responsibility for all banking and investment account types offered. Please consult with your Truist Bank representative to determine whether Truist Bank and its affiliates have agreed to accept fiduciary responsibility for your account(s) and you have completed the documentation necessary to establish a fiduciary relationship with Truist Bank or an affiliate.

## Notice to Promptly Review Your Statement

Please review your statement carefully. In case of errors, questions or other inquiries about transactions or statement, telephone or write to your relationship manager at the telephone number or address included on this statement within thirty (30) days of the date of this statement. If you contact us verbally, then we may require that you send us your questions in writing.

Market values of securities are provided using third-party sources we believe to be reliable; however, accuracy is not guaranteed.

## CUSIP Global Services ("CGS") and CUSIP Disclaimer Notice

"Neither CUSIP Global Services ("CGS"), the American Bankers Association ("ABA") nor any of their affiliates make any warranties, express or implied, as to the accuracy, adequacy or completeness of any of the information contained in the CUSIP database. All such materials are provided to subscriber on an "as is" basis, without any warranties as to merchantability or fitness for a particular purpose or use nor with respect to the results which may be obtained from the use of such materials. Neither CGS, ABA nor their affiliates shall have any responsibility or liability for any errors or omissions nor shall they be liable for any damages, whether direct or indirect, special or consequential, even if they have been advised of the possibility of such damages. In no event shall the liability of CGS, ABA or any of their affiliates pursuant to any cause of action, whether in contract, tort, or otherwise, exceed the fee paid by subscriber for access to such materials in the month in which such cause of action is alleged to have arisen. Furthermore, CGS and ABA shall have no responsibility or liability for delays or failures due to circumstances beyond their control."

"Copyright 2020, American Bankers Association CUSIP Database provided by S&P Global Market Intelligence LLC. All rights reserved."

## S&P Copyright Notice

Copyright 2019, S&P Global Market Intelligence (and its affiliates as applicable)

Reproduction of any information, data or material, including ratings (Content) in any form is prohibited except with the prior written permission of the relevant party. Such party, its affiliates and suppliers (Content Providers) do not guarantee the accuracy, adequacy, completeness, timeliness or availability of any Content and are not responsible for any errors or omissions (negligent or otherwise), regardless of the cause, or for the results obtained from the use of such Content. In no event shall Content Providers be liable for any damages, costs, expenses, legal fees, or losses (including lost income or lost profit and opportunity costs) in connection with any use of the Content. A reference to a particular investment or security, a rating or any observation concerning an investment that is part of the Content is not a recommendation to buy, sell or hold such investment or security, does not address the suitability of an investment or security and should not be relied on as investment advice. Credit ratings are statements of opinions and are not statements of fact.

The Global Industry Classification Standard (GICS) was developed by and is the exclusive property and a service mark of MSCI Inc. (MSCI) and Standard & Poors Financial Services LLC (S&P) and is licensed for use by Truist. Neither MSCI, S&P, nor any other party involved in making or compiling the GICS or any GICS classifications makes any express or implied warranties or representations with respect to such standard or classification (or the results to be obtained by the use thereof), and all such parties hereby expressly disclaim all warranties of originality, accuracy, completeness, merchantability and fitness for a particular purpose with respect to any of such standard or classification. Without limiting any of the foregoing, in no event shall MSCI, S&P, any of their affiliates or any third party involved in making or compiling the GICS or any GICS classifications have any liability for any direct, indirect, special, punitive, consequential or any other damages (including lost profits) even if notified of the possibility of such damages.

CUSIP is a registered trademark of the American Bankers Association.
CUSIP Global Services is managed on behalf of the American Bankers Association by Standard & Poors.

## Class Action Claims

Truist outsources the filing of all securities of class action claims to a third party vendor which is compensated with a contingency fee (presently 15%) paid from the awards it obtains for Truist accounts. Truist receives no additional compensation in connection with such securities class action awards, however, the use of a third party vendor to perform these services creates an additional expense for each applicable account. Current information regarding the amount of the applicable contingency fee paid in connection with securities class action claims can be obtained from your Truist Advisor.

**Trust, Investment Agency, Escrow, Custodial and other non-deposit accounts administered by Truist Bank are:**

* NOT A DEPOSIT WITH TRUIST BANK
* ARE NOT INSURED BY TRUIST BANK OR ANY OTHER ENTITY
* ARE NOT INSURED BY THE FDIC OR ANY OTHER GOVERNMENT AGENCY
* MAY LOSE VALUE

# Explanation of Account Statement Features

## Statement Terms

**Market Value Summary** provides the total account value as of the date of this statement and compares this value to:

- the value of the account as of your last statement
- and the value of the account at the beginning of the year (for a new account this would be the date the account was funded).

**Portfolio Summary** compares your account's asset allocation as of the date of this statement to your asset allocation as of your last statement. Individual assets held in each category are listed in the **Portfolio Detail** section.

**Transaction Activity Summary** presents a categorized record of your account's transactions since the last statement period. Individual transactions for each category are shown in the **Account Activity Detail** section. For your information each category also shows Year to Date totals.

**Cash Activity Summary** presents a categorized record of your account's cash transactions since the last statement period. Individual transactions for each category are included in the **Account Activity Detail** section. For your information each category also shows year to date totals

## General Data

**Transaction dates:** Transaction dates appearing on this statement reflect the transactions' settlement dates.

**Market values / unit price:** Generally, the values of securities are obtained from various pricing sources, whose appraisals are based either on the closing value, the mean between bid and ask, or a matrix based on interest rates for similar securities. Where valuations are not available from services, Truist uses values which reflect a best known estimate of the asset valuation. If no best known value can be obtained, an asset will generally be valued at $1.00. Pricing sources may make retroactive corrections which are published after we have used the original value to print your statement. Truist is unable to guarantee the accuracy of the information in these columns. In addition, for asset classes defined as unique or miscellaneous, Truist has implemented processes under which fair market valuations are evaluated periodically. Non-traditional or alternative investment values reflect the most current data provided, which may be delayed one month or longer. No value should be considered to constitute firm bids or offers and may be subject to fluctuations in market conditions. If a more comprehensive valuation is necessary, please contact your Account Officer.

Market values listed for assets that are not publicly traded are the most recent values available from a readily accessible source; such values may have been established some time before the stated year-end date by a person affiliated with the asset or its manager. There may be assets that are not registered in our name that we provide recordkeeping but not safekeeping services for. All items reported on this statement are for client information purposes only. These statements are not to be used for tax reporting related to non-publicly traded assets. Please refer to the applicable Schedule K-1 (Form 1065, U.S. Return of Partnership Income) for such non-publicly traded assets.

**Mutual Fund** shares are valued at the bid price as of the last day of the statement period.

**Capital Gain/Losses:** The year to date long and short term gain/loss is an accumulation of the estimated tax effect of trades based on the information available at the time of trade.

**Taxes:** For tax reporting purposes, you should rely on the Tax information letters. Schedules K-1 or Forms 1099 that you will receive from us after the end of the year.

We want our clients to understand that many investments available through Truist are not deposits and are not insured or guaranteed by the FDIC or any other government agency. They are not endorsed or guaranteed by, and are not obligations of Truist Bank, or any of its affiliates. Investment in these products involves risk, including the possible loss of principal.

## Definitions

**Accrued Income:** Income earned but not yet paid.

**Callable:** Redeemable by the issuer before the scheduled maturity date.

**Common Trust Fund:** A fund maintained by a bank or trust company exclusively for the collective investment of money contributed to the fund by customers of its trust department.

**Cost Basis:** The original cost of an asset.

**Coupon:** The interest rate, expressed as a percentage of the face amount, that the issuer of a bond will pay to the bondholder.

**Cusip number:** An alpha-numeric code used in the securities industry to identify specific issues of securities. Truist also uses this field to identify other kinds of assets which are not recognized by the securities industry

**Ex-date (ex-dividend date):** Literally "without dividend," or the date on which a stock trades without the value of the dividend being contemplated in the price.

**Par Value:** The face amount of a bond.

**Pending Trade:** A trade that has been placed but not yet settled (see "settlement date").

**Pre-refunded:** A bond for which the issuer has raised the funds necessary to call the bond by issuing another bond that generally pays a lower coupon.

**Settlement Date:** The date by which the property must be delivered and cash must be paid for an asset traded.

**Symbol:** The alpha-numeric code used to identify the asset within various pricing services.

TRUIST



## Explanation of Account Statement Features - Continued

**Tax cost basis:** The original cost of an investment, adjusted for any activity that is incorporated into the calculation of capital gain or loss.

**Yield at Market:** The percentage return on an investor's money in terms of current prices calculated by dividing the annual income produced by the investment by its current market value.

**Yield to Maturity:** The rate of return the investor earns from payments of principal and interest, with interest compounded semi-annually and assuming the bond will be held until maturity (this maturity date is changed and, therefore, the calculation changes when a bond is declared to be "pre-funded").

**Trade date:** The date an asset is traded for later settlement.

**Trade date accounting:** Uses the trade date as the date upon which to include an asset or cash from a sale in the calculation of market value.

# EXHIBIT "E"

I received this on 4/12/26. It was sent via EXPRESS MAIL.

TRUIST

Staci N. Criswell
Senior Vice President
Associate General Counsel
214 N. Tryon St.
24th Floor
Mail Code: 500-93-24-20
Charlotte, NC 28202
304-610-4623
staci.criswell@truist.com

James Stokes
517 Shelton Beach Road
Saraland AL 36571

Sondra Blakely
521 Shelton Beach Road
Saraland AL 36571

Re: Trust for Esther Susan Wilson under the Last Will and Testament and Codicil of Kenneth L. Paine (the "Trust") (Truist Account x0134)

Dear Mr. Stokes and Ms. Blakely,

This letter is to notify you that we have information to believe that there could be a monetary claim against the Trust referenced above. The Trust terminated by reason of Esther Susan Wilson's death. Half of the remaining trust funds were distributed to each of you in September of 2025. Pursuant to the Final Receipt, Release and Refunding Agreements signed by each of you on August 28, 2025 (the "Refunding Agreements"), you agreed to pay over such amount to satisfy any such claims, charges or expenses that would become properly payable by Truist as the Trustee of the Trust. At this time, we are addressing the matter but do not yet know a time frame for resolution and are unable to provide details about this potential claim.

We are putting you on notice that **you should preserve and set aside the funds that were distributed to you from the Trust in 2025 until further notice**. Dissipating the funds after receipt of this letter could lead to legal claims against you. If you prefer to return these funds to Truist to hold until the potential claim is resolved, please let me know and we will coordinate transfer of the funds.

In addition, we believe you may have in your possession the original Will for Esther Susan Wilson dated August 11, 2004. There is a possibility that this document may become pertinent to the potential claim. **We require that you preserve that document in a safe location while this matter is pending. If this original Will has been probated or is now on file with a court, please immediately respond to me the relevant court where this document is located.**

Of course, nothing in this correspondence shall constitute or be construed as an admission of liability, fault, or wrongdoing on the part of Truist in its capacity as Trustee or otherwise. Truist expressly reserves all rights, defenses, and courses of action available to it in connection with this matter. Nothing contained herein should be construed as legal advice, and this letter is not intended to serve as a substitute for the guidance of independent legal counsel.

Please contact me directly at 304-610-4623 if you have questions about the above.

Sincerely,

4/10/26

Staci N. Criswell

# COMPOSITE EXHIBIT "F"

**Subject:** FW: Truist Acct 5200134 - April 2026
**Attachments:** Paine-Samson Letter 4-10-2026.pdf; Letter to Stokes & Blakely.pdf

---------- Forwarded message ---------
**From: Criswell, Staci <Staci.Criswell@truist.com>**
**Date: Wed, May 27, 2026 at 11:55 AM**
Subject: RE: Truist Acct 5200134 - April 2026
To: Merri S. <me.33.rri@gmail.com>

Merri, good afternoon. I believe I inadvertently sent you an incorrect letter. Please see attached for your file. Can you confirm that you have received this e-mail? Thank you.

**Staci N. Criswell (she/her)**

Senior Vice President

Associate General Counsel 1
Truist Legal Department-Wealth

Fiduciary Administration

214 N. Tryon St.
24th Floor
Mail Code: 500-93-24-20
Charlotte, NC 28202
M: 304-610-4623
staci.criswell@truist.com

-

TRUIST

-

CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication.

TRUIST

Staci N. Criswell
Senior Vice President
Associate General Counsel
214 N. Tryon St.
24th Floor
Mail Code: 500-93-24-20
Charlotte, NC 28202
304-610-4623
staci.criswell@truist.com

Merri Selby Samson
672 Lohrman Lane
Petaluma CA 94952-1649

Re: Trust for Esther Susan Wilson under the Last Will and Testament and Codicil of Kenneth L. Paine (the "Trust") (Truist Account x0134)

Dear Ms. Samson,

This letter is in follow-up to our email communications, most recently of November 16, 2025 with Truist team member Kathrine Norris-Loftis. Upon further review, we'd like to bring to your attention additional information and documentation which supplements the November 2025 trust disclosure documents and trust limitation notice previously provided to you.[1]

As you know, Truist Bank was the Trustee of the above-referenced Trust. Copies of both Kenneth Paine's Will dated January 22, 1991 and Codicil dated March 29, 1993 are enclosed. The Trust language is contained in this Will and Codicil. Your mother, Esther Susan Wilson ("Ms. Wilson"), was the lifetime beneficiary of the Trust and held a general power of appointment over the Trust, exercisable by her Last Will and Testament in favor of her creditors or the creditors of her estate. If she failed to validly exercise this power of appointment, you would be the Trust's remainder beneficiary. Upon Ms. Wilson's death last year, the Trust was set to terminate.

[1] As required by the Florida Trust Code, we advise that an action for breach of trust based on matters disclosed in a trust accounting or other written report of the trustee or a trust director may be subject to a 6-month statute of limitations from the receipt of the trust accounting or other written report. If you have questions, please consult your attorney.

Pursuant to Ms. Wilson's Will dated August 11, 2004 (copy of which is enclosed), she purportedly exercises the power of appointment over the full amount of the Trust in favor of James W. Stokes ("Mr. Stokes") and Sondra Lynn Blakely ("Ms. Blakely"). To our knowledge, Ms. Wilson's Will has not been probated in her state of residency, Alabama.

Mr. Stokes and Ms. Blakely each survived Ms. Wilson and, therefore, the remaining assets of the Trust, approximately $432,000, were distributed by Truist, in the amount of approximately $216,000 to each of Mr. Stokes and Ms. Blakely. It is possible that Mr. Stokes or Ms. Blakely did not qualify as recipients. We suggest that you share this with your legal counsel, so as to obtain the advice you might require in response to this information. A delay in acting in response to this correspondence could prejudice your legal rights.

Should you inform us of your desire to pursue any claims against the Trust, we would be required to perform additional investigation as to Mr. Stokes and Ms. Blakely's status as potential creditors of Ms. Wilson. Such investigation could result in a possible distribution to you of an unknown amount, but certainly not exceeding the terminating amount of the Trust of $432,000. Such a distribution, if any, would be reduced by further trust administration expenses incurred to resolve this matter, such as costs and legal fees, likely including the time and expense to probate Ms. Wilson's Will in Alabama.

Nothing in this correspondence shall constitute or be construed as an admission of liability, fault, or wrongdoing on the part of Truist in its capacity as Trustee or otherwise. Truist expressly reserves all rights, defenses, and courses of action available to it in connection with this matter. Nothing contained herein should be construed as legal advice, and this letter is not intended to serve as a substitute for the guidance of independent legal counsel.

**We would appreciate your response by Friday, May 15, 2026.** If we do not hear from you by then, we will consider this matter concluded with no further changes. Please contact me directly at 304-610-4623 if you have questions about the above.

Sincerely,

4/10/26

Staci N. Criswell

Enclosures:
Copies of Will/Codicil of Kenneth L. Paine
Copy of Will of Esther Susan Wilson dated August 11, 2004

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I. CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

Merri Selby Samson
Plaintiff

Case # ________________
Judge ________________

vs.
Truist Bank, a National Banking Association
Defendant

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

---

**II. AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III. TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐ Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☒ Other
  ☐ Antitrust/Trade regulation
  ☒ Business transactions
  ☐ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☐ Discrimination—employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure



NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V. NUMBER OF CAUSES OF ACTION: [ ]**
(Specify)

2

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ no
☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
☐ yes
☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Andrew T Lavin — Attorney or party
Fla. Bar # 260827 — (Bar # if attorney)

Andrew T Lavin — (type or print name)
08/27/2026 — Date



NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

MERRI SELBY SAMSON,
Plaintiff,

CASE NO:
DIVISION:

v.

TRUIST BANK, a National Banking Association,
Defendant.
_______________________________________/

**NOTICE OF SERVICE OF PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Plaintiff, MERRI SELBY SAMSON, pursuant to Rule 1.340, Florida Rules of Civil Procedure, hereby files her Notice of Service of First Set of Interrogatories to Defendant TRUIST BANK propounded August 27, 2026.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed through the Florida E-portal on this 27th day of August, 2026.

**LAVIN LAW GROUP, P.A.**
*Counsel for Plaintiffs*
2670 NE 215th Street
Miami, FL 33180
Telephone: 954-967-2788
Facsimile: 954-983-7021
Email: alavin@lavinlawyers.com

By: /s/ *Andrew Todd Lavin*
ANDREW TODD LAVIN
Florida Bar No. 260827

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

MERRI SELBY SAMSON,
Plaintiff,

CASE NO:
DIVISION:

v.

TRUIST BANK, a National Banking Association,
Defendant.
_______________________________________/

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO TRUIST BANK**

Pursuant to Fla. R. Civ. P. 1.350, Plaintiff, MERRI SHELBY SAMSON ("Merri"), requests Defendant TRUIST BANK ("Truist"), to produce the following documents, for inspection and copying, within the time permitted the Florida Rules of Civil Procedure, unless otherwise shortened by the Court.

DEFINITIONS

1. All capitalized terms unless otherwise defined herein shall have the meaning set forth in the Third Amended Complaint filed in this action.

2. "And" and "or" as used herein are terms of inclusion and not of exclusion, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request for production of documents any document or information that might otherwise be construed to be outside its scope.

3. "Any" means one or more.

4. The term "Communication" shall mean any oral statement, dialogue, conversation, written notation, Document, ESI or other transfer of thoughts or ideas between persons by any means.



*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 08/27/2026 01:45:17 PM.****

5. The term "Correspondence" shall mean all letters, telegrams, notices, messages, memoranda, e-mails, writing, or other written Communication, or other records of conversations, meetings, conferences or other oral Communications.

6. "Document" or "documents" as used herein shall mean the original and any copy, regardless of its origin and location, of all writings of any kind whatsoever including, but not limited to, all abstracts, accounting journals, accounting ledgers, advertisements, affidavits, agendas, agreements or proposed agreements, analyses, appointment books, appraisals, articles of incorporation, balance sheets, bank checks, bank deposit or withdrawal slips, bank credit or debit memoranda, bank statements, blueprints, books, books of account, budgets, bulletins, bylaws, canceled checks, charts, checks, codes, communications, communications with government bodies, computer data or printouts, conferences, contracts, correspondence, electronic mail, data processing cards, data sheets, desk calendars, details, diagrams, diaries, disks or data compilations from which information can be obtained or translated, drafts, drawings, electromagnetic tapes, files, films, financial calculations, financial projections, financial statements, graphs, handwritten notes or comments however produced or reproduced, indexes, insertions, instructions, internal accounting records, interoffice communications, invoices, ledgers, letters, lists, logbooks, manuals, memoranda, microfilm, minutes of meetings, motion pictures, newspaper or magazine articles, networks, nonconforming copies which contain deletions, notations or records of meetings, notes, notices of wire transfer of funds, outlines, pamphlets, papers, passbooks, periodicals, photocopies, photographs, pictures, plans, preliminary drafts, press releases, proposals, publications, punch cards, raw and refined data, receipts, recommendations, records, records of conferences or conversations or meetings, records of payment, reports, resolutions, results of investigations, schedules, schematics, sepias, shipping papers, slides, specifications, speeches, statements of account, studies, summaries, surveys, tape recordings, tax returns,

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

telegrams, telephone logs and records, telephone and other conversations or communications, teletypes, telexes, transcripts, transcripts of tape recordings, video tapes, voice records, vouchers, work papers, worksheets, written notations, and any and all other papers similar to any of the foregoing. Any document containing thereon or attached thereto any alterations, comments, notes or other material not included in the copies or originals or referred to in the preceding definition shall be deemed a separate document within said definition. Any document shall include all exhibits, schedules or other writings affected by or referenced in any such document or other writings necessary to complete the information contained therein or make it not misleading.

7. The term "ESI" means "electronically stored information" and as used herein shall mean the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronically stored data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listing of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PDF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronically stored data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for



NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

digital data storage and/or transmittal. Electronically stored data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

8. "Person" means any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

9. "Substantia[ting]", "Pertaining", "Substantiate," "Substantiates", "Referring," "Related," "Relate", "Relates" or "Relating" means Referring to, describing, evidencing or constituting or having a relationship with a subject or issue.

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

**INSTRUCTIONS**

1. Answers to this request for production shall be submitted in a form so that the answer follows the retyped request for production of documents to which it applies.

2. You are hereby notified that its duty to respond includes the duty to supply all documents and materials in his physical possession, as well as those which can be obtained from additional sources upon request.

3. In the event that any document called for by a request is withheld on the basis of a claim of privilege, please identify that document by stating: (a) any addressor or addressee, (b) any indicated or blind copies, (c) the document's date, subject matter, number of pages, and attachments or appendices, (d) all persons to whom the document was distributed, shown or explained, (e) its present custodian, and (f) the nature of the privilege asserted.

4. In the event that any document requested herein is not presently in your possession or subject to your control, please identify each person you have reason to believe had or

has knowledge of its contents.

5. In the event that any document called for by a request has been destroyed or discarded, please identify the document by stating: (a) any addressor and addressee, (b) any indicated or blind copies, (c) the document's date, subject matter, number of pages, and attachments or appendices, (d) all persons to whom the document was distributed, shown or explained, (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard, and (f) the persons authorizing or carrying out such destruction or discard. In producing documents requested herein, you shall produce documents in full, without abridgment, abbreviation, and expurgation of any sort. In producing electronically stored data, you shall produce the electronically stored data in the form in which you usually store the information.

6. All documents shall be segregated in accordance with the numbered and lettered paragraphs and subparagraphs herein.

7. Unless otherwise specified, the requests contained in this Request for Production of Documents are limited to documents authored, created, received, revised or sent between January 1, 2018, and the date of your response to this Request for Production.

8. In searching for documents and ESI responsive to these requests, you should search for all such documents and ESI regardless of the form in which the document or ESI exists, the ownership of the device in which the ESI resides, or the location of the device in which the ESI is stored. Among other places, you should search for ESI stored on all servers, networks, hard drives, desktop computers (including work and home computers), notebook and laptop computers, tablet computers, cell phones, personal digital assistants, jump drives, voice mail, unifying messaging services, Web-based networking media such as Twitter, Facebook, LinkedIn, Listservs, and instant

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

messaging services.

9. In producing documents and/or ESI requested herein, you shall produce documents and/or ESI in full, without abridgment, abbreviation, and expurgation of any sort. All ESI shall be produced in native format with metadata intact.

NOT AN OFFICIAL COPY - PUBLIC RECORD - NOT AN OFFICIAL COPY

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed through the Florida E-portal on this 27th day of August, 2026.

**LAVIN LAW GROUP, P.A.**
*Counsel for Plaintiffs*
2670 NE 215th Street
Miami, FL 33180
Telephone: 954-967-2788
Facsimile: 954-983-7021
Email: alavin@lavinlawyers.com

By: /s/ *Andrew Todd Lavin*
ANDREW TODD LAVIN
Florida Bar No. 260827

## DOCUMENTS TO BE PRODUCED

1. Correspondence between Truist Bank ("Truist"), and:

   a). Esther Susan Wilson ("Esther"),

   b) Sandra Lynn Blakley ("Sandra"),

   c) James W. Stokes ("James"),

   d) Merri Selby Samson ("Merri"), or

   e) any individual or entity regarding:

      i. The trust created pursuant to the Codicil to the Last Will and Testament of Kenneth L. Paine (the "Trust"),

      ii. Esther,

      iii. Sandra,

      iv. James, or

      v. The distribution of the Trust assets.

2. Documents evidencing or relating to oral communications between Truist and Sandra or James.

3. Documents evidencing or relating to Truist's efforts to determine whether Sandra or James were creditors of Esther or of her estate at the time of Esther's death.

4. Documents evidencing or relating to whether Sandra or James were creditors of Esther or her estate at the time of Esther's death.

3. Documents evidencing or relating to the amounts, if any, that Esther or her estate owed to Sandra or to James at the time of Esther's death.

4. Documents evidencing or relating to the payment of all expenses and fees paid by the Trust that are identified in the account statement attached as Exhibit "D" to the Complaint filed in this action.

5. All accountings of the Trust prepared by Truist (the "Accountings").

6. Documents evidencing Truist's dissemination of all Accountings to anyone.

6. The final accounting of the Trust prepared by Truist.

7. Documents evidencing Truist's dissemination of the final accounting regarding the Trust to



NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

anyone.

8. The plan of distribution for the Trust prepared by Truist (the "Plan of Distribution).
9. Documents evidencing Truist's dissemination of the Plan of Distribution to anyone.
10. Documents evidencing all fees paid by the Trust to Truist.
11. Nonprivileged communications among Truist employees and agents regarding:
    a) the Trust,
    b) Esther,
    c) Sandra,
    d) James, or
    e) the distribution of the Trust assets to Sandra and James.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE26013958
DIVISION: 12

MERRI SELBY SAMSON,
Plaintiff,

v.

TRUIST BANK, a National Banking Association,
Defendant.
_______________________________________/

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

**NOTICE OF ACCEPTANCE AND WAIVER OF SERVICE OF PROCESS**

Defendant Truist Bank, by and through undersigned counsel, hereby notifies the Court and all parties of its voluntary acceptance of service of process of the Complaint effective as of the date hereof and its waiver of any further or formal service of the Complaint. Absent any further extension of time, the response to the Complaint shall be filed twenty (20) days from the date of the filing of this Notice.

Dated: September 15, 2026

Respectfully Submitted,

**GREENBERG TRAURIG, P.A.**
333 Southeast Second Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305.579.0500
Facsimile: 305.579.0717

*Counsel for Defendant Truist Bank*

By: /s/ *Mark. A. Salky*

MARK A. SALKY
Florida Bar No. 058221
ALEXA J. ROSENSON
Florida Bar No. 1040669
Email: mark.salky@gtlaw.com
burkek@gtlaw.com
alexa.rosenson@gtlaw.com
michelle.cruz@gtlaw.com
MiaLitDock@gtlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court using the Florida Courts eFiling Portal and served via email on Andrew T. Lavin, Esq. at: alavin@lavinlawyers.com this 15th day of September, 2026.

By: /s/ *Mark. A. Salky*
MARK A. SALKY

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO: CACE26013958

MERRI SELBY SAMSON,

Plaintiff,

v.

TRUIST BANK, a National Banking Association,

Defendant.
_______________________________________/

**NOTICE OF APPEARANCE AND**
**DESIGNATION OF E-MAIL ADDRESSES FOR SERVICE**

**PLEASE TAKE NOTICE** that ALEXA J. ROSENSON of GREENBERG TRAURIG, P.A., hereby files her Notice of Appearance as Counsel for Defendant, TRUIST BANK, a National Banking Association, and in accordance with Florida Bar Rule of Judicial Administration 2.516, hereby designates the following email addresses for receipt of all pleadings, orders, papers, notices, discovery and documents in the above-styled action:

Primary Email Address: Alexa.Rosenson@gtlaw.com

Secondary Email Address: Michelle.Cruz@gtlaw.com
MiaLitDock@gtlaw.com

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

Dated: September 16, 2026

**GREENBERG TRAURIG, P.A.**
*Counsel for Truist Bank*

333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131-3238
Telephone No.: (305) 579-0500
Email: Alexa.Rosenson@gtlaw.com
Michelle.cruz@gtlaw.com
Mialitdock@gtlaw.com

By: */s/ Alexa J. Rosenson*
ALEXA J. ROSENSON
Florida Bar No. 1040669

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of the Court using the Florida Courts eFiling Portal and served via email this 16th day of September, 2026 upon:

Andrew Todd Lavin, Esq.
**LAVIN LAW GROUP, P.A.**
2670 NE 215th Street
Miami, Florida 33180
Email: alavin@lavinlawyers.com

*Counsel for Plaintiffs*

By: */s/ Alexa J. Rosenson*
Alexa J. Rosenson

Filing # 257460498 E-Filed 09/20/2026 05:31:01 AM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: **CACE26013958**
JUDGE: **Frink, Keathan B (12)**

**Merri Selby Samson**
Plaintiff(s),
vs.
**Truist Bank, a National Banking Association**
Defendant(s).
_______________________________________/

**UNIFORM CASE MANAGEMENT ORDER**
**(CIRCUIT CIVIL GENERAL TRACK)**

**ALL PARTIES MUST READ CAREFULLY/STRICT COMPLIANCE IS MANDATORY**

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

THE DEADLINES LISTED HEREIN **MUST** BE **STRICTLY ENFORCED** UNLESS CHANGED BY COURT ORDER. STRICT COMPLIANCE MEANS NO CONTINUANCES OR EXTENSIONS WILL BE GRANTED WITHOUT COURT ORDER UPON WRITTEN MOTION SETTING FORTH GOOD CAUSE, PURSUANT TO IN RE: AMEND. TO FLA. R. CIV. P., NO. SC23-0962 (December 5, 2024), FLA. R. CIV. P. 1.200, FLA. R. CIV. P. 1.460, AND FLA. R. GEN. PRAC. & JUD. ADMIN. 2.545(e).

FAILURE TO ATTEND A MANDATORY CASE MANAGEMENT CONFERENCE MAY RESULT IN THE COURT DISMISSING THE ACTION, ENTERING A DEFAULT, STRIKING THE PLEADINGS, LIMITING PROOF OF WITNESSES, OR ANY OTHER APPROPRIATE ACTION AGAINST THE PARTY FAILING TO ATTEND. (Fla. R. Civ. P. 1.200(j)(6)).

THIS CASE MANAGEMENT ORDER SUPERSEDES ANY PRIOR CASE MANAGEMENT ORDER ENTERED IN THIS CASE.

This case has been designated to the **GENERAL CIVIL TRACK**. The deadlines established by this Order are to ensure the case is disposed of within 18 months from the date of service of initial process on the last defendant or 120 days after commencement of the action as provided in rule 1.050, whichever occurs first. Accordingly, the following procedures and deadlines shall be strictly observed by the parties and enforced by the court:

1. SCHEDULING OF A MANDATORY CASE MANAGEMENT CONFERENCE:



*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 09/20/2026 05:30:50 AM.****

[ **X** ](Applicable if checked): A <u>**MANDATORY**</u> Case Management Conference will be held on zoom in Courtroom **Zoom: https://17thflcourts.zoom.us/j/647324402** on **01-06-2027 9:00 AM** .

During the case management conference, the Court may elect to hear any pending motion, even if the parties have not identified the motion as an issue to be resolved. Motions for summary judgment and matters requiring an evidentiary hearing may not be heard unless agreed to by the parties and the court. (Fla. R. Civ. P. 1.200(j)(2)).
**On any matters ruled upon, unless otherwise ordered, within five (5) days following the Case Management Conference, counsel for Plaintiff(s) shall prepare an order pursuant to Florida Rule of Civil Procedure 1.200(j)(5).**

2. <u>COMPLAINT</u>: The Complaint shall be served within 120 days of filing. Failure to perfect service within 120 days shall subject the action to dismissal without prejudice or dropping of that party as a defendant. If plaintiff shows good cause or excusable neglect for failure to serve within 120 days, the court shall extend the time for service for an appropriate period. (Fla. R. Civ. P. 1.070(j)).

3. <u>NOTICE OF SERVICE OF COMPLAINT</u>: Upon service of the complaint on the last of all named defendants in a civil action, the plaintiff will file a Notice of Service and provide a courtesy copy of the Notice of Service to the assigned trial judge. A fillable PDF form "Notice of Service" is available on the Circuit's webpage (<u>www.17th.flcourts.org</u>).

4. <u>TRIAL</u>: Trial will be set in accordance with Florida Rule of Civil Procedure 1.440. The court will issue a separate Uniform Trial Order scheduling Calendar Call and setting the Trial Period. The action no longer needs to be "at issue" prior to the case being set for trial. The failure of the pleadings to be closed will not preclude the court from setting a case for trial. (Fla. R. Civ. P. 1.440).

5. <u>INITIAL DISCOVERY DISCLOSURES</u>:
   A. Parties must make initial discovery disclosures required by Florida Rule of Civil Procedure 1.280 **within 60 days after the service of the complaint or joinder**, unless a different time is set by court order. Pursuant to Local Rule 10A, a party may file a motion for ex parte relief where no motion for extension of time has been filed and the nonmoving party has completely failed to comply with Florida Rule of Civil Procedure 1.280(a).

   B. A party may not seek discovery from any source before that party's initial disclosures are served on the other party, except when authorized by stipulation or by court order. (Fla. R. Civ. P. 1.280(f)(1)).

   C. As set forth in Rule 1.280(a)(1), initial discovery disclosures include:
      1. The name and, if known, the address, telephone number, and e-mail address of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
      2. A copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

in its possession, custody, or control (or, if not in the disclosing party's possession, custody, or control, a description by category and location of such information) and may use to support its claims or defenses, unless the use would be solely for impeachment;

3. A computation for each category of damages claimed by the disclosing party and a copy of the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; provided that a party is not required to provide computations as to noneconomic damages, but the party must identify categories of damages claimed and provide supporting documents; and
4. A copy of any insurance policy or agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

D. A party who has made a disclosure under this rule or who has responded to an interrogatory, a request for production, or a request for admission **must** supplement or correct its disclosure or response: (a) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (b) as ordered by the court. (Fla. R. Civ. P. 1.280(g)).

6. NOTICE OF RELATED CASE(S) (i.e., cases involving the same parties, same subject matter or incident, or same property at issue): The Parties shall file a Notice of Related Case(s) within thirty (30) days from the date of this Order identifying any and all related cases.

7. ATTORNEY/PRO SE PARTY PREPARATION: Attorneys and self-represented litigants who appear at a case management conference **MUST** be prepared on the pending matters in the case, be prepared to make decisions about future progress and conduct of the case, and have authority to make representations to the court and enter into binding agreements concerning motions, issues, and scheduling. If a party is represented by more than 1 attorney, the attorney(s) present at a case management conference must be prepared with all attorneys' availability for future events. (Fla. R. Civ. P. 1.200(j)(3)).

8. CASE MANAGEMENT DEADLINES:

A. **DEADLINES IN THIS CASE MANAGEMENT ORDER MUST BE STRICTLY ENFORCED UNLESS CHANGED BY COURT ORDER FOR GOOD CAUSE SHOWN. (Fla. R. Civ. P. 1.200(e)(1)).**

B. Notices of unavailability and/or inability to comply with the deadlines have no effect on the case management deadlines set by this order. If a party is unable to comply with a deadline, including due to the unavailability of hearing time, the party must take action consistent with Florida Rule of Civil Procedure 1.200(e)(1). (Fla. R. Civ. P. 1.200(f)-(g)).

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

9. CASE MANAGEMENT AND TRIAL DEADLINES:

The following deadlines apply unless otherwise modified by the Court.

| | EVENTS | COMPLETION DEADLINE |
|---|---|---|
| 1. | Service of Complaint | 120 days from filing; Service under extension is only by court order. |
| 2. | Resolution of all motions/objections directed to the pleadings (i.e. to dismiss or strike) | 120 days before Calendar Call (must be set within 10 days of filing to be heard within 60 days) |
| 3. | Pleading Amendments/Adding New Parties | 120 days before Calendar Call |
| 4. | Disclosure of Fact Witnesses/Lists | 150 days before Calendar Call |
| 5. | Disclosure of Expert Witnesses/Lists | 120 days before Calendar Call |
| 6. | Completion of Compulsory Examinations | 120 days before Calendar Call |
| 7. | Disclosure of Rebuttal Witnesses/Lists | 100 days before Calendar Call |
| 8. | Completion of all Discovery (including expert discovery) | 30 days before Calendar Call (must be initiated 90 days before Calendar Call) |
| 9. | Filing of all Dispositive Motions and Motions for Summary Judgment | 90 days before Calendar Call |
| 10. | Expert Challenges and Deposition Objections | 45 days before Calendar Call (must be filed and heard) |
| 11. | Filing of all Pretrial Motions (including Motions in Limine) | 30 days before Calendar Call |
| 12. | Deposition Designations | 20 days before Calendar Call |
| 13. | Deadline for Mediation | 60 days before Calendar Call |

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

10. WITNESS LISTS:

**A. NO LATER THAN ONE HUNDRED AND FIFTY (150) DAYS PRIOR TO CALENDAR CALL:**

Fact Witnesses:

Parties must file and serve a list of names and addresses of all fact witnesses who are expected to testify at trial. Each party's fact witness list must include a brief description of the substance and scope of the testimony to be elicited from such witness. Both sides must cooperate in the scheduling of such witness depositions.

**B. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

Expert Witnesses:

1. At the time of disclosure of all expert witnesses, the parties shall file and serve the names and addresses of all expert witnesses to be called at trial, including their complete and updated curriculum vitae, and all information regarding expert testimony that is required by Fla. R. Civ. P. 1.280(c)(5). Parties shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition. Both parties shall cooperate in the scheduling of expert depositions.
2. The parties shall also provide answers to standard form expert interrogatories pursuant to Fla. R. Civ. P. 1.280(c)(5). All reports or other data compiled by each disclosed expert which is intended to be used by the expert and/or referred to during his/her deposition testimony shall be provided electronically to the opposing party at least 72 hours prior to the date of the scheduled deposition.

**C. NO LATER THAN ONE HUNDRED (100) DAYS PRIOR TO CALENDAR CALL:**

Rebuttal Witnesses:
Parties must file and serve a list of names and addresses of any rebuttal witnesses within one hundred (100) days prior to Calendar Call.

11. COMPULSORY MEDICAL EVALUATIONS ("CME"):

**A. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

All CME and other examinations pursuant to Florida Rule of Civil Procedure 1.360 must be completed no later than one hundred and twenty (120) days prior to Calendar Call.

12. DISCOVERY DEADLINES:

**A. NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**

All final discovery must have been initiated at least ninety (90) days prior to Calendar Call.

**B. NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**

Parties must complete all discovery, including expert discovery in accordance with Florida Rule of Civil Procedure 1.280(c)(5), at least thirty (30) days prior to Calendar Call. Discovery conducted after this time period is strongly disfavored and will only be permitted by order of the Court under exceptional circumstances.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

**C. ELECTRONICALLY STORED INFORMATION (ESI) DISCOVERY:**

ESI discovery procedures are governed by Seventeenth Judicial Circuit Administrative Order 2021-20-Gen, a copy of which is available on the Circuit's webpage (www.17th.flcourts.org).

13. MOTIONS**:**

**A. CONFERRAL PRIOR TO FILING MOTIONS:**

Before filing a non-dispositive motion, the movant **MUST** confer with the opposing party in a good-faith effort to resolve the issues raised in the motion **AND** at the end of the motion and above the signature block, the movant **MUST** include a certificate of conferral. (Fla. R. Civ. P. 1.202(a)-(b)). **The parties are expected to confer and attempt to resolve the issues raised in the motion before reserving hearing time**.

The requirements of rule 1.202 do not apply when the movant or the nonmovant is unrepresented by counsel (pro se). (Fla. R. Civ. P. 1.202(c)).

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

**B. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

1. Motions to Add a Party or Parties or to Amend the Pleadings: must be filed and set for hearing no later than one hundred and twenty (120) days before Calendar Call absent good cause shown. The deadline shall not conflict with Florida Rule of Civil Procedure 1.190(e), and the motion may be denied if there has been undue delay, bad faith, prejudice to the opposing side, dilatory motive on the part of the moving party or when the amendment would be futile.

2. Motions/Objections Directed to the Pleadings: all objections to the pleadings must be filed and set for hearing no later than one hundred and twenty (120) days before Calendar Call. **The motion/objection MUST be set within ten (10) days of filing of the motion/objection to be heard within sixty (60) days**.

**C. NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**

1. Motions for Summary Judgment and other Dispositive Motions: must be filed no later than ninety (90) days before Calendar Call. Motions for summary judgment will not be heard at or after Calendar Call unless approved by the court. If the Court has granted the parties' request for a hearing on the motion, but a hearing is not available prior to the deadline, the parties shall submit the fully briefed motion and opposition (if any) to the court prior to the expiration of the deadline, and the court can rule on those motions on the papers. Failure to timely submit the paperwork to the court will deem those motions abandoned.

2. Response to Motion for Summary Judgment: the response and supporting factual position must be served no later than forty (40) days after service of the motion for summary judgment. (Fla. R. Civ. P. 1.510(c)(5)).

**D. NO LATER THAN FORTY-FIVE (45) DAYS PRIOR TO CALENDAR CALL:**

1. Expert Challenges: motions challenging an expert witness ("Expert Challenges"), must be filed and heard no later than forty-five (45) days before Calendar Call.

2. Deposition Objections: objections raised in depositions expected to be introduced at trial must be filed and heard no later than forty-five (45) days before Calendar Call.

**E. NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**

1. Motions in Limine: must be filed no later than thirty (30) days prior to Calendar Call. If the Court has granted the parties' request for a hearing on the motion, but a hearing is not available prior to the deadline, the parties shall submit the fully briefed motion and opposition (if any) to the court prior to the expiration of the deadline, and the court can rule on those motions on the papers. Failure to timely submit the paperwork to the court will deem those motions abandoned.

2. Pretrial Motions: must be filed and heard no later than thirty (30) days prior to Calendar Call. All motions, other than motions in limine, not heard before Calendar Call will be deemed abandoned.

**F. NO LATER THAN TWENTY (20) DAYS PRIOR TO CALENDAR CALL:**

1. Deposition Designations: no later than twenty (20) days prior to Calendar Call, each party must serve designation of depositions, or portions of depositions, each intends to offer as testimony.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

14. JOINT PRETRIAL STIPULATION:

**A. NO LATER THAN TEN (10) DAYS PRIOR TO CALENDAR CALL:**

1. The Joint Pretrial Stipulation contemplates a single document that must be filed and served, **with a courtesy copy served on the undersigned judge**, no later than ten (10) days prior to Calendar Call.
2. The Joint Pretrial Stipulation requires that all agreed matters be fully identified and any disputed matters be specifically delineated with respect to each party.

**B. THE JOINT PRETRIAL STIPULATION MUST CONTAIN THE FOLLOWING IN SEPARATELY NUMBERED PARAGRAPHS:**

1. Statement of the Facts: A concise, impartial statement of the facts of the case.
2. Stipulated Facts: A list of those facts that can be stipulated and require no proof at trial.
3. Statement of Disputed Law and Fact: A concise, impartial statement of those issues of law and fact that are to be tried.
4. Exhibit Lists: Each party must separately list all exhibits they intend to introduce into evidence. Each item must be listed by number and description on a separate schedule attached to the Joint Pretrial Stipulation. Each exhibit must be specifically described. **Generic descriptions of exhibits are subject to being stricken.** If any party objects to the introduction of any such exhibit, such objection **must be stated in the Joint Pretrial Stipulation**, setting forth the grounds with specificity. All exhibits must have been made available to all parties for examination no later than ten (10) days before Calendar Call. Parties must initial each other's exhibit lists and exhibits. **At trial, only those exhibits properly listed and initialed may be offered into evidence**.
5. Demonstrative Exhibits: all demonstrative exhibits (e.g., charts, graphs, enlargements of exhibits, etc.) intended to be used at a jury trial must be displayed to all parties at least ten (10) days before Calendar Call. **Objections to a demonstrative exhibit must be disclosed in the pretrial stipulation or will be deemed waived.**
6. Witness Lists: Parties must furnish a written list containing the names and addresses of all witnesses intended to be called at trial in alphabetical order. Such list must designate the type of witness ("expert," "rebuttal," "impeachment," or otherwise) and must be attached to the Joint Pretrial Stipulation. All fact witness lists must include a brief description of **the substance and scope of the testimony** to be elicited from such witness. All expert witness lists must **designate the expert's specialties**. If any party objects to any witness, such objection must be stated in the Joint Pretrial Stipulation, setting forth the grounds with specificity. **At trial, only those witnesses properly and timely disclosed will be permitted to testify**.
7. Jury Instructions: If the trial is a jury trial, the parties must identify all agreed upon standard instructions and all special instructions. Copies of all agreed upon jury instructions and disputed jury instructions must be attached to the Joint Pretrial Stipulation identifying the party that proposed the instruction, along with copies of supporting statutory citations and/or case law.
8. Verdict Forms: If the trial is a jury trial, the jury verdict form must be designated as "agreed to" or "disputed" and must be attached to the Joint Pretrial Stipulation.
9. Peremptory Challenges: If the trial is a jury trial, the number of peremptory challenges for each party must be stated and attached to the Joint Pretrial Stipulation.
10. Pending Motions: Parties must set forth a list of all pending motions with copies attached to the Joint Pretrial Stipulation.
11. Trial Estimate: Each party must provide an estimate of the number of trial days required for presenting its side of the case.
12. Expert Challenges: All motions challenging an expert witness must be filed and heard no later than forty-five (45) days before Calendar Call. FAILURE TO DO SO MAY CONSTITUTE A WAIVER OF ANY EXPERT RELATED EVIDENCE ISSUE(S). It is within the discretion of the Court to remove any case with pending expert issues.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

15. <u>COURT POLICIES</u>**:**

A. Parties must do all things reasonable and necessary to assure the availability of witnesses for the entire Trial Period or to otherwise preserve witness testimony for trial as provided by the Florida Rules of Civil Procedure. See Fla. R. Civ. P. 1.300 & 1.460; see also Fla. R. Gen. Prac. & Jud. Admin. 2.545.

B. The requirements of this Order cannot be waived by stipulation **absent prior approval from the Court** pursuant to written agreement between the parties.

C. This Order may be tailored by the assigned Division Judge to conform to the particular requirements of the residential foreclosure and complex litigation divisions.

D. At trial, there will only be one (1) official record transcribed by one (1) court reporter. Plaintiff is responsible for arranging for a court reporter unless otherwise agreed to by the parties. If a conflict exists, the parties must resolve it among themselves prior to Calendar Call.

16. <u>TRIAL CONTINUANCES</u>**:**

A. The parties must satisfy the requirements of Rule 1.460 to change the trial period.

**B. A motion to continue is disfavored and will rarely be granted. No continuances will be granted without Court Order upon written motion setting forth good cause pursuant to In re: Amend. to Fla. R. Civ. P., No. SC23-0962 (December 5, 2024), Fla. R. Civ. P. 1.460, and Fla. R. Gen. Prac. & Jud. Admin. 2.545(e). All motions seeking a continuance must comply with Fla. R. Civ. P. 1.460 and Fla. R. Gen. Prac. & Jud. Admin. 2.545.**

C. A motion to continue trial must be in writing unless made at trial and, except for good cause shown, must be signed by the named party requesting the continuance. The motion must be filed promptly after the appearance of good cause to support such motion. Failure to properly request a continuance may be a basis for denying the motion to continue. (Fla. R. Civ. P. 1.460(b)-(c) and Fla. R. Gen. Prac. & Jud. Admin. 2.545(e)).

D. All motions for continuance, even if agreed, must state with specificity as set forth in rule 1.460(d).

E. **NO** CONTINUANCES will be granted based on the lack of due diligence in preparing for trial.

F. **NO** CONTINUANCES will be granted for reasons that should have been readily apparent to the parties when this Order was issued.

G. **NO** CONTINUANCES will be granted if expert witnesses are unavailable because testimony may be preserved by deposition.

H. **NO** CONTINUANCES will be granted for reasons relating to the failure to follow this Order.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

I. If a continuance is granted based on the dilatory conduct of an attorney or named party, the court may consider imposing sanctions on the attorney, the party, or both.

17. MEDIATION:

A. Mandatory Mediation: must commence no later than sixty (60) days prior to Calendar Call. The parties must comply with Florida Rules of Civil Procedure 1.700, 1.710, 1.720, and 1.730 as to the conduct of mediation. The parties may attend mediation through the use of communication technology (remotely) if mutually agreed upon. The Court will resolve any disagreement as to where or how mediation is to be conducted. Plaintiff's counsel is appointed lead counsel to facilitate and schedule the settlement conference with the mediator and all parties.

The Court appoints:
**WHOMEVER THE PARTIES AGREE UPON**

as Mediator, unless, within thirty (30) days of service of initial process on the last defendant or thirty (30) days from the date of this Order, whichever occurs later, the parties choose a different Mediator, and file notice of that choice and the name of the substitute mediator with the Clerk of Court. Failure to attend mediation may result in sanctions.

18. SANCTIONS: All parties should be familiar with Florida Rule of Civil Procedure 1.380 entitled "Failure to Make Discovery; Sanctions" and section 57.105, Florida Statutes, entitled "Attorney's fee; sanctions for raising unsupported claims or defenses; exceptions; service of motions; damages for delay of litigation."

FAILURE TO APPEAR, FAILURE TO FOLLOW TIME REQUIREMENTS, OR FAILURE TO FILE DOCUMENTS REQUIRED BY THIS COURT MAY RESULT IN THE DISMISSAL OF THE ACTION OR THE IMPOSITION OF SANCTIONS INCLUDING THE STRIKING OF PLEADINGS.

19. SETTLEMENT NOTIFICATION: Parties must immediately notify the Court in the event of settlement and submit a stipulation for an Order of Dismissal. Parties shall also cancel any and all pending hearings as a result of the settlement.

20. COMPLIANCE WITH DIVISIONAL PROCEDURES: Attorneys and self-represented litigants are required to read and comply with the division's procedures located on the 17th Judicial Circuit Court's Website (www.17th.flcourts.org). Failure to do so may result in appropriate sanctions, as permitted by law.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida on **09-19-2026** .

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

CACE26013958 09-19-2026 11:58 PM

CACE26013958 09-19-2026 11:58 PM

CIRCUIT COURT JUDGE

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately on receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

CC:
**ALEXA ROSENSON, Email : michelle.cruz@gtlaw.com**
**ALEXA ROSENSON, Email : MIALitDock@gtlaw.com**
**ALEXA ROSENSON, Email : alexa.rosenson@gtlaw.com**
**Andrew T Lavin, Email : ycombs@lavinlawyers.com**
**Andrew T Lavin, Email : khickson@lavinlawyers.com**
**Andrew T Lavin, Email : alavin@lavinlawyers.com**
**Mark A. Salky, Email : Salkym@gtlaw.com**
**Mark A. Salky, Email : Burkek@gtlaw.com**
**Nancy Ginart, Email : ginartn@gtlaw.com**

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE26013958

MERRI SELBY SAMSON,

Plaintiff/Counter-Defendant,

v.

TRUIST BANK, a North Carolina state-chartered bank ,

Defendant/Counter-Plaintiff.

---

TRUIST BANK, a North Carolina state-chartered bank,

Third-Party Plaintiff,

v.

JAMES W. STOKES and SONDRA LYNN BLAKELY,

Third-Party Defendants.

---

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT**

Defendant/Third-Party Plaintiff Truist Bank ("Defendant" or "Truist"), by and through undersigned counsel, hereby answers the Complaint (D.E. 1) filed by Plaintiff/Counter-Defendant Merri Selby Samson ("Plaintiff" or "Samson"), asserts affirmative defenses, asserts counterclaims against Plaintiff, and asserts Third-Party Claims against Third-Party Defendants James W. Stokes ("Stokes") and Sondra Lynn Blakely ("Blakely"), as follows:

**ANSWER**

1. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 1 of the Complaint and therefore they are denied.

2. Admitted that Truist has branch locations throughout the country, including in Broward, County, Florida. The remaining allegations in Paragraph 2 of the Complaint are denied.

3. Admitted that the Complaint purports to allege claims for breach of trust and declaratory relief, and alleges damages in excess of the jurisdictional limit. The remaining allegations in Paragraph 3 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Truist does not contest subject matter jurisdiction but reserves its right to remove this case to federal court should it decide to do so.

4. Admitted that Truist conducts business in Broward County and that Truist served as trustee of the Trust until the Trust terminated on October 17, 2025. Truist denies that it currently serves as trustee of the Trust. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the location of the Trust's administration and therefore they are denied. The remaining allegations in Paragraph 4 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Truist does not contest venue.

5. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Kenneth L. Paine's ("Kenneth") residence in Paragraph 5 of the Complaint and therefore they are denied. The remaining allegations in Paragraph 5 of the Complaint reference the Last Will and Testament of Kenneth L. Paine (the "Original Will") and the Codicil to the Last Will and Testament of Kenneth L. Paine (the "Kenneth Codicil," and together with the Original Will, the "Kenneth Will"), which speak for themselves and are the best

evidence as to their terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 5 of the Complaint that are contrary to the Kenneth Will.

6. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the familial relationships alleged in Paragraph 6 of the Complaint and therefore they are denied. The remaining allegations in Paragraph 6 of the Complaint reference the Kenneth Will, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 6 of the Complaint that are contrary to the Kenneth Will.

7. The allegations in Paragraph 7 of the Complaint are legal conclusions and reference the Kenneth Will, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 7 of the Complaint that are contrary to the Kenneth Will.

8. Truist admits that Kenneth died on or around December 22, 1994. The remaining allegations in Paragraph 8 of the Complaint reference the Last Will and Testament of Esther Susan Wilson ("Esther") (the "Esther Will"), which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 8 of the Complaint that are contrary to the Esther Will.

9. The allegations in Paragraph 9 of the Complaint reference and characterize the Esther Will, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations and characterizations in Paragraph 9 of the Complaint that are contrary to the Esther Will.

10. Truist admits that Esther died on or around March 20, 2025, and that, at the time of her death, Truist was serving as trustee of the Trust and the Trust owned an investment account at Truist (the "Trust Account") holding securities with a total value exceeding $445,000.

11. Truist admits that, during September 2025, it sold the securities in the Trust Account and distributed $215,897.62 to each of James W. Stokes and Sondra Lynn Blakely, for a total of $431,795.24. Truist denies the remaining allegations in Paragraph 11 of the Complaint.

12. The allegations in Paragraph 12 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Truist denies the allegations.

13. The allegations in Paragraph 13 of the Complaint reference a November 2025 account statement for the Trust Account (the "November Trust Statement"), which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations and characterizations in Paragraph 13 of the Complaint that are contrary to the November Trust Statement. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding whether Plaintiff had a copy of the Kenneth Will or Esther Will at the time and therefore they are denied. Truist denies that the November Trust Statement failed to make adequate disclosure and denies the remaining allegations and characterizations in Paragraph 13 of the Complaint.

14. Truist admits that, on or about November 14, 2025, Plaintiff contacted Truist regarding the Trust Account. The remaining allegations in Paragraph 14 of the Complaint reference an email from Truist to Plaintiff, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 14 of the Complaint that are contrary to the referenced email. Truist denies the remaining allegations in Paragraph 14 of the Complaint.

15. The allegations in Paragraph 15 of the Complaint reference a letter dated April 10, 2026 from Truist to Plaintiff, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations and characterizations in Paragraph 15 of the Complaint that are contrary to the referenced letter.

16. The allegations in Paragraph 16 of the Complaint reference an email dated May 27, 2026 from Truist to Plaintiff, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. Truist denies that it "acknowledged" any inadequacy of disclosure, denies any allegations or characterizations that are contrary to the referenced email, and denies the remaining allegations in Paragraph 16 of the Complaint.

17. Truist admits that it has not represented to Plaintiff that James W. Stokes or Sondra Lynn Blakely were creditors of Esther or her estate. Truist denies the remaining allegations and characterizations in Paragraph 17 of the Complaint.

18. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 of the Complaint and therefore they are denied.

**COUNT I—DECLARATORY JUDGMENT**

19. Truist incorporates by reference its answers in Paragraphs 1 through 18 above as if fully set forth herein.

20. Truist admits that Count I purports to state a claim for declaratory judgment. Truist denies that Plaintiff is entitled to the declaration sought and denies the remaining allegations in Paragraph 20 of the Complaint.

21. Truist admits that an actual controversy exists between the parties concerning the applicability of the six-month limitations period referenced in the November Trust Statement.

Truist denies Plaintiff's characterization of that controversy and denies the remaining allegations in Paragraph 21 of the Complaint.

22. Truist admits that a bona fide, actual, present, and practical need for a declaration exists. Truist denies any characterization inconsistent with its position and denies the remaining allegations in Paragraph 22 of the Complaint.

23. Truist denies the allegations in Paragraph 23 of the Complaint.

24. Truist admits that it provided Plaintiff with a copy of the Esther Will and supplemental information on or about May 27, 2026. Truist denies the characterizations in Paragraph 24 of the Complaint and denies the remaining allegations therein.

25. Truist denies the allegations in Paragraph 25 of the Complaint.

Truist denies that Plaintiff is entitled to any of the relief requested in the "WHEREFORE" clause following Paragraph 25 of the Complaint or any relief whatsoever.

**COUNT II—BREACH OF TRUST**

26. Truist incorporates by reference its answers in Paragraphs 1 through 18 above as if fully set forth herein.

27. Truist admits that it served trustee of the Trust until the Trust terminated on October 17, 2025, and denies that it currently serves as trustee of the Trust. The remaining allegations in Paragraph 27 of the Complaint are legal conclusions and reference the Kenneth Will, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 27 of the Complaint that are contrary to the Kenneth Will.

28. Truist denies the allegations in Paragraph 28 of the Complaint.

29. Truist denies the allegations in Paragraph 29 of the Complaint.

30. Truist denies the allegations in Paragraph 30 of the Complaint.

31. Truist denies the allegations in Paragraph 31 of the Complaint.

32. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 of the Complaint concerning Plaintiff's fee arrangement with her counsel and therefore denies those allegations. Truist denies the remaining allegations in Paragraph 32 of the Complaint.

Truist denies that Plaintiff is entitled to any of the relief requested in the "WHEREFORE" clause following Paragraph 32 of the Complaint or any relief whatsoever.

## GENERAL DENIAL

Except as otherwise expressly stated herein, Truist denies each and every allegation in the Complaint, including, without limitation, any allegations contained in the Complaint's headings and WHEREFORE clauses, and denies any liability to Plaintiff. Truist expressly reserves its right to seek to amend and/or supplement its Answer as may be necessary.

## AFFIRMATIVE DEFENSES

Without admitting any of the allegations set forth in the Complaint and without admitting that Truist bears any burden of proof as to any of those allegations, Truist asserts the following as separate and independent affirmative defenses.

### First Defense—Failure to State a Claim

The Complaint fails, in whole or in part, to state a claim upon which relief may be granted. Plaintiff's declaratory judgment claim fails to state a cause of action, including because the declaratory judgment count seeks an advisory determination of a statute of limitations defense rather than a bona fide dispute as to present legal rights. Plaintiff's breach of trust claim also fails because Plaintiff has not established that the exercise of Esther's power of appointment was

invalid, that James W. Stokes or Sondra Lynn Blakely were not creditors of Esther or her estate, that Truist breached any duty, or that any alleged breach caused the damages claimed.

**Second Defense—No Breach**

Truist did not breach the Trust or any duty owed to Plaintiff. The governing instruments authorized Esther to exercise the power of appointment by will in favor of her creditors or the creditors of her estate, provided that the power was specifically referenced. The Esther Will expressly referenced Article IV.B of the Kenneth Codicil and purported to exercise the power of appointment in favor of James W. Stokes and Sondra Lynn Blakely. To the extent that James W. Stokes and/or Sondra Lynn Blakely were creditors of Esther or of her estate, the appointment fell within the permitted class, the distributions were proper, and Plaintiff has no entitlement to the Trust assets.

**Third Defense—Reasonable Reliance (§ 736.1009, Fla. Stat.)**

To the extent Truist is found to have breached any duty, which Truist denies, Truist's conduct falls within the protection of section 736.1009, Florida Statutes. Truist acted in reasonable reliance on the governing instruments, including the Kenneth Will and the Esther Will. The Esther Will specifically referenced the power of appointment in the manner required by the Kenneth Will, and the Esther Will identified James W. Stokes and Sondra Lynn Blakely as the persons to whom Esther purported to appoint the Trust remainder. Any alleged breach resulting from Truist's reliance on the facially valid exercise of the power of appointment is therefore excused or limited to the extent provided by section 736.1009, Florida Statutes.

**Fourth Defense—Statute of Limitations (§ 736.1008, Fla. Stat.)**

In November 2025, Truist provided Plaintiff with an account statement for the Trust and a limitation notice that disclosed the liquidation and distribution of the Trust assets. The statement

reflected that the Trust assets had been liquidated and distributed to James W. Stokes and Sondra Lynn Blakely. Truist further advised Plaintiff by email dated November 16, 2025, that Esther's power of appointment had been exercised and that the Trust assets had been distributed pursuant to that exercise. The disclosures provided Plaintiff with sufficient information to know of the alleged distribution and to reasonably inquire into any claim concerning that distribution. Accordingly, the six-month limitations period under section 736.1008 began to run no later than Plaintiff's receipt of the applicable disclosure document and limitation notice. Plaintiff did not commence this action until August 27, 2026, more than six months after receipt of the account statement and limitation notice. Plaintiff's claims are therefore barred under section 736.1008.

**Fifth Defense—Setoff and Reduction**

Any recovery awarded to Plaintiff must be reduced by amounts actually recovered, credited, or otherwise made available from James W. Stokes or Sondra Lynn Blakely, including amounts recovered under section 736.1018, Florida Statutes, under the Final Receipt, Release and Refunding Agreements executed by James W. Stokes or Sondra Lynn Blakely, or through applicable equitable remedies.

**Sixth Defense—No Damages/Lack of Causation**

Plaintiff's breach of trust claim fails, in whole or in part, because Plaintiff cannot establish that any act or omission of Truist proximately caused the damages she claims. To the extent James W. Stokes and Sondra Lynn Blakely were creditors of Esther or of her estate, Esther's exercise of the power of appointment was valid and the distributions were proper, and Plaintiff—who, as the default remainder beneficiary, was entitled only to the remaining Trust corpus "not so appointed"—sustained no loss. Plaintiff's claimed damages, including alleged investment growth,

appreciation, and similar amounts, are speculative and unproven and, to the extent they constitute special damages, have not been pleaded with the specificity required.

**Seventh Defense—Consent, Release, or Ratification (§ 736.1012, Fla. Stat.)**

To the extent Plaintiff consented to the conduct constituting the alleged breach, released Truist from liability for it, or ratified the transactions at issue, Plaintiff's claims are barred under section 736.1012, Florida Statutes. Truist provided Plaintiff with an account statement and limitation notice in November 2025 disclosing that the Trust assets had been liquidated and distributed and thereafter advised Plaintiff that Esther's power of appointment had been exercised and that the Trust assets had been distributed pursuant to that exercise. To the extent Plaintiff, with knowledge of her rights and of the material facts relating to the distributions, thereafter consented to, acquiesced in, or ratified the administration and distribution of the Trust assets, she is precluded—on grounds of consent, release, ratification, waiver, or estoppel—from later objecting to those distributions or holding Truist liable for any resulting loss.

**RESERVATION**

Truist hereby reserves the right to assert any additional affirmative defenses that discovery reveals to be applicable, so as to avoid waiver.

**TRUIST'S PRAYER FOR RELIEF**

**WHEREFORE**, Defendant Truist Bank prays for judgment as follows:

(a) That Plaintiff take nothing by way of the Complaint and the Court dismiss the Complaint with prejudice;

(b) That the Court enter judgment that Truist is the prevailing party in this action;

(c) That the Court award reasonable attorneys' fees and costs in favor of Truist section 736.1004, Florida Statutes; and

(d) That the Court award any and all other relief to which Truist may be entitled.

**TRUIST BANK'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendant/Third-Party Plaintiff Truist Bank ("Truist"), by and through its undersigned counsel, sues Plaintiff/Counter-Defendant Merri Selby Samson ("Plaintiff" or "Samson") and Third-Party Defendants James W. Stokes ("Stokes") and Sondra Lynn Blakely ("Blakely"), and alleges as follows:

**NATURE OF THE ACTION**

1. This third-party action arises from the same transaction or occurrence alleged in the Complaint filed against Truist by Samson: the distribution of assets from the Trust for Esther Susan Wilson under the Last Will and Testament and Codicil of Kenneth L. Paine (the "Trust").

2. Esther Susan Wilson ("Esther") held a testamentary power of appointment over the remainder of the Trust. That power was limited to an appointment in favor of Esther's creditors or the creditors of her estate and required a specific reference to the power.

3. In the Last Will and Testament of Esther Susan Wilson (the "Esther Will"), Esther purported to exercise the power of appointment in favor of Stokes and Blakely. After Esther's death, and pursuant to Esther's exercise of the power of appointment, Truist distributed $215,897.62 to each of Stokes and Blakely, for a total of $431,795.24.

4. Before receiving the distributions, Stokes and Blakely each signed a Final Receipt, Release and Refunding Agreement (each, a "Refunding Agreement," and together, the "Refunding Agreements"). The Refunding Agreements require Stokes and Blakely to pay over amounts necessary to satisfy claims, charges, or expenses properly payable by Truist as trustee out of the property distributed to them. True and correct copies of the Refunding Agreement with Stokes and Blakely are attached hereto as Exhibits 1 and 2, respectively.

5. Samson contends that Stokes and Blakely were not creditors of Esther or her estate and that the distributions were therefore improper. Truist denies liability to Samson but seeks relief against Stokes and Blakely if the distributions are determined to have been improper or if Truist becomes obligated to restore any portion of the Trust assets to Samson.

6. Truist seeks declaratory relief concerning the validity of the power of appointment and the parties' respective rights and obligations. Truist also seeks contractual, statutory, equitable, and indemnification remedies to the extent permitted by law.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction because Samson's action is pending in this Court and Truist's claims arise from the same transaction or occurrence as Samson's claims against Truist. This Court also has subject matter jurisdiction because this is an action within the jurisdiction of the circuit court seeking damages in excess of $50,000, exclusive of interest, costs, and attorneys' fees.

8. In addition, this Court has subject matter jurisdiction over the declaratory relief claim pursuant to section 86.011, Florida Statutes.

9. This Court has personal jurisdiction over Samson because she submitted to the personal jurisdiction of this Court by commencing this action, and Truist's Counterclaim arises out of the transaction or occurrence that is the subject matter of Samson's Complaint. Samson is further subject to the jurisdiction of this Court under section 736.0202, Florida Statutes, as a beneficiary of a trust having its principal place of administration in Florida.

10. This Court has personal jurisdiction over Stokes and Blakely under section 736.0202(2)(a), Florida Statutes, because each accepted a distribution from a trust having its principal place of administration in Florida, and the claims asserted here concern that distribution.

Stokes and Blakely also executed the Refunding Agreements in connection with the Florida trust distribution, thereby establishing additional contacts with Florida related to the claims asserted in this action.

11. Venue is proper in Broward County because Truist performed its trustee duties there, the distributions were made in connection with the administration of the Trust there, and Plaintiff's underlying action is pending in this Court.

**THE PARTIES**

12. Counter-Plaintiff/Third-Party Plaintiff Truist Bank is a North Carolina state-charted commercial bank that conducts business in Broward County, Florida, and served as trustee of the Trust until the Trust terminated on October 17, 2025.

13. Plaintiff/Counter-Defendant Merri Selby Samson is a natural person who, upon information and belief resides in California and who is the remainder beneficiary of the Trust.

14. Third-Party Defendant James W. Stokes is a natural person who, upon information and belief, resides in Saraland, Mobile County, Alabama, and who received a distribution from the Trust.

15. Third-Party Defendant Sondra Lynn Blakely is a natural person who, upon information and belief, resides in Saraland, Mobile County, Alabama, and who received a distribution from the Trust.

**GENERAL ALLEGATIONS**

16. Kenneth L. Paine created the Trust, a testamentary trust, under his Last Will and Testament dated January 22, 1991, and Codicil dated March 29, 1993. The Trust is governed by Florida law.

17. Under the Trust, Esther was the lifetime beneficiary and held a power of appointment over the remaining Trust assets, exercisable by her last will and testament only in favor of her creditors or the creditors of her estate, and only by specific reference to the grant of the power. If the power of appointment was not validly exercised, the remaining Trust assets were to pass to the default remainder beneficiary, Samson.

18. The Esther Will purported to exercise that power of appointment by specific reference to Article IV.B of the Kenneth Codicil and appointed the remaining Trust assets to Stokes and Blakely.

19. Esther died on or about March 20, 2025. At the time of Esther's death, Truist was serving as trustee and the Trust held an investment account containing securities.

20. In reliance on the governing instruments and the Esther Will, Truist, serving as trustee of the Trust, liquidated the Trust securities and, in September 2025, distributed $215,897.62 to Stokes and $215,897.62 to Blakely, for a total of $431,795.24.

21. Before receiving the distributions, Stokes and Blakely each executed a Refunding Agreement dated August 28, 2025. Exs. 1 and 2.

22. The Refunding Agreements provide, among other things, that Stokes and Blakely will pay over amounts necessary to satisfy claims, charges, or expenses properly payable by Truist as trustee out of the cash, assets, or other property delivered to them from the Trust.

23. The Trust terminated on October 17, 2025.

24. Samson has asserted that the distributions were improper because Stokes and Blakely were not creditors of Esther or her estate.

25. If Stokes and Blakely were not creditors of Esther or of her estate, the purported exercise of the power of appointment in their favor was ineffective, the distributions fell outside the scope of the power of appointment, and the distributions to them were improper.

26. Truist notified Stokes and Blakely in April 2026 of a potential claim concerning the distributions and requested that they preserve the distributed funds and the original Esther Will.

27. By letter dated August 19, 2026, Truist once again demanded that Stokes and Blakely either provide documentation establishing creditor status or return the distributed funds in accordance with section 736.1018, Florida Statutes, and the Refunding Agreements.

28. Stokes and Blakely have not responded to either letter, have failed to provide documentation sufficient to establish their creditor status, and have not returned the distributed funds.

29. Truist presently reserves its position as to whether Stokes or Blakely were creditors of Esther or her estate. Truist seeks a judicial determination of that issue because it is material to the parties' rights and obligations.

30. Samson seeks to recover from Truist the alleged value of the Trust assets, together with investment growth, appreciation, trustee compensation, attorneys' fees, costs, and other relief.

31. If Stokes and Blakely were not creditors of Esther or of her estate, and to the extent Truist is held liable to Samson on account of the distributions, Stokes and Blakely are liable to Truist for the amounts they received and retained.

32. Truist denies that it breached the Trust or any duty owed to Samson. If, however, Truist is held liable or becomes obligated to restore any portion of the Trust assets because of the distributions, Stokes and Blakely are liable to Truist to the extent provided by their agreements, section 736.1018, Florida Statutes, and applicable equitable principles.

33. Truist has performed all conditions precedent to the maintenance of these third-party claims.

34. Truist has engaged undersigned counsel to pursue these third-party claims and is obligated to pay reasonable attorneys' fees for its services.

**COUNT I—COMMON LAW INDEMNIFICATION**
**(Against Stokes and Blakely)**

35. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

36. If the distributions were improper because Stokes and Blakely did not qualify as creditors of Esther or her estate, Stokes and Blakely received and retained Trust assets to which they were not entitled.

37. To the extent Truist is held liable to Samson for restoring Trust assets distributed to Stokes and Blakely, Truist's liability would be derivative or technical and would arise from Stokes' and Blakely's improper receipt and retention of the funds.

38. Under those circumstances, Stokes and Blakely are obligated to indemnify Truist for amounts Truist is required to pay because of the distributions, including recoverable defense costs, attorneys' fees, costs, and interest.

**WHEREFORE**, Truist demands judgment against Stokes and Blakely for indemnification of all amounts Truist may be adjudged liable to pay Samson on account of the distributions, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT II—DECLARATORY JUDGMENT**
**(Against Samson, Stokes, and Blakely)**

39. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

40. This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes.

41. A bona fide, actual, and present controversy exists between Truist, Samson, Stokes, and Blakely concerning:

a. Whether Stokes and Blakely were creditors of Esther or her estate within the meaning of the power of appointment;

b. Whether Esther validly exercised the power of appointment in their favor;

c. Whether the distributions to Stokes and Blakely were authorized;

d. Whether Stokes and Blakely are required to return the distributions, together with income, interest, or gains; and

e. The respective rights and obligations of the parties under the Refunding Agreements and section 736.1018, Florida Statutes.

42. Truist is in doubt concerning its rights and obligations and has a practical need for a declaration resolving the controversy.

43. The controversy is not hypothetical or advisory. Samson has asserted claims against Truist based on the distributions, Truist has demanded information or repayment from Stokes and Blakely, and Stokes and Blakely have not returned the funds or established their entitlement to retain them.

44. Truist therefore requests a declaration that:

a. The validity of the distributions depends on whether Stokes and Blakely qualified as creditors of Esther or her estate;

b. If Stokes and Blakely were not qualifying creditors, the distributions to them were improper; and

c. If Stokes and Blakely were not qualifying creditors, they are obligated to return the improper distributions and any amounts required by section 736.1018, Florida Statutes, and the Refunding Agreements.

**WHEREFORE**, Truist demands that the Court enter a declaration determining the parties' rights and obligations as described above, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT III—BREACH OF THE REFUNDING AGREEMENTS**
**(Against Stokes and Blakely)**

45. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

46. The Refunding Agreements are valid and enforceable contracts supported by consideration.

47. The Refunding Agreements were executed by Stokes and Blakely before they received the Trust distributions.

48. Under the Refunding Agreements, Stokes and Blakely each agreed to pay over amounts necessary to satisfy claims, charges, or expenses properly payable by Truist as trustee out of the cash, assets, or other property distributed to them.

49. Samson's claims against Truist arise directly from the distributions covered by the Refunding Agreements.

50. To the extent Plaintiff prevails against Truist, or to the extent any amount becomes properly payable by Truist as trustee because of the distributions, that amount falls within the obligations addressed by the Refunding Agreements.

51. Truist demanded that Stokes and Blakely comply with their obligations by returning the distributed funds or providing information establishing their entitlement to retain them.

52. Stokes and Blakely have failed or refused to comply with their contractual obligations.

53. As a result, Truist has sustained and will sustain damages, including amounts properly payable because of the distributions, together with recoverable costs, interest, and attorneys' fees.

**WHEREFORE**, Truist demands judgment against Stokes and Blakely for damages in an amount to be determined at trial and subject to the terms and conditions of the applicable Refunding Agreements, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT IV—STATUTORY LIABILITY FOR IMPROPER DISTRIBUTION**
**(Against Stokes and Blakely)**

54. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

55. Section 736.1018, Florida Statutes, requires a person who receives an improper distribution from a trust to return the assets or funds received, together with the income from the assets or interest on the funds from the date of distribution.

56. If the recipient no longer possesses the assets or funds, the statute requires return of the value of the assets or funds at the date of disposition, together with income and gains realized from them, as provided by the statute.

57. If Stokes and Blakely were not creditors of Esther or her estate, they received an improper distribution outside the class permitted by the power of appointment.

58. Truist is entitled to recover from Stokes and Blakely the amount improperly distributed to them, together with the income, interest, gains, or other amounts required by section 736.1018.

**WHEREFORE**, Truist demands judgment against Stokes and Blakely, in favor of Truist, for the amounts Truist is or may be required to pay or restore on account of the distributions, improperly, together with income, interest, gains, or other amounts required by section 736.1018, as well as costs, reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT V—UNJUST ENRICHMENT**
**(Against Stokes and Blakely)**

59. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

60. Truist, acting in its capacity as trustee and on behalf of the Trust, conferred a benefit on each of Stokes and Blakely by distributing $215,897.62 to each of them from the Trust.

61. Stokes and Blakely each had knowledge of, and appreciated, the benefit conferred, and each accepted and retained that benefit.

62. If Stokes and Blakely were not creditors of Esther or her estate, they were not entitled to receive or retain the distributions.

63. Under those circumstances, it would be inequitable for Stokes and Blakely to retain the funds without restoring their value, together with any applicable income, interest, or gains.

64. Truist is therefore entitled to restitution of the distributions to the extent permitted by law.

**WHEREFORE**, Truist demands judgment against Stokes and Blakely, in favor of Truist, for restitution of the amounts Truist is or may be required to pay or restore on account of the distributions, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT VI—MONEY HAD AND RECEIVED**
**(Against Stokes and Blakely)**

65. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

66. Truist, while serving as trustee of the Trust, paid $215,897.62 to Stokes and $215,897.62 to Blakely, for a total of $431,795.24.

67. If Stokes and Blakely were not creditors of Esther or of her estate, they received money to which they were not entitled and which, in equity and good conscience, they should not be permitted to retain.

68. If Stokes and Blakely were not creditors of Esther or of her estate, it would unjustly deprive the Trust and its rightful beneficiary of the funds to permit Stokes and Blakely to keep the amounts paid to them.

69. If Stokes and Blakely were not creditors of Esther or of her estate, Truist is entitled to a judgment against Stokes and Blakely for money had and received in the amounts paid to each of them, together with interest.

**WHEREFORE**, Truist demands judgment in favor of Truist against Stokes and Blakely for money had and received in the amounts distributed to each of them, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

## COUNT VII—CONSTRUCTIVE TRUST
## (Against Stokes and Blakely)

70. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

71. Truist, acting in its capacity as trustee and on behalf of the Trust, paid $215,897.62 to Stokes and $215,897.62 to Blakely, for a total of $431,795.24.

72. If Stokes and Blakely were not creditors of Esther or of her estate, the funds distributed to them, and any identifiable proceeds or property into which those funds can be traced, in equity belong to the Trust.

73. If Stokes and Blakely received the distributions as a result of a distribution that was outside the scope of the power of appointment, their retention of the funds or their traceable proceeds would unjustly enrich them at the expense of the Trust and its rightful beneficiary.

74. To the extent the distributed funds or their proceeds remain identifiable and traceable to property in the possession or control of Stokes or Blakely, Truist is entitled to the imposition of a constructive trust upon that property to secure restoration of the funds to the Trust.

**WHEREFORE**, Truist demands the Court impose a constructive trust in favor of Truist upon the funds distributed to Stokes and Blakely and any identifiable proceeds or property traceable thereto, and grant such further relief, together with costs and reasonable attorneys' fees, as the Court deems just and proper.

Dated: October 5, 2026

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 Southeast Second Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305.579.0500
Facsimile: 305.579.0717

*Counsel for Defendant/Third-Party Plaintiff Truist Bank*

By: /s/ *Mark A. Salky*

MARK A. SALKY
Florida Bar No. 058221
ALEXA J. ROSENSON
Florida Bar No. 1040669
Email: mark.salky@gtlaw.com
burkek@gtlaw.com
alexa.rosenson@gtlaw.com
michelle.cruz@gtlaw.com
MiaLitDock@gtlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court using the Florida Courts eFiling Portal and served via email on Andrew T. Lavin, Esq. at: alavin@lavinlawyers.com this 5th day of October, 2026.

By: /s/ *Mark A. Salky*
MARK A. SALKY

Filing # 258523278 E-Filed 10/05/2026 04:06:41 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE26013958

MERRI SELBY SAMSON,

Plaintiff/Counter-Defendant,

v.

TRUIST BANK, a North Carolina state-chartered bank ,

Defendant/Counter-Plaintiff.

---

TRUIST BANK, a North Carolina state-chartered bank,

Third-Party Plaintiff,

v.

JAMES W. STOKES and SONDRA LYNN BLAKELY,

Third-Party Defendants.

---

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT**

Defendant/Third-Party Plaintiff Truist Bank ("Defendant" or "Truist"), by and through undersigned counsel, hereby answers the Complaint (D.E. 1) filed by Plaintiff/Counter-Defendant Merri Selby Samson ("Plaintiff" or "Samson"), asserts affirmative defenses, asserts counterclaims against Plaintiff, and asserts Third-Party Claims against Third-Party Defendants James W. Stokes ("Stokes") and Sondra Lynn Blakely ("Blakely"), as follows:

**ANSWER**

1. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 1 of the Complaint and therefore they are denied.

2. Admitted that Truist has branch locations throughout the country, including in Broward, County, Florida. The remaining allegations in Paragraph 2 of the Complaint are denied.

3. Admitted that the Complaint purports to allege claims for breach of trust and declaratory relief, and alleges damages in excess of the jurisdictional limit. The remaining allegations in Paragraph 3 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Truist does not contest subject matter jurisdiction but reserves its right to remove this case to federal court should it decide to do so.

4. Admitted that Truist conducts business in Broward County and that Truist served as trustee of the Trust until the Trust terminated on October 17, 2025. Truist denies that it currently serves as trustee of the Trust. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the location of the Trust's administration and therefore they are denied. The remaining allegations in Paragraph 4 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Truist does not contest venue.

5. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Kenneth L. Paine's ("Kenneth") residence in Paragraph 5 of the Complaint and therefore they are denied. The remaining allegations in Paragraph 5 of the Complaint reference the Last Will and Testament of Kenneth L. Paine (the "Original Will") and the Codicil to the Last Will and Testament of Kenneth L. Paine (the "Kenneth Codicil," and together with the Original Will, the "Kenneth Will"), which speak for themselves and are the best

evidence as to their terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 5 of the Complaint that are contrary to the Kenneth Will.

6. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the familial relationships alleged in Paragraph 6 of the Complaint and therefore they are denied. The remaining allegations in Paragraph 6 of the Complaint reference the Kenneth Will, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 6 of the Complaint that are contrary to the Kenneth Will.

7. The allegations in Paragraph 7 of the Complaint are legal conclusions and reference the Kenneth Will, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 7 of the Complaint that are contrary to the Kenneth Will.

8. Truist admits that Kenneth died on or around December 22, 1994. The remaining allegations in Paragraph 8 of the Complaint reference the Last Will and Testament of Esther Susan Wilson ("Esther") (the "Esther Will"), which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 8 of the Complaint that are contrary to the Esther Will.

9. The allegations in Paragraph 9 of the Complaint reference and characterize the Esther Will, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations and characterizations in Paragraph 9 of the Complaint that are contrary to the Esther Will.

10. Truist admits that Esther died on or around March 20, 2025, and that, at the time of her death, Truist was serving as trustee of the Trust and the Trust owned an investment account at Truist (the "Trust Account") holding securities with a total value exceeding $445,000.

11. Truist admits that, during September 2025, it sold the securities in the Trust Account and distributed $215,897.62 to each of James W. Stokes and Sondra Lynn Blakely, for a total of $431,795.24. Truist denies the remaining allegations in Paragraph 11 of the Complaint.

12. The allegations in Paragraph 12 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Truist denies the allegations.

13. The allegations in Paragraph 13 of the Complaint reference a November 2025 account statement for the Trust Account (the "November Trust Statement"), which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations and characterizations in Paragraph 13 of the Complaint that are contrary to the November Trust Statement. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding whether Plaintiff had a copy of the Kenneth Will or Esther Will at the time and therefore they are denied. Truist denies that the November Trust Statement failed to make adequate disclosure and denies the remaining allegations and characterizations in Paragraph 13 of the Complaint.

14. Truist admits that, on or about November 14, 2025, Plaintiff contacted Truist regarding the Trust Account. The remaining allegations in Paragraph 14 of the Complaint reference an email from Truist to Plaintiff, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 14 of the Complaint that are contrary to the referenced email. Truist denies the remaining allegations in Paragraph 14 of the Complaint.

15. The allegations in Paragraph 15 of the Complaint reference a letter dated April 10, 2026 from Truist to Plaintiff, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations and characterizations in Paragraph 15 of the Complaint that are contrary to the referenced letter.

16. The allegations in Paragraph 16 of the Complaint reference an email dated May 27, 2026 from Truist to Plaintiff, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. Truist denies that it "acknowledged" any inadequacy of disclosure, denies any allegations or characterizations that are contrary to the referenced email, and denies the remaining allegations in Paragraph 16 of the Complaint.

17. Truist admits that it has not represented to Plaintiff that James W. Stokes or Sondra Lynn Blakely were creditors of Esther or her estate. Truist denies the remaining allegations and characterizations in Paragraph 17 of the Complaint.

18. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 18 of the Complaint and therefore they are denied.

**COUNT I—DECLARATORY JUDGMENT**

19. Truist incorporates by reference its answers in Paragraphs 1 through 18 above as if fully set forth herein.

20. Truist admits that Count I purports to state a claim for declaratory judgment. Truist denies that Plaintiff is entitled to the declaration sought and denies the remaining allegations in Paragraph 20 of the Complaint.

21. Truist admits that an actual controversy exists between the parties concerning the applicability of the six-month limitations period referenced in the November Trust Statement.

Truist denies Plaintiff's characterization of that controversy and denies the remaining allegations in Paragraph 21 of the Complaint.

22. Truist admits that a bona fide, actual, present, and practical need for a declaration exists. Truist denies any characterization inconsistent with its position and denies the remaining allegations in Paragraph 22 of the Complaint.

23. Truist denies the allegations in Paragraph 23 of the Complaint.

24. Truist admits that it provided Plaintiff with a copy of the Esther Will and supplemental information on or about May 27, 2026. Truist denies the characterizations in Paragraph 24 of the Complaint and denies the remaining allegations therein.

25. Truist denies the allegations in Paragraph 25 of the Complaint.

Truist denies that Plaintiff is entitled to any of the relief requested in the "WHEREFORE" clause following Paragraph 25 of the Complaint or any relief whatsoever.

**COUNT II—BREACH OF TRUST**

26. Truist incorporates by reference its answers in Paragraphs 1 through 18 above as if fully set forth herein.

27. Truist admits that it served trustee of the Trust until the Trust terminated on October 17, 2025, and denies that it currently serves as trustee of the Trust. The remaining allegations in Paragraph 27 of the Complaint are legal conclusions and reference the Kenneth Will, which speaks for itself and is the best evidence as to its terms and content, and no response is therefore required. To the extent a response is required, Truist denies all allegations in Paragraph 27 of the Complaint that are contrary to the Kenneth Will.

28. Truist denies the allegations in Paragraph 28 of the Complaint.

29. Truist denies the allegations in Paragraph 29 of the Complaint.

30. Truist denies the allegations in Paragraph 30 of the Complaint.

31. Truist denies the allegations in Paragraph 31 of the Complaint.

32. Truist lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 of the Complaint concerning Plaintiff's fee arrangement with her counsel and therefore denies those allegations. Truist denies the remaining allegations in Paragraph 32 of the Complaint.

Truist denies that Plaintiff is entitled to any of the relief requested in the "WHEREFORE" clause following Paragraph 32 of the Complaint or any relief whatsoever.

**GENERAL DENIAL**

Except as otherwise expressly stated herein, Truist denies each and every allegation in the Complaint, including, without limitation, any allegations contained in the Complaint's headings and WHEREFORE clauses, and denies any liability to Plaintiff. Truist expressly reserves its right to seek to amend and/or supplement its Answer as may be necessary.

**AFFIRMATIVE DEFENSES**

Without admitting any of the allegations set forth in the Complaint and without admitting that Truist bears any burden of proof as to any of those allegations, Truist asserts the following as separate and independent affirmative defenses.

**First Defense—Failure to State a Claim**

The Complaint fails, in whole or in part, to state a claim upon which relief may be granted. Plaintiff's declaratory judgment claim fails to state a cause of action, including because the declaratory judgment count seeks an advisory determination of a statute of limitations defense rather than a bona fide dispute as to present legal rights. Plaintiff's breach of trust claim also fails because Plaintiff has not established that the exercise of Esther's power of appointment was

invalid, that James W. Stokes or Sondra Lynn Blakely were not creditors of Esther or her estate, that Truist breached any duty, or that any alleged breach caused the damages claimed.

**Second Defense—No Breach**

Truist did not breach the Trust or any duty owed to Plaintiff. The governing instruments authorized Esther to exercise the power of appointment by will in favor of her creditors or the creditors of her estate, provided that the power was specifically referenced. The Esther Will expressly referenced Article IV.B of the Kenneth Codicil and purported to exercise the power of appointment in favor of James W. Stokes and Sondra Lynn Blakely. To the extent that James W. Stokes and/or Sondra Lynn Blakely were creditors of Esther or of her estate, the appointment fell within the permitted class, the distributions were proper, and Plaintiff has no entitlement to the Trust assets.

**Third Defense—Reasonable Reliance (§ 736.1009, Fla. Stat.)**

To the extent Truist is found to have breached any duty, which Truist denies, Truist's conduct falls within the protection of section 736.1009, Florida Statutes. Truist acted in reasonable reliance on the governing instruments, including the Kenneth Will and the Esther Will. The Esther Will specifically referenced the power of appointment in the manner required by the Kenneth Will, and the Esther Will identified James W. Stokes and Sondra Lynn Blakely as the persons to whom Esther purported to appoint the Trust remainder. Any alleged breach resulting from Truist's reliance on the facially valid exercise of the power of appointment is therefore excused or limited to the extent provided by section 736.1009, Florida Statutes.

**Fourth Defense—Statute of Limitations (§ 736.1008, Fla. Stat.)**

In November 2025, Truist provided Plaintiff with an account statement for the Trust and a limitation notice that disclosed the liquidation and distribution of the Trust assets. The statement

reflected that the Trust assets had been liquidated and distributed to James W. Stokes and Sondra Lynn Blakely. Truist further advised Plaintiff by email dated November 16, 2025, that Esther's power of appointment had been exercised and that the Trust assets had been distributed pursuant to that exercise. The disclosures provided Plaintiff with sufficient information to know of the alleged distribution and to reasonably inquire into any claim concerning that distribution. Accordingly, the six-month limitations period under section 736.1008 began to run no later than Plaintiff's receipt of the applicable disclosure document and limitation notice. Plaintiff did not commence this action until August 27, 2026, more than six months after receipt of the account statement and limitation notice. Plaintiff's claims are therefore barred under section 736.1008.

**Fifth Defense—Setoff and Reduction**

Any recovery awarded to Plaintiff must be reduced by amounts actually recovered, credited, or otherwise made available from James W. Stokes or Sondra Lynn Blakely, including amounts recovered under section 736.1018, Florida Statutes, under the Final Receipt, Release and Refunding Agreements executed by James W. Stokes or Sondra Lynn Blakely, or through applicable equitable remedies.

**Sixth Defense—No Damages/Lack of Causation**

Plaintiff's breach of trust claim fails, in whole or in part, because Plaintiff cannot establish that any act or omission of Truist proximately caused the damages she claims. To the extent James W. Stokes and Sondra Lynn Blakely were creditors of Esther or of her estate, Esther's exercise of the power of appointment was valid and the distributions were proper, and Plaintiff—who, as the default remainder beneficiary, was entitled only to the remaining Trust corpus "not so appointed"—sustained no loss. Plaintiff's claimed damages, including alleged investment growth,

appreciation, and similar amounts, are speculative and unproven and, to the extent they constitute special damages, have not been pleaded with the specificity required.

**Seventh Defense—Consent, Release, or Ratification (§ 736.1012, Fla. Stat.)**

To the extent Plaintiff consented to the conduct constituting the alleged breach, released Truist from liability for it, or ratified the transactions at issue, Plaintiff's claims are barred under section 736.1012, Florida Statutes. Truist provided Plaintiff with an account statement and limitation notice in November 2025 disclosing that the Trust assets had been liquidated and distributed and thereafter advised Plaintiff that Esther's power of appointment had been exercised and that the Trust assets had been distributed pursuant to that exercise. To the extent Plaintiff, with knowledge of her rights and of the material facts relating to the distributions, thereafter consented to, acquiesced in, or ratified the administration and distribution of the Trust assets, she is precluded—on grounds of consent, release, ratification, waiver, or estoppel—from later objecting to those distributions or holding Truist liable for any resulting loss.

**RESERVATION**

Truist hereby reserves the right to assert any additional affirmative defenses that discovery reveals to be applicable, so as to avoid waiver.

**TRUIST'S PRAYER FOR RELIEF**

**WHEREFORE**, Defendant Truist Bank prays for judgment as follows:

(a) That Plaintiff take nothing by way of the Complaint and the Court dismiss the Complaint with prejudice;

(b) That the Court enter judgment that Truist is the prevailing party in this action;

(c) That the Court award reasonable attorneys' fees and costs in favor of Truist section 736.1004, Florida Statutes; and

(d) That the Court award any and all other relief to which Truist may be entitled.

**TRUIST BANK'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendant/Third-Party Plaintiff Truist Bank ("Truist"), by and through its undersigned counsel, sues Plaintiff/Counter-Defendant Merri Selby Samson ("Plaintiff" or "Samson") and Third-Party Defendants James W. Stokes ("Stokes") and Sondra Lynn Blakely ("Blakely"), and alleges as follows:

**NATURE OF THE ACTION**

1. This third-party action arises from the same transaction or occurrence alleged in the Complaint filed against Truist by Samson: the distribution of assets from the Trust for Esther Susan Wilson under the Last Will and Testament and Codicil of Kenneth L. Paine (the "Trust").

2. Esther Susan Wilson ("Esther") held a testamentary power of appointment over the remainder of the Trust. That power was limited to an appointment in favor of Esther's creditors or the creditors of her estate and required a specific reference to the power.

3. In the Last Will and Testament of Esther Susan Wilson (the "Esther Will"), Esther purported to exercise the power of appointment in favor of Stokes and Blakely. After Esther's death, and pursuant to Esther's exercise of the power of appointment, Truist distributed $215,897.62 to each of Stokes and Blakely, for a total of $431,795.24.

4. Before receiving the distributions, Stokes and Blakely each signed a Final Receipt, Release and Refunding Agreement (each, a "Refunding Agreement," and together, the "Refunding Agreements"). The Refunding Agreements require Stokes and Blakely to pay over amounts necessary to satisfy claims, charges, or expenses properly payable by Truist as trustee out of the property distributed to them. True and correct copies of the Refunding Agreement with Stokes and Blakely are attached hereto as Exhibits 1 and 2, respectively.

5. Samson contends that Stokes and Blakely were not creditors of Esther or her estate and that the distributions were therefore improper. Truist denies liability to Samson but seeks relief against Stokes and Blakely if the distributions are determined to have been improper or if Truist becomes obligated to restore any portion of the Trust assets to Samson.

6. Truist seeks declaratory relief concerning the validity of the power of appointment and the parties' respective rights and obligations. Truist also seeks contractual, statutory, equitable, and indemnification remedies to the extent permitted by law.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction because Samson's action is pending in this Court and Truist's claims arise from the same transaction or occurrence as Samson's claims against Truist. This Court also has subject matter jurisdiction because this is an action within the jurisdiction of the circuit court seeking damages in excess of $50,000, exclusive of interest, costs, and attorneys' fees.

8. In addition, this Court has subject matter jurisdiction over the declaratory relief claim pursuant to section 86.011, Florida Statutes.

9. This Court has personal jurisdiction over Samson because she submitted to the personal jurisdiction of this Court by commencing this action, and Truist's Counterclaim arises out of the transaction or occurrence that is the subject matter of Samson's Complaint. Samson is further subject to the jurisdiction of this Court under section 736.0202, Florida Statutes, as a beneficiary of a trust having its principal place of administration in Florida.

10. This Court has personal jurisdiction over Stokes and Blakely under section 736.0202(2)(a), Florida Statutes, because each accepted a distribution from a trust having its principal place of administration in Florida, and the claims asserted here concern that distribution.

Stokes and Blakely also executed the Refunding Agreements in connection with the Florida trust distribution, thereby establishing additional contacts with Florida related to the claims asserted in this action.

11. Venue is proper in Broward County because Truist performed its trustee duties there, the distributions were made in connection with the administration of the Trust there, and Plaintiff's underlying action is pending in this Court.

**THE PARTIES**

12. Counter-Plaintiff/Third-Party Plaintiff Truist Bank is a North Carolina state-charted commercial bank that conducts business in Broward County, Florida, and served as trustee of the Trust until the Trust terminated on October 17, 2025.

13. Plaintiff/Counter-Defendant Merri Selby Samson is a natural person who, upon information and belief resides in California and who is the remainder beneficiary of the Trust.

14. Third-Party Defendant James W. Stokes is a natural person who, upon information and belief, resides in Saraland, Mobile County, Alabama, and who received a distribution from the Trust.

15. Third-Party Defendant Sondra Lynn Blakely is a natural person who, upon information and belief, resides in Saraland, Mobile County, Alabama, and who received a distribution from the Trust.

**GENERAL ALLEGATIONS**

16. Kenneth L. Paine created the Trust, a testamentary trust, under his Last Will and Testament dated January 22, 1991, and Codicil dated March 29, 1993. The Trust is governed by Florida law.

17. Under the Trust, Esther was the lifetime beneficiary and held a power of appointment over the remaining Trust assets, exercisable by her last will and testament only in favor of her creditors or the creditors of her estate, and only by specific reference to the grant of the power. If the power of appointment was not validly exercised, the remaining Trust assets were to pass to the default remainder beneficiary, Samson.

18. The Esther Will purported to exercise that power of appointment by specific reference to Article IV.B of the Kenneth Codicil and appointed the remaining Trust assets to Stokes and Blakely.

19. Esther died on or about March 20, 2025. At the time of Esther's death, Truist was serving as trustee and the Trust held an investment account containing securities.

20. In reliance on the governing instruments and the Esther Will, Truist, serving as trustee of the Trust, liquidated the Trust securities and, in September 2025, distributed $215,897.62 to Stokes and $215,897.62 to Blakely, for a total of $431,795.24.

21. Before receiving the distributions, Stokes and Blakely each executed a Refunding Agreement dated August 28, 2025. Exs. 1 and 2.

22. The Refunding Agreements provide, among other things, that Stokes and Blakely will pay over amounts necessary to satisfy claims, charges, or expenses properly payable by Truist as trustee out of the cash, assets, or other property delivered to them from the Trust.

23. The Trust terminated on October 17, 2025.

24. Samson has asserted that the distributions were improper because Stokes and Blakely were not creditors of Esther or her estate.

25. If Stokes and Blakely were not creditors of Esther or of her estate, the purported exercise of the power of appointment in their favor was ineffective, the distributions fell outside the scope of the power of appointment, and the distributions to them were improper.

26. Truist notified Stokes and Blakely in April 2026 of a potential claim concerning the distributions and requested that they preserve the distributed funds and the original Esther Will.

27. By letter dated August 19, 2026, Truist once again demanded that Stokes and Blakely either provide documentation establishing creditor status or return the distributed funds in accordance with section 736.1018, Florida Statutes, and the Refunding Agreements.

28. Stokes and Blakely have not responded to either letter, have failed to provide documentation sufficient to establish their creditor status, and have not returned the distributed funds.

29. Truist presently reserves its position as to whether Stokes or Blakely were creditors of Esther or her estate. Truist seeks a judicial determination of that issue because it is material to the parties' rights and obligations.

30. Samson seeks to recover from Truist the alleged value of the Trust assets, together with investment growth, appreciation, trustee compensation, attorneys' fees, costs, and other relief.

31. If Stokes and Blakely were not creditors of Esther or of her estate, and to the extent Truist is held liable to Samson on account of the distributions, Stokes and Blakely are liable to Truist for the amounts they received and retained.

32. Truist denies that it breached the Trust or any duty owed to Samson. If, however, Truist is held liable or becomes obligated to restore any portion of the Trust assets because of the distributions, Stokes and Blakely are liable to Truist to the extent provided by their agreements, section 736.1018, Florida Statutes, and applicable equitable principles.

33. Truist has performed all conditions precedent to the maintenance of these third-party claims.

34. Truist has engaged undersigned counsel to pursue these third-party claims and is obligated to pay reasonable attorneys' fees for its services.

**COUNT I—COMMON LAW INDEMNIFICATION**
**(Against Stokes and Blakely)**

35. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

36. If the distributions were improper because Stokes and Blakely did not qualify as creditors of Esther or her estate, Stokes and Blakely received and retained Trust assets to which they were not entitled.

37. To the extent Truist is held liable to Samson for restoring Trust assets distributed to Stokes and Blakely, Truist's liability would be derivative or technical and would arise from Stokes' and Blakely's improper receipt and retention of the funds.

38. Under those circumstances, Stokes and Blakely are obligated to indemnify Truist for amounts Truist is required to pay because of the distributions, including recoverable defense costs, attorneys' fees, costs, and interest.

**WHEREFORE**, Truist demands judgment against Stokes and Blakely for indemnification of all amounts Truist may be adjudged liable to pay Samson on account of the distributions, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT II—DECLARATORY JUDGMENT**
**(Against Samson, Stokes, and Blakely)**

39. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

40. This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes.

41. A bona fide, actual, and present controversy exists between Truist, Samson, Stokes, and Blakely concerning:

a. Whether Stokes and Blakely were creditors of Esther or her estate within the meaning of the power of appointment;

b. Whether Esther validly exercised the power of appointment in their favor;

c. Whether the distributions to Stokes and Blakely were authorized;

d. Whether Stokes and Blakely are required to return the distributions, together with income, interest, or gains; and

e. The respective rights and obligations of the parties under the Refunding Agreements and section 736.1018, Florida Statutes.

42. Truist is in doubt concerning its rights and obligations and has a practical need for a declaration resolving the controversy.

43. The controversy is not hypothetical or advisory. Samson has asserted claims against Truist based on the distributions, Truist has demanded information or repayment from Stokes and Blakely, and Stokes and Blakely have not returned the funds or established their entitlement to retain them.

44. Truist therefore requests a declaration that:

a. The validity of the distributions depends on whether Stokes and Blakely qualified as creditors of Esther or her estate;

b. If Stokes and Blakely were not qualifying creditors, the distributions to them were improper; and

c. If Stokes and Blakely were not qualifying creditors, they are obligated to return the improper distributions and any amounts required by section 736.1018, Florida Statutes, and the Refunding Agreements.

**WHEREFORE**, Truist demands that the Court enter a declaration determining the parties' rights and obligations as described above, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT III—BREACH OF THE REFUNDING AGREEMENTS**
**(Against Stokes and Blakely)**

45. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

46. The Refunding Agreements are valid and enforceable contracts supported by consideration.

47. The Refunding Agreements were executed by Stokes and Blakely before they received the Trust distributions.

48. Under the Refunding Agreements, Stokes and Blakely each agreed to pay over amounts necessary to satisfy claims, charges, or expenses properly payable by Truist as trustee out of the cash, assets, or other property distributed to them.

49. Samson's claims against Truist arise directly from the distributions covered by the Refunding Agreements.

50. To the extent Plaintiff prevails against Truist, or to the extent any amount becomes properly payable by Truist as trustee because of the distributions, that amount falls within the obligations addressed by the Refunding Agreements.

51. Truist demanded that Stokes and Blakely comply with their obligations by returning the distributed funds or providing information establishing their entitlement to retain them.

52. Stokes and Blakely have failed or refused to comply with their contractual obligations.

53. As a result, Truist has sustained and will sustain damages, including amounts properly payable because of the distributions, together with recoverable costs, interest, and attorneys' fees.

**WHEREFORE**, Truist demands judgment against Stokes and Blakely for damages in an amount to be determined at trial and subject to the terms and conditions of the applicable Refunding Agreements, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT IV—STATUTORY LIABILITY FOR IMPROPER DISTRIBUTION**
**(Against Stokes and Blakely)**

54. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

55. Section 736.1018, Florida Statutes, requires a person who receives an improper distribution from a trust to return the assets or funds received, together with the income from the assets or interest on the funds from the date of distribution.

56. If the recipient no longer possesses the assets or funds, the statute requires return of the value of the assets or funds at the date of disposition, together with income and gains realized from them, as provided by the statute.

57. If Stokes and Blakely were not creditors of Esther or her estate, they received an improper distribution outside the class permitted by the power of appointment.

58. Truist is entitled to recover from Stokes and Blakely the amount improperly distributed to them, together with the income, interest, gains, or other amounts required by section 736.1018.

**WHEREFORE**, Truist demands judgment against Stokes and Blakely, in favor of Truist, for the amounts Truist is or may be required to pay or restore on account of the distributions, improperly, together with income, interest, gains, or other amounts required by section 736.1018, as well as costs, reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT V—UNJUST ENRICHMENT**
**(Against Stokes and Blakely)**

59. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

60. Truist, acting in its capacity as trustee and on behalf of the Trust, conferred a benefit on each of Stokes and Blakely by distributing $215,897.62 to each of them from the Trust.

61. Stokes and Blakely each had knowledge of, and appreciated, the benefit conferred, and each accepted and retained that benefit.

62. If Stokes and Blakely were not creditors of Esther or her estate, they were not entitled to receive or retain the distributions.

63. Under those circumstances, it would be inequitable for Stokes and Blakely to retain the funds without restoring their value, together with any applicable income, interest, or gains.

64. Truist is therefore entitled to restitution of the distributions to the extent permitted by law.

**WHEREFORE**, Truist demands judgment against Stokes and Blakely, in favor of Truist, for restitution of the amounts Truist is or may be required to pay or restore on account of the distributions, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT VI—MONEY HAD AND RECEIVED**
**(Against Stokes and Blakely)**

65. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

66. Truist, while serving as trustee of the Trust, paid $215,897.62 to Stokes and $215,897.62 to Blakely, for a total of $431,795.24.

67. If Stokes and Blakely were not creditors of Esther or of her estate, they received money to which they were not entitled and which, in equity and good conscience, they should not be permitted to retain.

68. If Stokes and Blakely were not creditors of Esther or of her estate, it would unjustly deprive the Trust and its rightful beneficiary of the funds to permit Stokes and Blakely to keep the amounts paid to them.

69. If Stokes and Blakely were not creditors of Esther or of her estate, Truist is entitled to a judgment against Stokes and Blakely for money had and received in the amounts paid to each of them, together with interest.

**WHEREFORE**, Truist demands judgment in favor of Truist against Stokes and Blakely for money had and received in the amounts distributed to each of them, together with costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT VII—CONSTRUCTIVE TRUST**
**(Against Stokes and Blakely)**

70. Truist realleges and incorporates by reference Paragraphs 1 through 34 above as if fully set forth herein.

71. Truist, acting in its capacity as trustee and on behalf of the Trust, paid $215,897.62 to Stokes and $215,897.62 to Blakely, for a total of $431,795.24.

72. If Stokes and Blakely were not creditors of Esther or of her estate, the funds distributed to them, and any identifiable proceeds or property into which those funds can be traced, in equity belong to the Trust.

73. If Stokes and Blakely received the distributions as a result of a distribution that was outside the scope of the power of appointment, their retention of the funds or their traceable proceeds would unjustly enrich them at the expense of the Trust and its rightful beneficiary.

74. To the extent the distributed funds or their proceeds remain identifiable and traceable to property in the possession or control of Stokes or Blakely, Truist is entitled to the imposition of a constructive trust upon that property to secure restoration of the funds to the Trust.

**WHEREFORE**, Truist demands the Court impose a constructive trust in favor of Truist upon the funds distributed to Stokes and Blakely and any identifiable proceeds or property traceable thereto, and grant such further relief, together with costs and reasonable attorneys' fees, as the Court deems just and proper.

Dated: October 5, 2026

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 Southeast Second Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305.579.0500
Facsimile: 305.579.0717

*Counsel for Defendant/Third-Party Plaintiff Truist Bank*

By: /s/ *Mark A. Salky*

MARK A. SALKY
Florida Bar No. 058221
ALEXA J. ROSENSON
Florida Bar No. 1040669
Email: mark.salky@gtlaw.com
burkek@gtlaw.com
alexa.rosenson@gtlaw.com
michelle.cruz@gtlaw.com
MiaLitDock@gtlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court using the Florida Courts eFiling Portal and served via email on Andrew T. Lavin, Esq. at: alavin@lavinlawyers.com this 5th day of October, 2026.

By: /s/ *Mark A. Salky*
MARK A. SALKY

Filing # 258523278 E-Filed 10/05/2026 04:06:41 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE26013958

MERRI SELBY SAMSON,

Plaintiff/Counter-Defendant,

v.

TRUIST BANK, a North Carolina state-chartered bank ,

Defendant/Counter-Plaintiff.

TRUIST BANK, a North Carolina state-chartered bank,

Third-Party Plaintiff,

v.

JAMES W. STOKES and SONDRA LYNN BLAKELY,

Third-Party Defendants.

**SUMMONS**

**THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this Summons, a copy of the Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, and a copy of the Court's Standing Order for Case Management in this action on Third-Party Defendant by serving:

**JAMES STOKES**
**517 Shelton Beach Road**
**Saraland, AL 36571**

Each Third-Party Defendant is required to serve written defenses to the Third-Party Complaint or Petition on Defendant/Third-Party Plaintiff's attorney:

MARK A. SALKY, ESQ.
Greenberg Traurig, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
salkym@gtlaw.com

The Third-Party Defendant is required to serve such written defenses to the Third-Party Complaint within 20 days after service of this summons on that Third-Party Defendant, exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court either before service on Defendant/Third-Party Plaintiff's attorney or immediately thereafter. If a Third-Party Defendant fails to do so, a default will be entered against that Third-Party Defendant for the relief demanded in the Third-Party Complaint or Petition.

DATED on ___________________

BRENDA D. FORMAN

As Clerk of the Court

By: ___________________________

As Deputy Clerk

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE26013958

MERRI SELBY SAMSON,

Plaintiff/Counter-Defendant,

v.

TRUIST BANK, a North Carolina state-chartered bank ,

Defendant/Counter-Plaintiff.

---

TRUIST BANK, a North Carolina state-chartered bank,

Third-Party Plaintiff,

v.

JAMES W. STOKES and SONDRA LYNN BLAKELY,

Third-Party Defendants.

---

## SUMMONS

**THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this Summons, a copy of the Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, and a copy of the Court's Standing Order for Case Management in this action on Third-Party Defendant by serving:

**SONDRA BLAKELY**
**521 Shelton Beach Road**
**Saraland, AL 36571**

Each Third-Party Defendant is required to serve written defenses to the Third-Party Complaint or Petition on Defendant/Third-Party Plaintiff's attorney:

MARK A. SALKY, ESQ.
Greenberg Traurig, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
salkym@gtlaw.com

The Third-Party Defendant is required to serve such written defenses to the Third-Party Complaint within 20 days after service of this summons on that Third-Party Defendant, exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court either before service on Defendant/Third-Party Plaintiff's attorney or immediately thereafter. If a Third-Party Defendant fails to do so, a default will be entered against that Third-Party Defendant for the relief demanded in the Third-Party Complaint or Petition.

DATED on ___________________

BRENDA D. FORMAN

As Clerk of the Court

By: ____________________________

As Deputy Clerk

Filing # 258523278 E-Filed 10/05/2026 04:06:41 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE26013958

MERRI SELBY SAMSON,

Plaintiff/Counter-Defendant,

v.

TRUIST BANK, a North Carolina state-chartered bank ,

Defendant/Counter-Plaintiff.

---

TRUIST BANK, a North Carolina state-chartered bank,

Third-Party Plaintiff,

v.

JAMES W. STOKES and SONDRA LYNN BLAKELY,

Third-Party Defendants.

---

**SUMMONS**

**THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this Summons, a copy of the Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, and a copy of the Court's Standing Order for Case Management in this action on Third-Party Defendant by serving:

**JAMES STOKES**
**517 Shelton Beach Road**
**Saraland, AL 36571**

Each Third-Party Defendant is required to serve written defenses to the Third-Party Complaint or Petition on Defendant/Third-Party Plaintiff's attorney:

MARK A. SALKY, ESQ.
Greenberg Traurig, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
salkym@gtlaw.com

The Third-Party Defendant is required to serve such written defenses to the Third-Party Complaint within 20 days after service of this summons on that Third-Party Defendant, exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court either before service on Defendant/Third-Party Plaintiff's attorney or immediately thereafter. If a Third-Party Defendant fails to do so, a default will be entered against that Third-Party Defendant for the relief demanded in the Third-Party Complaint or Petition.

DATED OCT 07 2026

BRENDA D. FORMAN

As Clerk of the Court

By: ______________________

As Deputy Clerk

CLERK OF CIRCUIT & COUNTY COURT
IN GOD WE TRUST
FLORIDA
BROWARD COUNTY

Brenda D. Forman
BRENDA D. FORMAN

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE26013958

MERRI SELBY SAMSON,

Plaintiff/Counter-Defendant,

v.

TRUIST BANK, a North Carolina state-chartered bank ,

Defendant/Counter-Plaintiff.

TRUIST BANK, a North Carolina state-chartered bank,

Third-Party Plaintiff,

v.

JAMES W. STOKES and SONDRA LYNN BLAKELY,

Third-Party Defendants.

**SUMMONS**

**THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this Summons, a copy of the Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, and a copy of the Court's Standing Order for Case Management in this action on Third-Party Defendant by serving:

**SONDRA BLAKELY**
**521 Shelton Beach Road**
**Saraland, AL 36571**

Each Third-Party Defendant is required to serve written defenses to the Third-Party Complaint or Petition on Defendant/Third-Party Plaintiff's attorney:

MARK A. SALKY, ESQ.
Greenberg Traurig, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
salkym@gtlaw.com

The Third-Party Defendant is required to serve such written defenses to the Third-Party Complaint within 20 days after service of this summons on that Third-Party Defendant, exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court either before service on Defendant/Third-Party Plaintiff's attorney or immediately thereafter. If a Third-Party Defendant fails to do so, a default will be entered against that Third-Party Defendant for the relief demanded in the Third-Party Complaint or Petition.

DATED on OCT 07 2026

BRENDA D. FORMAN

As Clerk of the Court

By: ______________________

As Depu

BRENDA D. FORMAN

# RETURN OF SERVICE

**State of Florida** **County of Broward** **Circuit Court**

Case Number: CACE26013958

Plaintiff: **Merri Selby Samson**
vs.
Defendant: **Truist Bank**

For:
Mark A. Salky
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue
Miami, FL 33131

Received by DLE Process Servers, Inc on the 7th day of October, 2026 at 3:23 pm to be served on **James Stokes, 517 Shelton Beach Road, Saraland, AL 36571**.

I, Daniel Moore, do hereby affirm that on the **12th day of October, 2026** at **4:05 pm, I:**

served **James Stokes, INDIVIDUALLY** by delivering a true copy of the **Summons, Uniform Case Management Order (Circuit Civil General Track), Defendant's Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint** with the date and hour of service endorsed thereon by me, to: **James Stokes** at the address of: **517 Shelton Beach Road, Saraland, AL 36571**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 70, Sex: M, Race/Skin Color: White, Height: 5'9", Weight: 200, Hair: Grey, Glasses: N

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true. I am over the age of 18, have no interest in the above action, and I am a Certified Process Server, in good standing, in the county in which service was affected in accordance with State Statute

Under penalties of perjury, I declare that I have read the foregoing Verified Return of Service and that the facts stated are true. F.S. 92.525. NOTARY NOT REQUIRED PURSUANT TO F.S. 92.525

Daniel Moore

**Daniel Moore**
Process Server

**DLE Process Servers, Inc**
**936 Sw 1st Avenue**
**#261**
**Miami, FL 33130**
**(786) 220-9705**

Our Job Serial Number: DLE-2026077161
Ref: 198625.012600

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0e

Filing # 258523278 E-Filed 10/05/2026 04:06:41 PM

| | |
|---|---|
| **DELIVERED** | 10/7/2026 3:23 pm |
| **SERVED** | James Stokes |
| **SERVER** | DM |

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE26013958

MERRI SELBY SAMSON,

Plaintiff/Counter-Defendant,

v.

TRUIST BANK, a North Carolina state-chartered bank ,

Defendant/Counter-Plaintiff.

TRUIST BANK, a North Carolina state-chartered bank,

Third-Party Plaintiff,

v.

JAMES W. STOKES and SONDRA LYNN BLAKELY,

Third-Party Defendants.

# SUMMONS

**THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this Summons, a copy of the Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, and a copy of the Court's Standing Order for Case Management in this action on Third-Party Defendant by serving:

**JAMES STOKES**
**517 Shelton Beach Road**
**Saraland, AL 36571**

Each Third-Party Defendant is required to serve written defenses to the Third-Party Complaint or Petition on Defendant/Third-Party Plaintiff's attorney:

MARK A. SALKY, ESQ.
Greenberg Traurig, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
salkym@gtlaw.com

The Third-Party Defendant is required to serve such written defenses to the Third-Party Complaint within 20 days after service of this summons on that Third-Party Defendant, exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court either before service on Defendant/Third-Party Plaintiff's attorney or immediately thereafter. If a Third-Party Defendant fails to do so, a default will be entered against that Third-Party Defendant for the relief demanded in the Third-Party Complaint or Petition.

DATED OCT 07 2026

BRENDA D. FORMAN

As Clerk of the Court

By: ______________________

As Deputy Clerk

CLERK OF CIRCUIT & COUNTY COURT IN GOD WE TRUST FLORIDA BROWARD COUNTY

**BRENDA D. FORMAN**

Filing # 257460498 E-Filed 09/20/2026 05:31:01 AM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: **CACE26013958**
JUDGE: **Frink, Keathan B (12)**

**Merri Selby Samson**
Plaintiff(s),
vs.
**Truist Bank, a National Banking Association**
Defendant(s).
_______________________________________/

**UNIFORM CASE MANAGEMENT ORDER**
**(CIRCUIT CIVIL GENERAL TRACK)**

**ALL PARTIES MUST READ CAREFULLY/STRICT COMPLIANCE IS MANDATORY**

THE DEADLINES LISTED HEREIN **MUST** BE **STRICTLY ENFORCED** UNLESS CHANGED BY COURT ORDER. STRICT COMPLIANCE MEANS NO CONTINUANCES OR EXTENSIONS WILL BE GRANTED WITHOUT COURT ORDER UPON WRITTEN MOTION SETTING FORTH GOOD CAUSE, PURSUANT TO IN RE: AMEND. TO FLA. R. CIV. P., NO. SC23-0962 (December 5, 2024), FLA. R. CIV. P. 1.200, FLA. R. CIV. P. 1.460, AND FLA. R. GEN. PRAC. & JUD. ADMIN. 2.545(e).

FAILURE TO ATTEND A MANDATORY CASE MANAGEMENT CONFERENCE MAY RESULT IN THE COURT DISMISSING THE ACTION, ENTERING A DEFAULT, STRIKING THE PLEADINGS, LIMITING PROOF OF WITNESSES, OR ANY OTHER APPROPRIATE ACTION AGAINST THE PARTY FAILING TO ATTEND. (Fla. R. Civ. P. 1.200(j)(6)).

THIS CASE MANAGEMENT ORDER SUPERSEDES ANY PRIOR CASE MANAGEMENT ORDER ENTERED IN THIS CASE.

This case has been designated to the **GENERAL CIVIL TRACK**. The deadlines established by this Order are to ensure the case is disposed of within 18 months from the date of service of initial process on the last defendant or 120 days after commencement of the action as provided in rule 1.050, whichever occurs first. Accordingly, the following procedures and deadlines shall be strictly observed by the parties and enforced by the court:

1. SCHEDULING OF A MANDATORY CASE MANAGEMENT CONFERENCE:



*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 09/20/2026 05:30:50 AM.****

[ **X** ](Applicable if checked): A **MANDATORY** Case Management Conference will be held on zoom in Courtroom **Zoom: https://17thflcourts.zoom.us/j/647324402** on **01-06-2027 9:00 AM** .

During the case management conference, the Court may elect to hear any pending motion, even if the parties have not identified the motion as an issue to be resolved. Motions for summary judgment and matters requiring an evidentiary hearing may not be heard unless agreed to by the parties and the court. (Fla. R. Civ. P. 1.200(j)(2)).
**On any matters ruled upon, unless otherwise ordered, within five (5) days following the Case Management Conference, counsel for Plaintiff(s) shall prepare an order pursuant to Florida Rule of Civil Procedure 1.200(j)(5).**

2. COMPLAINT: The Complaint shall be served within 120 days of filing. Failure to perfect service within 120 days shall subject the action to dismissal without prejudice or dropping of that party as a defendant. If plaintiff shows good cause or excusable neglect for failure to serve within 120 days, the court shall extend the time for service for an appropriate period. (Fla. R. Civ. P. 1.070(j)).

3. NOTICE OF SERVICE OF COMPLAINT: Upon service of the complaint on the last of all named defendants in a civil action, the plaintiff will file a Notice of Service and provide a courtesy copy of the Notice of Service to the assigned trial judge. A fillable PDF form "Notice of Service" is available on the Circuit's webpage (www.17th.flcourts.org).

4. TRIAL: Trial will be set in accordance with Florida Rule of Civil Procedure 1.440. The court will issue a separate Uniform Trial Order scheduling Calendar Call and setting the Trial Period. The action no longer needs to be "at issue" prior to the case being set for trial. The failure of the pleadings to be closed will not preclude the court from setting a case for trial. (Fla. R. Civ. P. 1.440).

5. INITIAL DISCOVERY DISCLOSURES:
   A. Parties must make initial discovery disclosures required by Florida Rule of Civil Procedure 1.280 **within 60 days after the service of the complaint or joinder**, unless a different time is set by court order. Pursuant to Local Rule 10A, a party may file a motion for ex parte relief where no motion for extension of time has been filed and the nonmoving party has completely failed to comply with Florida Rule of Civil Procedure 1.280(a).

   B. A party may not seek discovery from any source before that party's initial disclosures are served on the other party, except when authorized by stipulation or by court order. (Fla. R. Civ. P. 1.280(f)(1)).

   C. As set forth in Rule 1.280(a)(1), initial discovery disclosures include:
      1. The name and, if known, the address, telephone number, and e-mail address of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
      2. A copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has

in its possession, custody, or control (or, if not in the disclosing party's possession, custody, or control, a description by category and location of such information) and may use to support its claims or defenses, unless the use would be solely for impeachment;

3. A computation for each category of damages claimed by the disclosing party and a copy of the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; provided that a party is not required to provide computations as to noneconomic damages, but the party must identify categories of damages claimed and provide supporting documents; and
4. A copy of any insurance policy or agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

D. A party who has made a disclosure under this rule or who has responded to an interrogatory, a request for production, or a request for admission **must** supplement or correct its disclosure or response: (a) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (b) as ordered by the court. (Fla. R. Civ. P. 1.280(g)).

6. NOTICE OF RELATED CASE(S) (i.e., cases involving the same parties, same subject matter or incident, or same property at issue): The Parties shall file a Notice of Related Case(s) within thirty (30) days from the date of this Order identifying any and all related cases.

7. ATTORNEY/PRO SE PARTY PREPARATION: Attorneys and self-represented litigants who appear at a case management conference **MUST** be prepared on the pending matters in the case, be prepared to make decisions about future progress and conduct of the case, and have authority to make representations to the court and enter into binding agreements concerning motions, issues, and scheduling. If a party is represented by more than 1 attorney, the attorney(s) present at a case management conference must be prepared with all attorneys' availability for future events. (Fla. R. Civ. P. 1.200(j)(3)).

8. CASE MANAGEMENT DEADLINES:

A. **DEADLINES IN THIS CASE MANAGEMENT ORDER MUST BE STRICTLY ENFORCED UNLESS CHANGED BY COURT ORDER FOR GOOD CAUSE SHOWN. (Fla. R. Civ. P. 1.200(e)(1)).**

B. Notices of unavailability and/or inability to comply with the deadlines have no effect on the case management deadlines set by this order. If a party is unable to comply with a deadline, including due to the unavailability of hearing time, the party must take action consistent with Florida Rule of Civil Procedure 1.200(e)(1). (Fla. R. Civ. P. 1.200(f)-(g)).

9. CASE MANAGEMENT AND TRIAL DEADLINES:

The following deadlines apply unless otherwise modified by the Court.

| | EVENTS | COMPLETION DEADLINE |
|---|---|---|
| 1. | Service of Complaint | 120 days from filing; Service under extension is only by court order. |
| 2. | Resolution of all motions/objections directed to the pleadings (i.e. to dismiss or strike) | 120 days before Calendar Call (must be set within 10 days of filing to be heard within 60 days) |
| 3. | Pleading Amendments/Adding New Parties | 120 days before Calendar Call |
| 4. | Disclosure of Fact Witnesses/Lists | 150 days before Calendar Call |
| 5. | Disclosure of Expert Witnesses/Lists | 120 days before Calendar Call |
| 6. | Completion of Compulsory Examinations | 120 days before Calendar Call |
| 7. | Disclosure of Rebuttal Witnesses/Lists | 100 days before Calendar Call |
| 8. | Completion of all Discovery (including expert discovery) | 30 days before Calendar Call (must be initiated 90 days before Calendar Call) |
| 9. | Filing of all Dispositive Motions and Motions for Summary Judgment | 90 days before Calendar Call |
| 10. | Expert Challenges and Deposition Objections | 45 days before Calendar Call (must be filed and heard) |
| 11. | Filing of all Pretrial Motions (including Motions in Limine) | 30 days before Calendar Call |
| 12. | Deposition Designations | 20 days before Calendar Call |
| 13. | Deadline for Mediation | 60 days before Calendar Call |

10. WITNESS LISTS:

**A. NO LATER THAN ONE HUNDRED AND FIFTY (150) DAYS PRIOR TO CALENDAR CALL:**

Fact Witnesses:
Parties must file and serve a list of names and addresses of all fact witnesses who are expected to testify at trial. Each party's fact witness list must include a brief description of the substance and scope of the testimony to be elicited from such witness. Both sides must cooperate in the scheduling of such witness depositions.

**B. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

Expert Witnesses:

1. At the time of disclosure of all expert witnesses, the parties shall file and serve the names and addresses of all expert witnesses to be called at trial, including their complete and updated curriculum vitae, and all information regarding expert testimony that is required by Fla. R. Civ. P. 1.280(c)(5). Parties shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition. Both parties shall cooperate in the scheduling of expert depositions.
2. The parties shall also provide answers to standard form expert interrogatories pursuant to Fla. R. Civ. P. 1.280(c)(5). All reports or other data compiled by each disclosed expert which is intended to be used by the expert and/or referred to during his/her deposition testimony shall be provided electronically to the opposing party at least 72 hours prior to the date of the scheduled deposition.

**C. NO LATER THAN ONE HUNDRED (100) DAYS PRIOR TO CALENDAR CALL:**

Rebuttal Witnesses:
Parties must file and serve a list of names and addresses of any rebuttal witnesses within one hundred (100) days prior to Calendar Call.

11. COMPULSORY MEDICAL EVALUATIONS ("CME"):

**A. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

All CME and other examinations pursuant to Florida Rule of Civil Procedure 1.360 must be completed no later than one hundred and twenty (120) days prior to Calendar Call.

12. DISCOVERY DEADLINES:

**A. NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**

All final discovery must have been initiated at least ninety (90) days prior to Calendar Call.

**B. NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**

Parties must complete all discovery, including expert discovery in accordance with Florida Rule of Civil Procedure 1.280(c)(5), at least thirty (30) days prior to Calendar Call. Discovery conducted after this time period is strongly disfavored and will only be permitted by order of the Court under exceptional circumstances.

**C. ELECTRONICALLY STORED INFORMATION (ESI) DISCOVERY:**

ESI discovery procedures are governed by Seventeenth Judicial Circuit Administrative Order 2021-20-Gen, a copy of which is available on the Circuit's webpage (www.17th.flcourts.org).

13. MOTIONS:

**A. CONFERRAL PRIOR TO FILING MOTIONS:**

Before filing a non-dispositive motion, the movant MUST confer with the opposing party in a good-faith effort to resolve the issues raised in the motion **AND** at the end of the motion and above the signature block, the movant MUST include a certificate of conferral. (Fla. R. Civ. P. 1.202(a)-(b)). **The parties are expected to confer and attempt to resolve the issues raised in the motion before reserving hearing time.**

The requirements of rule 1.202 do not apply when the movant or the nonmovant is unrepresented by counsel (pro se). (Fla. R. Civ. P. 1.202(c)).

**B. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

1. Motions to Add a Party or Parties or to Amend the Pleadings: must be filed and set for hearing no later than one hundred and twenty (120) days before Calendar Call absent good cause shown. The deadline shall not conflict with Florida Rule of Civil Procedure 1.190(e), and the motion may be denied if there has been undue delay, bad faith, prejudice to the opposing side, dilatory motive on the part of the moving party or when the amendment would be futile.

2. Motions/Objections Directed to the Pleadings: all objections to the pleadings must be filed and set for hearing no later than one hundred and twenty (120) days before Calendar Call. **The motion/objection MUST be set within ten (10) days of filing of the motion/objection to be heard within sixty (60) days.**

**C. NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**

1. Motions for Summary Judgment and other Dispositive Motions: must be filed no later than ninety (90) days before Calendar Call. Motions for summary judgment will not be heard at or after Calendar Call unless approved by the court. If the Court has granted the parties' request for a hearing on the motion, but a hearing is not available prior to the deadline, the parties shall submit the fully briefed motion and opposition (if any) to the court prior to the expiration of the deadline, and the court can rule on those motions on the papers. Failure to timely submit the paperwork to the court will deem those motions abandoned.

2. Response to Motion for Summary Judgment: the response and supporting factual position must be served no later than forty (40) days after service of the motion for summary judgment. (Fla. R. Civ. P. 1.510(c)(5)).

**D. NO LATER THAN FORTY-FIVE (45) DAYS PRIOR TO CALENDAR CALL:**

1. Expert Challenges: motions challenging an expert witness ("Expert Challenges"), must be filed and heard no later than forty-five (45) days before Calendar Call.

2. Deposition Objections: objections raised in depositions expected to be introduced at trial must be filed and heard no later than forty-five (45) days before Calendar Call.

**E. NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**

1. Motions in Limine: must be filed no later than thirty (30) days prior to Calendar Call. If the Court has granted the parties' request for a hearing on the motion, but a hearing is not available prior to the deadline, the parties shall submit the fully briefed motion and opposition (if any) to the court prior to the expiration of the deadline, and the court can rule on those motions on the papers. Failure to timely submit the paperwork to the court will deem those motions abandoned.

2. Pretrial Motions: must be filed and heard no later than thirty (30) days prior to Calendar Call. All motions, other than motions in limine, not heard before Calendar Call will be deemed abandoned.

**F. NO LATER THAN TWENTY (20) DAYS PRIOR TO CALENDAR CALL:**

1. Deposition Designations: no later than twenty (20) days prior to Calendar Call, each party must serve designation of depositions, or portions of depositions, each intends to offer as testimony.

14. JOINT PRETRIAL STIPULATION:

**A. NO LATER THAN TEN (10) DAYS PRIOR TO CALENDAR CALL:**

1. The Joint Pretrial Stipulation contemplates a single document that must be filed and served, **with a courtesy copy served on the undersigned judge**, no later than ten (10) days prior to Calendar Call.
2. The Joint Pretrial Stipulation requires that all agreed matters be fully identified and any disputed matters be specifically delineated with respect to each party.

**B. THE JOINT PRETRIAL STIPULATION MUST CONTAIN THE FOLLOWING IN SEPARATELY NUMBERED PARAGRAPHS:**

1. Statement of the Facts: A concise, impartial statement of the facts of the case.
2. Stipulated Facts: A list of those facts that can be stipulated and require no proof at trial.
3. Statement of Disputed Law and Fact: A concise, impartial statement of those issues of law and fact that are to be tried.
4. Exhibit Lists: Each party must separately list all exhibits they intend to introduce into evidence. Each item must be listed by number and description on a separate schedule attached to the Joint Pretrial Stipulation. Each exhibit must be specifically described. **Generic descriptions of exhibits are subject to being stricken.** If any party objects to the introduction of any such exhibit, such objection **must be stated in the Joint Pretrial Stipulation**, setting forth the grounds with specificity. All exhibits must have been made available to all parties for examination no later than ten (10) days before Calendar Call. Parties must initial each other's exhibit lists and exhibits. **At trial, only those exhibits properly listed and initialed may be offered into evidence**.
5. Demonstrative Exhibits: all demonstrative exhibits (e.g., charts, graphs, enlargements of exhibits, etc.) intended to be used at a jury trial must be displayed to all parties at least ten (10) days before Calendar Call. **Objections to a demonstrative exhibit must be disclosed in the pretrial stipulation or will be deemed waived.**
6. Witness Lists: Parties must furnish a written list containing the names and addresses of all witnesses intended to be called at trial in alphabetical order. Such list must designate the type of witness ("expert," "rebuttal," "impeachment," or otherwise) and must be attached to the Joint Pretrial Stipulation. All fact witness lists must include a brief description of **the substance and scope of the testimony** to be elicited from such witness. All expert witness lists must **designate the expert's specialties**. If any party objects to any witness, such objection must be stated in the Joint Pretrial Stipulation, setting forth the grounds with specificity. **At trial, only those witnesses properly and timely disclosed will be permitted to testify**.
7. Jury Instructions: If the trial is a jury trial, the parties must identify all agreed upon standard instructions and all special instructions. Copies of all agreed upon jury instructions and disputed jury instructions must be attached to the Joint Pretrial Stipulation identifying the party that proposed the instruction, along with copies of supporting statutory citations and/or case law.
8. Verdict Forms: If the trial is a jury trial, the jury verdict form must be designated as "agreed to" or "disputed" and must be attached to the Joint Pretrial Stipulation.
9. Peremptory Challenges: If the trial is a jury trial, the number of peremptory challenges for each party must be stated and attached to the Joint Pretrial Stipulation.
10. Pending Motions: Parties must set forth a list of all pending motions with copies attached to the Joint Pretrial Stipulation.
11. Trial Estimate: Each party must provide an estimate of the number of trial days required for presenting its side of the case.
12. Expert Challenges: All motions challenging an expert witness must be filed and heard no later than forty-five (45) days before Calendar Call. FAILURE TO DO SO MAY CONSTITUTE A WAIVER OF ANY EXPERT RELATED EVIDENCE ISSUE(S). It is within the discretion of the Court to remove any case with pending expert issues.

15. COURT POLICIES:

A. Parties must do all things reasonable and necessary to assure the availability of witnesses for the entire Trial Period or to otherwise preserve witness testimony for trial as provided by the Florida Rules of Civil Procedure. See Fla. R. Civ. P. 1.300 & 1.460; see also Fla. R. Gen. Prac. & Jud. Admin. 2.545.

B. The requirements of this Order cannot be waived by stipulation **absent prior approval from the Court** pursuant to written agreement between the parties.

C. This Order may be tailored by the assigned Division Judge to conform to the particular requirements of the residential foreclosure and complex litigation divisions.

D. At trial, there will only be one (1) official record transcribed by one (1) court reporter. Plaintiff is responsible for arranging for a court reporter unless otherwise agreed to by the parties. If a conflict exists, the parties must resolve it among themselves prior to Calendar Call.

16. TRIAL CONTINUANCES:

A. The parties must satisfy the requirements of Rule 1.460 to change the trial period.
**B. A motion to continue is disfavored and will rarely be granted. No continuances will be granted without Court Order upon written motion setting forth good cause pursuant to In re: Amend. to Fla. R. Civ. P., No. SC23-0962 (December 5, 2024), Fla. R. Civ. P. 1.460, and Fla. R. Gen. Prac. & Jud. Admin. 2.545(e). All motions seeking a continuance must comply with Fla. R. Civ. P. 1.460 and Fla. R. Gen. Prac. & Jud. Admin. 2.545.**
C. A motion to continue trial must be in writing unless made at trial and, except for good cause shown, must be signed by the named party requesting the continuance. The motion must be filed promptly after the appearance of good cause to support such motion. Failure to properly request a continuance may be a basis for denying the motion to continue. (Fla. R. Civ. P. 1.460(b)-(c) and Fla. R. Gen. Prac. & Jud. Admin. 2.545(e)).

D. All motions for continuance, even if agreed, must state with specificity as set forth in rule 1.460(d).

E. **NO** CONTINUANCES will be granted based on the lack of due diligence in preparing for trial.

F. **NO** CONTINUANCES will be granted for reasons that should have been readily apparent to the parties when this Order was issued.

G. **NO** CONTINUANCES will be granted if expert witnesses are unavailable because testimony may be preserved by deposition.

H. **NO** CONTINUANCES will be granted for reasons relating to the failure to follow this Order.

I. If a continuance is granted based on the dilatory conduct of an attorney or named party, the court may consider imposing sanctions on the attorney, the party, or both.

17. MEDIATION:

A. Mandatory Mediation: must commence no later than sixty (60) days prior to Calendar Call. The parties must comply with Florida Rules of Civil Procedure 1.700, 1.710, 1.720, and 1.730 as to the conduct of mediation. The parties may attend mediation through the use of communication technology (remotely) if mutually agreed upon. The Court will resolve any disagreement as to where or how mediation is to be conducted. Plaintiff's counsel is appointed lead counsel to facilitate and schedule the settlement conference with the mediator and all parties.

The Court appoints:
**WHOMEVER THE PARTIES AGREE UPON**

as Mediator, unless, within thirty (30) days of service of initial process on the last defendant or thirty (30) days from the date of this Order, whichever occurs later, the parties choose a different Mediator, and file notice of that choice and the name of the substitute mediator with the Clerk of Court. Failure to attend mediation may result in sanctions.

18. SANCTIONS: All parties should be familiar with Florida Rule of Civil Procedure 1.380 entitled "Failure to Make Discovery; Sanctions" and section 57.105, Florida Statutes, entitled "Attorney's fee; sanctions for raising unsupported claims or defenses; exceptions; service of motions; damages for delay of litigation."

FAILURE TO APPEAR, FAILURE TO FOLLOW TIME REQUIREMENTS, OR FAILURE TO FILE DOCUMENTS REQUIRED BY THIS COURT MAY RESULT IN THE DISMISSAL OF THE ACTION OR THE IMPOSITION OF SANCTIONS INCLUDING THE STRIKING OF PLEADINGS.

19. SETTLEMENT NOTIFICATION: Parties must immediately notify the Court in the event of settlement and submit a stipulation for an Order of Dismissal. Parties shall also cancel any and all pending hearings as a result of the settlement.

20. COMPLIANCE WITH DIVISIONAL PROCEDURES: Attorneys and self-represented litigants are required to read and comply with the division's procedures located on the 17th Judicial Circuit Court's Website (www.17th.flcourts.org). Failure to do so may result in appropriate sanctions, as permitted by law.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida on **09-19-2026** .

CACE26013958 09-19-2026 11:58 PM

CACE26013958 09-19-2026 11:58 PM

CIRCUIT COURT JUDGE

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately on receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

CC:
**ALEXA ROSENSON, Email : michelle.cruz@gtlaw.com**
**ALEXA ROSENSON, Email : MIALitDock@gtlaw.com**
**ALEXA ROSENSON, Email : alexa.rosenson@gtlaw.com**
**Andrew T Lavin, Email : ycombs@lavinlawyers.com**
**Andrew T Lavin, Email : khickson@lavinlawyers.com**
**Andrew T Lavin, Email : alavin@lavinlawyers.com**
**Mark A. Salky, Email : Salkym@gtlaw.com**
**Mark A. Salky, Email : Burkek@gtlaw.com**
**Nancy Ginart, Email : ginartn@gtlaw.com**

# RETURN OF SERVICE

**State of Florida** **County of Broward** **Circuit Court**

Case Number: CACE26013958

Plaintiff: **Merri Selby Samson**
vs.
Defendant: **Truist Bank**

For:
Mark A. Salky
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue
Miami, FL 33131

Received by DLE Process Servers, Inc on the 7th day of October, 2026 at 3:23 pm to be served on **James Stokes, 517 Shelton Beach Road, Saraland, AL 36571**.

I, Daniel Moore, do hereby affirm that on the **12th day of October, 2026** at **4:05 pm, I:**

served **James Stokes, INDIVIDUALLY** by delivering a true copy of the **Summons, Uniform Case Management Order (Circuit Civil General Track), Defendant's Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint** with the date and hour of service endorsed thereon by me, to: **James Stokes** at the address of: **517 Shelton Beach Road, Saraland, AL 36571**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 70, Sex: M, Race/Skin Color: White, Height: 5'9", Weight: 200, Hair: Grey, Glasses: N

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true. I am over the age of 18, have no interest in the above action, and I am a Certified Process Server, in good standing, in the county in which service was affected in accordance with State Statute

Under penalties of perjury, I declare that I have read the foregoing Verified Return of Service and that the facts stated are true. F.S. 92.525. NOTARY NOT REQUIRED PURSUANT TO F.S. 92.525

Daniel Moore

**Daniel Moore**
Process Server

**DLE Process Servers, Inc**
**936 Sw 1st Avenue**
**#261**
**Miami, FL 33130**
**(786) 220-9705**

Our Job Serial Number: DLE-2026077161
Ref: 198625.012600

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0e

Filing # 258523278 E-Filed 10/05/2026 04:06:41 PM

| | |
|---|---|
| DELIVERED | 10/7/2026 3:23 pm |
| SERVED | James Stokes |
| SERVER | DM |

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE26013958

MERRI SELBY SAMSON,

Plaintiff/Counter-Defendant,

v.

TRUIST BANK, a North Carolina state-chartered bank ,

Defendant/Counter-Plaintiff.

TRUIST BANK, a North Carolina state-chartered bank,

Third-Party Plaintiff,

v.

JAMES W. STOKES and SONDRA LYNN BLAKELY,

Third-Party Defendants.

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

## SUMMONS

**THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

**YOU ARE COMMANDED** to serve this Summons, a copy of the Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, and a copy of the Court's Standing Order for Case Management in this action on Third-Party Defendant by serving:

**JAMES STOKES**
**517 Shelton Beach Road**
**Saraland, AL 36571**

Each Third-Party Defendant is required to serve written defenses to the Third-Party Complaint or Petition on Defendant/Third-Party Plaintiff's attorney:

MARK A. SALKY, ESQ.
Greenberg Traurig, P.A.
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
salkym@gtlaw.com

The Third-Party Defendant is required to serve such written defenses to the Third-Party Complaint within 20 days after service of this summons on that Third-Party Defendant, exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court either before service on Defendant/Third-Party Plaintiff's attorney or immediately thereafter. If a Third-Party Defendant fails to do so, a default will be entered against that Third-Party Defendant for the relief demanded in the Third-Party Complaint or Petition.

DATED OCT 07 2026

BRENDA D. FORMAN

As Clerk of the Court

By: ______________________

As Deputy Clerk

CLERK OF CIRCUIT & COUNTY COURT
IN GOD WE TRUST
FLORIDA
BROWARD COUNTY

BRENDA D. FORMAN

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

Filing # 257460498 E-Filed 09/20/2026 05:31:01 AM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: **CACE26013958**
JUDGE: **Frink, Keathan B (12)**

**Merri Selby Samson**
Plaintiff(s),
vs.
**Truist Bank, a National Banking Association**
Defendant(s).
_______________________________________/

**UNIFORM CASE MANAGEMENT ORDER**
**(CIRCUIT CIVIL GENERAL TRACK)**

**ALL PARTIES MUST READ CAREFULLY/STRICT COMPLIANCE IS MANDATORY**

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

THE DEADLINES LISTED HEREIN **MUST** BE **STRICTLY ENFORCED** UNLESS CHANGED BY COURT ORDER. STRICT COMPLIANCE MEANS NO CONTINUANCES OR EXTENSIONS WILL BE GRANTED WITHOUT COURT ORDER UPON WRITTEN MOTION SETTING FORTH GOOD CAUSE, PURSUANT TO IN RE: AMEND. TO FLA. R. CIV. P., NO. SC23-0962 (December 5, 2024), FLA. R. CIV. P. 1.200, FLA. R. CIV. P. 1.460, AND FLA. R. GEN. PRAC. & JUD. ADMIN. 2.545(e).

FAILURE TO ATTEND A MANDATORY CASE MANAGEMENT CONFERENCE MAY RESULT IN THE COURT DISMISSING THE ACTION, ENTERING A DEFAULT, STRIKING THE PLEADINGS, LIMITING PROOF OF WITNESSES, OR ANY OTHER APPROPRIATE ACTION AGAINST THE PARTY FAILING TO ATTEND. (Fla. R. Civ. P. 1.200(j)(6)).

THIS CASE MANAGEMENT ORDER SUPERSEDES ANY PRIOR CASE MANAGEMENT ORDER ENTERED IN THIS CASE.

This case has been designated to the **GENERAL CIVIL TRACK**. The deadlines established by this Order are to ensure the case is disposed of within 18 months from the date of service of initial process on the last defendant or 120 days after commencement of the action as provided in rule 1.050, whichever occurs first. Accordingly, the following procedures and deadlines shall be strictly observed by the parties and enforced by the court:

1. SCHEDULING OF A MANDATORY CASE MANAGEMENT CONFERENCE:



*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 09/20/2026 05:30:50 AM.****

[ **X** ](Applicable if checked): A <u>**MANDATORY**</u> Case Management Conference will be held on zoom in Courtroom **Zoom: https://17thflcourts.zoom.us/j/647324402** on **01-06-2027 9:00 AM** .

During the case management conference, the Court may elect to hear any pending motion, even if the parties have not identified the motion as an issue to be resolved. Motions for summary judgment and matters requiring an evidentiary hearing may not be heard unless agreed to by the parties and the court. (Fla. R. Civ. P. 1.200(j)(2)).
**On any matters ruled upon, unless otherwise ordered, within five (5) days following the Case Management Conference, counsel for Plaintiff(s) shall prepare an order pursuant to Florida Rule of Civil Procedure 1.200(j)(5).**

2. <u>COMPLAINT</u>: The Complaint shall be served within 120 days of filing. Failure to perfect service within 120 days shall subject the action to dismissal without prejudice or dropping of that party as a defendant. If plaintiff shows good cause or excusable neglect for failure to serve within 120 days, the court shall extend the time for service for an appropriate period. (Fla. R. Civ. P. 1.070(j)).

3. <u>NOTICE OF SERVICE OF COMPLAINT</u>: Upon service of the complaint on the last of all named defendants in a civil action, the plaintiff will file a Notice of Service and provide a courtesy copy of the Notice of Service to the assigned trial judge. A fillable PDF form "Notice of Service" is available on the Circuit's webpage (<u>www.17th.flcourts.org</u>).

4. <u>TRIAL</u>: Trial will be set in accordance with Florida Rule of Civil Procedure 1.440. The court will issue a separate Uniform Trial Order scheduling Calendar Call and setting the Trial Period. The action no longer needs to be "at issue" prior to the case being set for trial. The failure of the pleadings to be closed will not preclude the court from setting a case for trial. (Fla. R. Civ. P. 1.440).

5. <u>INITIAL DISCOVERY DISCLOSURES</u>:
   A. Parties must make initial discovery disclosures required by Florida Rule of Civil Procedure 1.280 **within 60 days after the service of the complaint or joinder**, unless a different time is set by court order. Pursuant to Local Rule 10A, a party may file a motion for ex parte relief where no motion for extension of time has been filed and the nonmoving party has completely failed to comply with Florida Rule of Civil Procedure 1.280(a).

   B. A party may not seek discovery from any source before that party's initial disclosures are served on the other party, except when authorized by stipulation or by court order. (Fla. R. Civ. P. 1.280(f)(1)).

   C. As set forth in Rule 1.280(a)(1), initial discovery disclosures include:
      1. The name and, if known, the address, telephone number, and e-mail address of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
      2. A copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has

NOT AN OFFICIAL COPY - CCE - SUBSCRIBER - CCIS

in its possession, custody, or control (or, if not in the disclosing party's possession, custody, or control, a description by category and location of such information) and may use to support its claims or defenses, unless the use would be solely for impeachment;

3. A computation for each category of damages claimed by the disclosing party and a copy of the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; provided that a party is not required to provide computations as to noneconomic damages, but the party must identify categories of damages claimed and provide supporting documents; and
4. A copy of any insurance policy or agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

D. A party who has made a disclosure under this rule or who has responded to an interrogatory, a request for production, or a request for admission **must** supplement or correct its disclosure or response: (a) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (b) as ordered by the court. (Fla. R. Civ. P. 1.280(g)).

6. NOTICE OF RELATED CASE(S) (i.e., cases involving the same parties, same subject matter or incident, or same property at issue): The Parties shall file a Notice of Related Case(s) within thirty (30) days from the date of this Order identifying any and all related cases.

7. ATTORNEY/PRO SE PARTY PREPARATION: Attorneys and self-represented litigants who appear at a case management conference **MUST** be prepared on the pending matters in the case, be prepared to make decisions about future progress and conduct of the case, and have authority to make representations to the court and enter into binding agreements concerning motions, issues, and scheduling. If a party is represented by more than 1 attorney, the attorney(s) present at a case management conference must be prepared with all attorneys' availability for future events. (Fla. R. Civ. P. 1.200(j)(3)).

8. CASE MANAGEMENT DEADLINES:

A. **DEADLINES IN THIS CASE MANAGEMENT ORDER MUST BE STRICTLY ENFORCED UNLESS CHANGED BY COURT ORDER FOR GOOD CAUSE SHOWN. (Fla. R. Civ. P. 1.200(e)(1)).**

B. Notices of unavailability and/or inability to comply with the deadlines have no effect on the case management deadlines set by this order. If a party is unable to comply with a deadline, including due to the unavailability of hearing time, the party must take action consistent with Florida Rule of Civil Procedure 1.200(e)(1). (Fla. R. Civ. P. 1.200(f)-(g)).

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

9. CASE MANAGEMENT AND TRIAL DEADLINES:

The following deadlines apply unless otherwise modified by the Court.

| | EVENTS | COMPLETION DEADLINE |
|---|---|---|
| 1. | Service of Complaint | 120 days from filing; Service under extension is only by court order. |
| 2. | Resolution of all motions/objections directed to the pleadings (i.e. to dismiss or strike) | 120 days before Calendar Call (must be set within 10 days of filing to be heard within 60 days) |
| 3. | Pleading Amendments/Adding New Parties | 120 days before Calendar Call |
| 4. | Disclosure of Fact Witnesses/Lists | 150 days before Calendar Call |
| 5. | Disclosure of Expert Witnesses/Lists | 120 days before Calendar Call |
| 6. | Completion of Compulsory Examinations | 120 days before Calendar Call |
| 7. | Disclosure of Rebuttal Witnesses/Lists | 100 days before Calendar Call |
| 8. | Completion of all Discovery (including expert discovery) | 30 days before Calendar Call (must be initiated 90 days before Calendar Call) |
| 9. | Filing of all Dispositive Motions and Motions for Summary Judgment | 90 days before Calendar Call |
| 10. | Expert Challenges and Deposition Objections | 45 days before Calendar Call (must be filed and heard) |
| 11. | Filing of all Pretrial Motions (including Motions in Limine) | 30 days before Calendar Call |
| 12. | Deposition Designations | 20 days before Calendar Call |
| 13. | Deadline for Mediation | 60 days before Calendar Call |

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

10. WITNESS LISTS:

**A. NO LATER THAN ONE HUNDRED AND FIFTY (150) DAYS PRIOR TO CALENDAR CALL:**

Fact Witnesses:
Parties must file and serve a list of names and addresses of all fact witnesses who are expected to testify at trial. Each party's fact witness list must include a brief description of the substance and scope of the testimony to be elicited from such witness. Both sides must cooperate in the scheduling of such witness depositions.

**B. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

Expert Witnesses:

1. At the time of disclosure of all expert witnesses, the parties shall file and serve the names and addresses of all expert witnesses to be called at trial, including their complete and updated curriculum vitae, and all information regarding expert testimony that is required by Fla. R. Civ. P. 1.280(c)(5). Parties shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition. Both parties shall cooperate in the scheduling of expert depositions.
2. The parties shall also provide answers to standard form expert interrogatories pursuant to Fla. R. Civ. P. 1.280(c)(5). All reports or other data compiled by each disclosed expert which is intended to be used by the expert and/or referred to during his/her deposition testimony shall be provided electronically to the opposing party at least 72 hours prior to the date of the scheduled deposition.

**C. NO LATER THAN ONE HUNDRED (100) DAYS PRIOR TO CALENDAR CALL:**

Rebuttal Witnesses:
Parties must file and serve a list of names and addresses of any rebuttal witnesses within one hundred (100) days prior to Calendar Call.

11. COMPULSORY MEDICAL EVALUATIONS ("CME"):

**A. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

All CME and other examinations pursuant to Florida Rule of Civil Procedure 1.360 must be completed no later than one hundred and twenty (120) days prior to Calendar Call.

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CMS

12. DISCOVERY DEADLINES:

**A. NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**

All final discovery must have been initiated at least ninety (90) days prior to Calendar Call.

**B. NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**

Parties must complete all discovery, including expert discovery in accordance with Florida Rule of Civil Procedure 1.280(c)(5), at least thirty (30) days prior to Calendar Call. Discovery conducted after this time period is strongly disfavored and will only be permitted by order of the Court under exceptional circumstances.

**C. ELECTRONICALLY STORED INFORMATION (ESI) DISCOVERY:**

ESI discovery procedures are governed by Seventeenth Judicial Circuit Administrative Order 2021-20-Gen, a copy of which is available on the Circuit's webpage (www.17th.flcourts.org).

13. MOTIONS:

**A. CONFERRAL PRIOR TO FILING MOTIONS:**

Before filing a non-dispositive motion, the movant MUST confer with the opposing party in a good-faith effort to resolve the issues raised in the motion **AND** at the end of the motion and above the signature block, the movant MUST include a certificate of conferral. (Fla. R. Civ. P. 1.202(a)-(b)). **The parties are expected to confer and attempt to resolve the issues raised in the motion before reserving hearing time.**

The requirements of rule 1.202 do not apply when the movant or the nonmovant is unrepresented by counsel (pro se). (Fla. R. Civ. P. 1.202(c)).

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CIS

**B. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

1. Motions to Add a Party or Parties or to Amend the Pleadings: must be filed and set for hearing no later than one hundred and twenty (120) days before Calendar Call absent good cause shown. The deadline shall not conflict with Florida Rule of Civil Procedure 1.190(e), and the motion may be denied if there has been undue delay, bad faith, prejudice to the opposing side, dilatory motive on the part of the moving party or when the amendment would be futile.

2. Motions/Objections Directed to the Pleadings: all objections to the pleadings must be filed and set for hearing no later than one hundred and twenty (120) days before Calendar Call. **The motion/objection MUST be set within ten (10) days of filing of the motion/objection to be heard within sixty (60) days.**

**C. NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**

1. Motions for Summary Judgment and other Dispositive Motions: must be filed no later than ninety (90) days before Calendar Call. Motions for summary judgment will not be heard at or after Calendar Call unless approved by the court. If the Court has granted the parties' request for a hearing on the motion, but a hearing is not available prior to the deadline, the parties shall submit the fully briefed motion and opposition (if any) to the court prior to the expiration of the deadline, and the court can rule on those motions on the papers. Failure to timely submit the paperwork to the court will deem those motions abandoned.

2. Response to Motion for Summary Judgment: the response and supporting factual position must be served no later than forty (40) days after service of the motion for summary judgment. (Fla. R. Civ. P. 1.510(c)(5)).

**D. NO LATER THAN FORTY-FIVE (45) DAYS PRIOR TO CALENDAR CALL:**

1. Expert Challenges: motions challenging an expert witness ("Expert Challenges"), must be filed and heard no later than forty-five (45) days before Calendar Call.

2. Deposition Objections: objections raised in depositions expected to be introduced at trial must be filed and heard no later than forty-five (45) days before Calendar Call.

**E. NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**

1. Motions in Limine: must be filed no later than thirty (30) days prior to Calendar Call. If the Court has granted the parties' request for a hearing on the motion, but a hearing is not available prior to the deadline, the parties shall submit the fully briefed motion and opposition (if any) to the court prior to the expiration of the deadline, and the court can rule on those motions on the papers. Failure to timely submit the paperwork to the court will deem those motions abandoned.

2. Pretrial Motions: must be filed and heard no later than thirty (30) days prior to Calendar Call. All motions, other than motions in limine, not heard before Calendar Call will be deemed abandoned.

**F. NO LATER THAN TWENTY (20) DAYS PRIOR TO CALENDAR CALL:**

1. Deposition Designations: no later than twenty (20) days prior to Calendar Call, each party must serve designation of depositions, or portions of depositions, each intends to offer as testimony.

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

14. JOINT PRETRIAL STIPULATION:

**A. NO LATER THAN TEN (10) DAYS PRIOR TO CALENDAR CALL:**

1. The Joint Pretrial Stipulation contemplates a single document that must be filed and served, **with a courtesy copy served on the undersigned judge**, no later than ten (10) days prior to Calendar Call.
2. The Joint Pretrial Stipulation requires that all agreed matters be fully identified and any disputed matters be specifically delineated with respect to each party.

**B. THE JOINT PRETRIAL STIPULATION MUST CONTAIN THE FOLLOWING IN SEPARATELY NUMBERED PARAGRAPHS:**

1. Statement of the Facts: A concise, impartial statement of the facts of the case.
2. Stipulated Facts: A list of those facts that can be stipulated and require no proof at trial.
3. Statement of Disputed Law and Fact: A concise, impartial statement of those issues of law and fact that are to be tried.
4. Exhibit Lists: Each party must separately list all exhibits they intend to introduce into evidence. Each item must be listed by number and description on a separate schedule attached to the Joint Pretrial Stipulation. Each exhibit must be specifically described. **Generic descriptions of exhibits are subject to being stricken.** If any party objects to the introduction of any such exhibit, such objection **must be stated in the Joint Pretrial Stipulation**, setting forth the grounds with specificity. All exhibits must have been made available to all parties for examination no later than ten (10) days before Calendar Call. Parties must initial each other's exhibit lists and exhibits. **At trial, only those exhibits properly listed and initialed may be offered into evidence.**
5. Demonstrative Exhibits: all demonstrative exhibits (e.g., charts, graphs, enlargements of exhibits, etc.) intended to be used at a jury trial must be displayed to all parties at least ten (10) days before Calendar Call. **Objections to a demonstrative exhibit must be disclosed in the pretrial stipulation or will be deemed waived.**
6. Witness Lists: Parties must furnish a written list containing the names and addresses of all witnesses intended to be called at trial in alphabetical order. Such list must designate the type of witness ("expert," "rebuttal," "impeachment," or otherwise) and must be attached to the Joint Pretrial Stipulation. All fact witness lists must include a brief description of **the substance and scope of the testimony** to be elicited from such witness. All expert witness lists must **designate the expert's specialties**. If any party objects to any witness, such objection must be stated in the Joint Pretrial Stipulation, setting forth the grounds with specificity. **At trial, only those witnesses properly and timely disclosed will be permitted to testify.**
7. Jury Instructions: If the trial is a jury trial, the parties must identify all agreed upon standard instructions and all special instructions. Copies of all agreed upon jury instructions and disputed jury instructions must be attached to the Joint Pretrial Stipulation identifying the party that proposed the instruction, along with copies of supporting statutory citations and/or case law.
8. Verdict Forms: If the trial is a jury trial, the jury verdict form must be designated as "agreed to" or "disputed" and must be attached to the Joint Pretrial Stipulation.
9. Peremptory Challenges: If the trial is a jury trial, the number of peremptory challenges for each party must be stated and attached to the Joint Pretrial Stipulation.
10. Pending Motions: Parties must set forth a list of all pending motions with copies attached to the Joint Pretrial Stipulation.
11. Trial Estimate: Each party must provide an estimate of the number of trial days required for presenting its side of the case.
12. Expert Challenges: All motions challenging an expert witness must be filed and heard no later than forty-five (45) days before Calendar Call. FAILURE TO DO SO MAY CONSTITUTE A WAIVER OF ANY EXPERT RELATED EVIDENCE ISSUE(S). It is within the discretion of the Court to remove any case with pending expert issues.

NOT AN OFFICIAL COPY - DUS - SUBSCRIBER - TLS

15. COURT POLICIES:

A. Parties must do all things reasonable and necessary to assure the availability of witnesses for the entire Trial Period or to otherwise preserve witness testimony for trial as provided by the Florida Rules of Civil Procedure. See Fla. R. Civ. P. 1.300 & 1.460; see also Fla. R. Gen. Prac. & Jud. Admin. 2.545.

B. The requirements of this Order cannot be waived by stipulation **absent prior approval from the Court** pursuant to written agreement between the parties.

C. This Order may be tailored by the assigned Division Judge to conform to the particular requirements of the residential foreclosure and complex litigation divisions.

D. At trial, there will only be one (1) official record transcribed by one (1) court reporter. Plaintiff is responsible for arranging for a court reporter unless otherwise agreed to by the parties. If a conflict exists, the parties must resolve it among themselves prior to Calendar Call.

16. TRIAL CONTINUANCES:

A. The parties must satisfy the requirements of Rule 1.460 to change the trial period.

**B. A motion to continue is disfavored and will rarely be granted. No continuances will be granted without Court Order upon written motion setting forth good cause pursuant to In re: Amend. to Fla. R. Civ. P., No. SC23-0962 (December 5, 2024), Fla. R. Civ. P. 1.460, and Fla. R. Gen. Prac. & Jud. Admin. 2.545(e). All motions seeking a continuance must comply with Fla. R. Civ. P. 1.460 and Fla. R. Gen. Prac. & Jud. Admin. 2.545.**

C. A motion to continue trial must be in writing unless made at trial and, except for good cause shown, must be signed by the named party requesting the continuance. The motion must be filed promptly after the appearance of good cause to support such motion. Failure to properly request a continuance may be a basis for denying the motion to continue. (Fla. R. Civ. P. 1.460(b)-(c) and Fla. R. Gen. Prac. & Jud. Admin. 2.545(e)).

D. All motions for continuance, even if agreed, must state with specificity as set forth in rule 1.460(d).

E. **NO** CONTINUANCES will be granted based on the lack of due diligence in preparing for trial.

F. **NO** CONTINUANCES will be granted for reasons that should have been readily apparent to the parties when this Order was issued.

G. **NO** CONTINUANCES will be granted if expert witnesses are unavailable because testimony may be preserved by deposition.

H. **NO** CONTINUANCES will be granted for reasons relating to the failure to follow this Order.

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

I. If a continuance is granted based on the dilatory conduct of an attorney or named party, the court may consider imposing sanctions on the attorney, the party, or both.

17. MEDIATION:

A. Mandatory Mediation: must commence no later than sixty (60) days prior to Calendar Call. The parties must comply with Florida Rules of Civil Procedure 1.700, 1.710, 1.720, and 1.730 as to the conduct of mediation. The parties may attend mediation through the use of communication technology (remotely) if mutually agreed upon. The Court will resolve any disagreement as to where or how mediation is to be conducted. Plaintiff's counsel is appointed lead counsel to facilitate and schedule the settlement conference with the mediator and all parties.

The Court appoints:
**WHOMEVER THE PARTIES AGREE UPON**

as Mediator, unless, within thirty (30) days of service of initial process on the last defendant or thirty (30) days from the date of this Order, whichever occurs later, the parties choose a different Mediator, and file notice of that choice and the name of the substitute mediator with the Clerk of Court. Failure to attend mediation may result in sanctions.

18. SANCTIONS: All parties should be familiar with Florida Rule of Civil Procedure 1.380 entitled "Failure to Make Discovery; Sanctions" and section 57.105, Florida Statutes, entitled "Attorney's fee; sanctions for raising unsupported claims or defenses; exceptions; service of motions; damages for delay of litigation."

FAILURE TO APPEAR, FAILURE TO FOLLOW TIME REQUIREMENTS, OR FAILURE TO FILE DOCUMENTS REQUIRED BY THIS COURT MAY RESULT IN THE DISMISSAL OF THE ACTION OR THE IMPOSITION OF SANCTIONS INCLUDING THE STRIKING OF PLEADINGS.

19. SETTLEMENT NOTIFICATION: Parties must immediately notify the Court in the event of settlement and submit a stipulation for an Order of Dismissal. Parties shall also cancel any and all pending hearings as a result of the settlement.

20. COMPLIANCE WITH DIVISIONAL PROCEDURES: Attorneys and self-represented litigants are required to read and comply with the division's procedures located on the 17th Judicial Circuit Court's Website (www.17th.flcourts.org). Failure to do so may result in appropriate sanctions, as permitted by law.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida on **09-19-2026** .

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

Case Number: CACE26013958

CACE26013958 09-19-2026 11:58 PM

CACE26013958 09-19-2026 11:58 PM

CIRCUIT COURT JUDGE

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately on receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

CC:
**ALEXA ROSENSON, Email : michelle.cruz@gtlaw.com**
**ALEXA ROSENSON, Email : MIALitDock@gtlaw.com**
**ALEXA ROSENSON, Email : alexa.rosenson@gtlaw.com**
**Andrew T Lavin, Email : ycombs@lavinlawyers.com**
**Andrew T Lavin, Email : khickson@lavinlawyers.com**
**Andrew T Lavin, Email : alavin@lavinlawyers.com**
**Mark A. Salky, Email : Salkym@gtlaw.com**
**Mark A. Salky, Email : Burkek@gtlaw.com**
**Nancy Ginart, Email : ginartn@gtlaw.com**

NOT AN OFFICIAL COPY - CCIS - SUBSCRIBER - CCIS

**Is your court hearing being held via Zoom? Learn more about Remote Court Hearings by Zoom (/GeneralInformation/Miscellaneous#RemoteHearingsbyZoom)**

HIDE NOTICES

BRENDA D. FORMAN
CLERK OF THE COURTS
browardclerk.org ■ BROWARD COUNTY, FLORIDA



Menu

# Case Detail - Public

Print

**Merri Selby Samson Plaintiff vs. Truist Bank, a National Banking Association, et al Defendant**

**Broward County Case Number:** CACE26013958
**State Reporting Number:** 062026CA013958AXXXCE
**Court Type:** Civil
**Case Type:** Other
**Incident Date:** N/A
**Filing Date:** 08/27/2026
**Court Location:** Central Courthouse
**Case Status:** Active
**Magistrate Id / Name:** N/A
**Judge ID / Name:** Frink, Keathan B

- Party(ies) Total: 4

| Party Type | Party Name | Address | Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Samson, Merri Selby** | | ★ Lavin, Andrew Todd<br>Retained<br>Bar ID: 260827<br>Lavin Law Group PA<br>2670 NE 215th Street<br>Miami, FL 33180<br>**Status: Active** |
| Defendant | **Truist Bank, a National Banking Association** | | |
| Defendant | **STOKES, JAMES W** | | |
| Defendant | **BLAKELY, SONDRA LYNN** | | |

## Disposition(s)

Total: 0

| Date | Statistical Closure(s) |
|---|---|

| Date | Disposition(s) | View / Pages |
|---|---|---|

## Event(s) & Document(s)

Total: 17

| Date | Description | Additional Text | View / Pages |
|---|---|---|---|
| 10/15/2026 | **Summons Returned Served** | 12th day of October, 2026 at 4:10 pm | /14 |
| 10/14/2026 | **Summons Returned Served** | James Stokes, 10/12/2026 at 4:05 pm | /14 |
| 10/14/2026 | **Summons Returned Served** | Glenn Blakely, 10/12/2026 4:10 pm | /14 |
| 10/14/2026 | **Summons Returned Served** | James Stokes, 10/12/2026 4:05 pm | /14 |

| Date | Description | Additional Text | View / Pages |
|---|---|---|---|
| 10/14/2026 | **Summons Returned Served** | Glenn Blakely, 10/12/2026 4:10 pm | /14 |
| 10/05/2026 | **Answer Affirmative Defenses & Counterclaim** | | /23 |
| 10/05/2026 | **Third Party Complaint** | | /23 |
| 10/05/2026 | **eSummons Issuance - On 3rd Pty Claim** | JAMES STOKES | /2 |
| 10/05/2026 | **eSummons Issuance - On 3rd Pty Claim** | SONDRA BLAKELY | /2 |
| 09/20/2026 | **Uniform Case Management Order - General** | | /11 |
| 09/16/2026 | **Notice of Appearance** | Truist Bank, a National Banking Association | /2 |
| 09/15/2026 | **Notice of Acceptance of Service of Process** | Andrew T. Lavin, Esq. , N/A | /2 |
| 08/27/2026 | **Per AOSC20-23 Amd12, Case is determined General** | | |
| 08/27/2026 | **Civil Cover Sheet** | | /3 |
| 08/27/2026 | **Complaint (eFiled)** | Party: *Plaintiff* Samson, Merri Selby | /78 |
| 08/27/2026 | **Notice of Service of Interrogs** | Party: *Plaintiff* Samson, Merri Selby | /1 |
| 08/27/2026 | **Request to Produce** | Party: *Plaintiff* Samson, Merri Selby | /8 |

- Hearing(s) Total: 0

**There is no Hearing information available for this case.**

- Related Case(s) Total: 0

**There is no related case information available for this case.**

## Brenda D. Forman

### Clerk of Court

Broward County
17th Judicial Circuit

MORE ABOUT THE CLERK (HTTPS://WWW.BROWARDCLERK.ORG/ABOUTUS/ABOUTTHEOFFICE#ABOUTTHECLERK) ›

Find us on Facebook (https://www.facebook.com/browardclerkofcourts/)

## Connect with Us

COURTHOUSE LOCATIONS (HTTPS://WWW.BROWARDCLERK.ORG/ABOUTUS/HOURSANDLOCATIONS#COURTHOUSELOCATIONS) ›

CONTACT US (HTTPS://WWW.BROWARDCLERK.ORG/ABOUTUS/ABOUTTHEOFFICE#CONTACTUS) ›

DISCLAIMER AGREEMENT (HTTPS://WWW.BROWARDCLERK.ORG/GENERALINFORMATION/MISCELLANEOUS#DISCLAIMERAGREEMENT)

CLERK DIRECTORY (HTTPS://WWW.BROWARDCLERK.ORG/ABOUTUS/HOURSANDLOCATIONS#CLERKDIRECTORY) »

TELL US WHAT YOU THINK (HTTPS://WWW.BROWARDCLERK.ORG/MISCELLANEOUS/CLERKSURVEYS) ›

## Accessibility & Support

ADA NOTICE (HTTPS://WWW.BROWARDCLERK.ORG/GENERALINFORMATION/MISCELLANEOUS#ADA)

PRINT

FREQUENTLY ASKED QUESTIONS (HTTPS://WWW.BROWARDCLERK.ORG//WEB2/CASESEARCHECA/FREQUENTQUESTIONS/) ›

GLOSSARY OF TERMS (HTTPS://WWW.BROWARDCLERK.ORG//WEB2/CASESEARCHECA/GLOSSARY/) ›

## Main Courthouse Location

201 SE 6th Street

Fort Lauderdale
Florida, US 33301
Phone: (954) 831-6565

---

PUBLIC RECORDS CUSTODIAN (HTTPS://WWW.BROWARDCLERK.ORG/GENERALINFORMATION/MISCELLANEOUS#PUBLICRECORDSCUSTODIAN) › *PURSUANT TO 119.12(2), F.S.*

PUBLIC ACCESS TO JUDICIAL RECORDS (HTTPS://WWW.BROWARDCLERK.ORG/GENERALINFORMATION/MISCELLANEOUS#JUDICIALRECORDRULE) › *PURSUANT TO RULE 2.420*

Under Florida law, email addresses are public records. If you do not want your email address released in response to a public records request, do not send electronic mail to this entity.
Instead, contact this office by phone or in writing.

© 2026 - All rights reserved